UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DANIEL E. CARPENTER | : | Case No. 3:21-cv-1485 (RNC) |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA | : | July 30, 2022 |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO PETITIONER
DANIEL CARPENTER'S MOTION TO VACATE HIS CONVICTION**

The United States of America (the "Government") respectfully submits this memorandum in opposition to petitioner Daniel Carpenter's motion to vacate his conviction pursuant to 28 U.S.C. § 2255 (Doc. 1) and his accompanying memorandum of law (Doc. 1-1) (hereinafter, "Carpenter's Mem."). As set forth more fully below, almost all of the claims in Carpenter's 2255 motion are claims that he previously raised and that this Court rejected in his criminal case. He subsequently raised some of these same claims in his criminal appeal, which the Second Circuit found were without merit, but he declined to raise most of them on appeal. As a result, all of Carpenter's claims are barred by the mandate rule and procedural default, or are otherwise without merit, and his motion to vacate his conviction should be denied.

## I.    FACTUAL BACKGROUND

On December 12, 2013, a federal grand jury in Connecticut returned a 33-count indictment charging Carpenter with mail fraud, wire fraud, and conspiracy to commit mail and wire fraud related to his involvement in a stranger-originated life insurance ("STOLI") scheme, in which he fraudulently induced insurance providers to issue and maintain life insurance policies on elderly strangers, causing a loss of approximately $53.3 million. *See United States v. Carpenter*, No. 3:13-CR-226-RNC (hereinafter "Criminal Case"), Doc. No. 1 (indictment); *United States v. Bursey*, 801 F. App'x 1, 2, 4 (2d Cir. 2020) (affirming Carpenter's conviction), *cert. denied*, No. 20-455,

2020 WL 6551799 (Nov. 9, 2020). On May 14, 2014, the grand jury returned a 57-count superseding indictment that added charges of money laundering conspiracy, illegal monetary transactions, and money laundering, related to Carpenter spending over $30 million in scheme proceeds. Criminal Case, Doc. No. 53 (superseding indictment).

As the Court may recall from the criminal case, Carpenter had been the target of two separate federal criminal investigations—one conducted by agents of the Department of Labor ("DOL") under the supervision of the United States Attorney's office in Connecticut; the other conducted by agents of the Internal Revenue Service ("IRS") under the supervision of the United States Attorney's Office in the Eastern District of Wisconsin.[1] *See* Criminal Case, Doc. 155 at 2. The DOL investigation concerned the STOLI fraud alleged in the superseding indictment in the Criminal Case. The IRS investigation concerned abusive section 419 welfare benefit plans. *See id.* In connection with each of these investigations, IRS and DOL conducted separate searches, in 2010 and 2011 respectively, at an office building located at 100 Grist Mill Road, Simsbury, Connecticut. *See id.* at 2-3. The 2011 DOL search included copying of materials held by the IRS as a result of the 2010 search, making the 2010 search relevant to the STOLI case. *See id.* at 3.

Prior to trial, Carpenter moved to dismiss the indictment on various grounds, including for failure to properly state an offense and properly allege the elements of offense with sufficient facts. *See* Criminal Case, Docs. 56, 63, 68-69. He also moved to suppress evidence as a result of the two searches in 2010 and 2011, claiming the search warrants in both cases were defective. *See id.*, Docs. 80-83. The Court denied the motions to dismiss and suppress. *See id.*, Docs. 154-155.

---

[1] Carpenter was previously convicted in the District of Massachusetts on 19 counts of mail and wire fraud for a separate scheme in which he misappropriated client escrow funds and defrauded his victims out of more than nine million dollars. *See United States v. Carpenter*, 781 F.3d 599, 603, 607 (1st Cir. 2015). Carpenter was subsequently sentenced to 36 months of imprisonment in that case.

Just prior to trial, in February 2016, Carpenter moved to dismiss the indictment claiming violations of his right to a speedy trial under both the Speedy Trial Act and the Sixth Amendment. *See id.*, Doc. 170.  The Court denied the motion. *See id.*, Doc. 211.

Following a bench trial in February and March of 2016, this Court found Carpenter guilty of each of the 57 counts of the superseding indictment. *United States v. Carpenter*, 190 F. Supp. 3d 260, 297 (D. Conn. 2016) (Verdict and Special Findings). Carpenter subsequently filed numerous post-trial motions, including a Rule 29 motion for acquittal (which included a claim that he was not provided fair warning that his conduct was criminal), a Rule 33 motion for a new trial, motions to reconsider his prior motions to suppress, and motions alleging *Brady* and *Jencks* Act violations. *See id.*, Docs. 228-231, 295-296, 298. The Court denied all of these motions. *See id.*, Docs. 300, 312, 326, 474.  On December 3, 2018, this Court sentenced Carpenter to 30 months' imprisonment. *See id.*, Docs. 400 (minute entry), 411 (judgment).

Carpenter then appealed his conviction. He raised five issues on appeal, claiming the district court erred by: (1) denying his motion to dismiss the indictment for violations of the Speedy Trial Act; (2) denying his motions to suppress evidence seized pursuant to the 2010 and 2011 search warrants; (3) erroneously calculating the loss amount; (4) holding that certain mailings and wires were timely and in furtherance of the fraud; and (5) erroneously treating certain death benefits as proceeds of fraud for the money laundering counts. *See* Ex. A (Carpenter's Brief on Appeal); *Bursey*, 801 F. App'x at 2. The Second Circuit affirmed his conviction, and his petition for certiorari was denied on November 9, 2020.  *Id.* at 1, *cert. denied*, No. 20-455, 2020 WL 6551799 (Nov. 9, 2020).[2]

---

[2] Carpenter's separate appeal of the restitution order has been held in abeyance, *see* Criminal Case, Doc. 475 (notice of appeal), *United States v. Carpenter*, Case No. 19-674 (2d Cir.), as the government's request to amend the restitution order remains pending in the criminal case, *see* Criminal Case, Doc. No. 485.

On November 5, 2021, the Court received Carpenter's instant motion to vacate his conviction pursuant to 28 U.S.C. § 2255.

## II.  <u>LEGAL STANDARD</u>

Section 2255 permits collateral challenges to federal convictions. 28 U.S.C. § 2255(a). To obtain relief under § 2255, a petitioner must show that his "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. The burden rests on the petitioner to show facts or law establishing that the conviction or sentence was unlawful. *See Lasher v. United States*, 970 F.3d 129, 131 (2d Cir. 2020); *United States v. Hoskins*, 905 F.3d 97, 103 n.6 (2d Cir. 2018).

"Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (internal quotation marks omitted).

First, the "mandate rule bars re-litigation of issues already decided on direct appeal." *Id.*; s*ee, e.g., United States v. Pitcher*, 559 F.3d 120, 123 (2d Cir. 2009) ("It is well established that a § 2255 petition cannot be used to relitigate questions which were raised and considered on direct appeal." (internal quotations and citation omitted)); *Hammett v. United States*, No. 3:15-CV-1568(RNC), 2018 WL 3715274, at *2 (D. Conn. Aug. 3, 2018) (Chatigny, J.) ("Pursuant to the 'mandate rule,' a § 2255 motion generally does not provide an opportunity to relitigate issues that were raised and considered on direct appeal."). "Th[is] mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues *impliedly* resolved by the appellate court's mandate." *Yick Man Mui*, 614 F.3d at 53 (emphasis added). More specifically, the mandate rule "bars the raising in a habeas

proceeding of a claim when the events underlying the claim were the same as those underlying a claim raised and decided on the merits on direct appeal." *Id*. at 56.

Second, the "procedural default rule" "prevents claims that could have been brought on direct appeal from being raised on collateral review absent cause and prejudice." *Id.* at 54; *see, e.g., Jones v. United States*, No. 3:19-CV-01305 (MPS), 2021 WL 311279, at *9 (D. Conn. Jan. 29, 2021) (quoting the same); *Herndon v. United States*, No. 3:10-CV-1997 RNC, 2013 WL 2405511, at *2 (D. Conn. May 31, 2013) (Chatigny, J.) ("When a defendant fails to raise a claim on direct appeal, 'he is barred from raising the claim in a subsequent § 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom or that he is actually innocent of the crime of which he was convicted." (quoting *De Jesus v. United States*, 161 F.3d 99, 102 (2d Cir. 1998) (internal citations omitted)). "In order to demonstrate cause, a defendant must show some objective factor external to the defense such that the claim was so novel that its legal basis [was] not reasonably available to counsel." *Gupta v. United States*, 913 F.3d 81, 84 (2d Cir. 2019) (internal quotations marks and citations omitted); *Jones*, 2021 WL 311279, at *9 (quoting the same). "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, *or failed to raise the claim despite recognizing it*, does not constitute cause for a procedural default." *Gupta*, 913 F.3d  at 85 (emphasis in original).

In deciding a 2255 motion, an evidentiary hearing in not required. A district judge "can rely on [his] personal familiarity with the case and dismiss the habeas claim without a hearing if [ ]he finds that the petition lack[s] any truly meritorious allegation and there is overwhelming evidence of [petitioner's] guilt." *United States v. Seiser*, 112 F.3d 507 (2d Cir. 1996)  (internal quotation marks omitted) (brackets in original)); *Raysor v. United States*, 647 F.3d 491, 494 (2d Cir. 2011) ("[W]hen the judge who tried the underlying proceedings also presides over a § 2255

motion, a full-blown evidentiary hearing may not be necessary."); *Stanley v. United States*, No. 3:21-CV-00536 (JAM), 2022 WL 2816721, at *1 (D. Conn. July 19, 2022) ("Absent a plausible showing that facts exist which would warrant a grant of relief, a court is not required to conduct an evidentiary hearing on a motion for post-conviction relief under 28 U.S.C. § 2255, especially to the extent that the motion is before the judge who presided over the underlying proceedings." (citing *Raysor*, 647 F.3d at 494)).

III.   **DISCUSSION**

In Carpenter's 2255 motion, he raises a number of claims, almost all of which he raised in the criminal case, prior to his appeal, and which this Court has already rejected on the merits. Some of these claims were raised and decided on appeal, and therefore, Carpenter is prohibited from raising them here under the mandate rule. The remaining claims are either procedurally defaulted because Carpenter did not raise them on appeal, or they are otherwise without merit. The Government addresses each of Carpenter's specific claims below.

   **A. CLAIM ONE: Fair Warning, Failure to Allege an Offense, and Constructive Amendment of the Indictment**

In Carpenter's first claim for relief, *see* Carpenter's Mem. at 2-10, he makes a number of arguments that he previously raised in the criminal case. He first argues that under the Supreme Court's decision in *Marinello v United States*, 138 S. Ct. 1101 (2018) and other cases, the indictment against him should be dismissed because he did not have "fair warning" that he could be criminally liable and go to prison for his conduct. *See* Carpenter's Mem. at 2-4. He also argues the superseding indictment was defective and failed to sufficiently allege the offenses against him. *See id.* at 8. Finally, he argues that the Government constructively amended the indictment. *See id.* at 10. These are essentially the same claims that Carpenter raised before and after trial in his

criminal case, which the Court rejected. Because Carpenter did not raise these arguments in his criminal appeal, they are procedurally defaulted.

### 1. Fair Warning

Carpenter's fair warning argument is barred by procedural default because he failed to raise the claim in his direct appeal. As the Court may recall, before trial, Carpenter filed several motions to dismiss the indictment. *See* Criminal Case, Docs. 56, 63-69. In his motion to dismiss for failure to state a crime, Carpenter argued that the language of the mail and wire fraud statutes were impermissibly vague as the statutes did not provide "fair warning" that his conduct in this case was criminal. *See id.*, Doc. 69 at 8-9. The Court denied the motion. *See id.*, Doc. 154 at 1.

.After trial, Carpenter filed a Rule 29 motion for judgment of acquittal, wherein he again argued that he did not receive "fair warning" or notice that he could be criminally liable for his conduct. *See id.*, Doc. 229 at 75-102, Doc. 283 at 1-4. The Government opposed the Rule 29 motion and explained why Carpenter's "fair warning" argument lacked merit. *See id.*, Doc. 262 at 50-61. The Court agreed and denied the motion, stating "I have no difficulty concluding that Mr. Carpenter had fair warning." *See id.*, Doc. 312 at 8-10 (Tr. of Tel. Conf., Nov. 16, 2017) (denying Rule 29 motion), Doc. 300 (minute entry).

Carpenter then filed a motion for reconsideration based on the *Ex Post Facto* clause, again arguing that he did not receive "fair warning" that his conduct was criminal. *See id.*, Doc. 305 at 5-9, Doc. 325. The Court denied the motion. *See id.*, Doc. 326 (minute entry), Doc. 474 at 28 (Tr. of Hr'g, Dec. 12, 2017).

Obviously, Carpenter was well aware of his "fair warning" argument before he filed his criminal appeal, having repeatedly raised the argument numerous times in the criminal case. However, he failed to raise the issue in his appeal. *See* Ex. A (Carpenter's Brief on Appeal). He

did not challenge the Court's denial of his pre-trial motions to dismiss nor did he challenge the Court's denial of his fair warning claim in post-trial Rule 29 motion. As a result, Carpenter's "fair warning" claim is procedurally defaulted. *See, e.g., Yick Man Mui*, 614 F.3d at 54; *Herndon*, 2013 WL 2405511, at *2.

To the extent Carpenter argues that his 2255 motion cites additional cases that he did not cite earlier, such as (1) *Marinello*, (2) the acquittal in *United States v. Demos*, and (3) this Court's ruling granting a new trial in in *United States v. Shapiro* and *Gramins* based on the Second Circuit's decision in *United States v. Litvak*, 889 F.3d 56 (2d Cir. 2018), *see* Carpenter's Mem. at 3-4, these cases do not change the analysis. As a preliminary matter, *Marinello* and *Litvak* were decided in 2018, *before* Carpenter filed his brief in his criminal appeal. He could have raised these cases in his appeal, but he did not. Moreover, the Second Circuit reversed the new trial order in *Shapiro* and *Gramins* and reinstated their convictions. *See United States v. Gramins*, 939 F.3d 429, 457 (2d Cir. 2019).

More importantly, these cases do not establish new law that would alter the Court's analysis when it previously considered and rejected Carpenter's "fair warning" argument. This Court determined that Carpenter did, in fact, have fair warning. The Court stated:

> With regard to Mr. Carpenter's other arguments in the Rule 29 motion, he argues that he didn't have fair warning that his conduct violated the law. I can't agree with that.
>
> As the government shows in its opposition memorandum, the courts have long ruled that material misrepresentations in insurance applications are illegal and it should have been clear to Mr. Carpenter that when these misrepresentations deprive somebody of information necessary to economic decision-making and thus violate the right to control one's assets, the conduct is punishable under the mail and wire fraud statutes.
>
> The fact that Mr. Carpenter engaged in his criminal conduct prior to the *Binday* case does not insulate him from liability. The Second Circuit had made it clear that the right to control theory applies in the context of wire and mail fraud, and Mr.

Carpenter had fair warning that if he undertook to defraud the carriers by depriving them of material information concerning the STOLI scheme, he could be held to account under the mail and wire fraud statutes.

While it's true that the government points to no STOLI case directly on point preceding Mr. Carpenter's unlawful conduct, the absence of such a case directly on point covering the precise factual situation presented in this case does not provide a basis for granting relief to Mr. Carpenter.

I believe he knew that his scheme was illegal and undertook to try to conceal it. I think that my findings make that clear, and given those findings, ***I have no difficulty concluding that Mr. Carpenter had fair warning***.

Criminal Case, Doc. 312 at 8-10 (Tr. of Tel. Conf., Nov. 16, 2017) (emphasis added).

Accordingly, not only is Carpenter's "fair warning" claim procedurally defaulted, it is also without merit.[3]

### 2. Failure to Allege an Offense

Carpenter also argues that the superseding indictment is defective because it fails to allege each of the elements of the mail and wire fraud statutes with sufficient facts. *See* Carpenter's Mem. at 5-8. Specifically, he argues that the indictment failed to sufficiently allege knowledge or that he willfully participated in the scheme to defraud and the conspiracy, failed to sufficiently allege that anyone was deprived of property, failed to sufficiently allege that he intended to defraud anyone, and failed to sufficiently allege that any mailing or wiring was in furtherance of the scheme to defraud. *See id.* These claims are barred by procedural default and the mandate rule.

Prior to trial, Carpenter filed motions to dismiss the indictment arguing that the superseding indictment failed to properly allege the elements of mail and wire fraud. *See* Criminal Case, Docs.

---

[3] As noted above, procedural default can be excused if the petitioner can establish either (1) cause for the default and actual prejudice, or (2) that he is actually innocent of the crime. *See Herndon*, 2013 WL 2405511, at *2. Carpenter has not shown cause for any of the defaults set forth in this memorandum. Nor can he show that he is actually innocent of the crimes. Although he professes his innocence throughout his 2255 motion, his claims of innocence are flatly refuted by this Court's detailed Verdict and Special Findings in which the Court repeatedly noted the "overwhelming evidence" that the defendant committed the crimes. *Carpenter*, 190 F. Supp. 3d at 275, 267 n.7, 297; *see* Criminal Case, Doc. 474 at 13 (Court noted the "overwhelming evidence of Mr. Carpenter's guilt."), *id.* at 25 (same).

56, 63, 68, 69. The Court thoroughly addressed these claims in a written opinion and denied the motions, finding that the allegations in the indictment "are more than sufficient." *Id.*, Doc. 154 at 5-10.

In Carpenter's post-trial Rule 29 motion, he renewed these claims, arguing that his Sixth Amendment rights were violated because the superseding indictment was defective and failed to sufficiently allege the offenses against him. *See id.*, Doc. 229 at 83-85. The Court denied the motion. *See id.*, Doc. 300 (minute entry), Doc. 312 at 10 (Tr. of Tel. Conf., Nov. 16, 2017) (denying Rule 29 motion).

Carpenter declined to raise these issues on appeal. *See* Ex. A. He did not argue that the indictment was defective or failed to properly allege the elements of the offenses. *See id*. Accordingly, this claim is procedurally defaulted. *See, e.g., Yick Man Mui*, 614 F.3d at 54. Even if the claim was not procedurally defaulted, Carpenter does not point to any change in controlling law that would warrant the Court to reconsider it prior rulings.

Finally, with respect to Carpenter's claim that the Government did not prove that any of the mailings or wires were "in furtherance of the fraud," *see* Carpenter's Mem. at 6-7, Carpenter raised this argument in his appeal, but the Second Circuit rejected it. *See Bursey*, 801 F. App'x at 4-5 ("Carpenter argues that the relevant mailings or wires . . . do not qualify as acts in furtherance of the charged fraud. We disagree."); Ex. A at 87-90. Accordingly, Carpenter's claim that the alleged mailings and wires were not in furtherance of the fraud is barred by the mandate rule. *See, e.g., Yick Man Mui,* 614 F.3d at 53.

### 3.  Constructive Amendment of the Indictment

Carpenter next argues that the Government constructively amended the superseding indictment because, among other things, he was convicted for mail and wire fraud on the theory

that his scheme denied the carriers "the right to control" and caused "tangible economic harm," but those words do not appear in the indictment. *See* Carpenter's Mem. at 8 to 10. This is the same argument, and relies on the same cases, that Carpenter made in his reply brief to his Rule 29 motion and then repeated in his motion for bond pending appeal. *See* Criminal Case, Doc. 283 at 4-9, Doc. 408 at 11-17. The Government thoroughly explained why there was no constructive amendment of the indictment. *See id.*, Doc. 430 at 15-23. The Court rejected this argument, finding there was no constructive amendment of the indictment. *See id.*, Doc. 445 at 3-4.

Carpenter did not raise this constructive amendment argument on appeal, even though he was certainly aware of his ability to raise the argument having done so prior to the appeal. Accordingly, this constructive amendment argument is also procedurally defaulted. *See, e.g., Yick Man Mui,* 614 F.3d at 54.  But even if there was no procedural default, the argument is meritless for the same reasons the Court explained before. *See* Criminal Case, Doc. 445 at 3-4.

**B.  CLAIMS TWO THROUGH FOUR: Relief based on *Countrywide* and Decisions from Other Circuit Courts of Appeal.**

In Carpenter's second through fourth grounds for relief, he argues that when the Court issued its verdict finding him guilty, the Court did not have the benefit Second Circuit's decision in *United States v. Countrywide*, 822 F.3d 650 (2d Cir. 2016), which in Carpenter's view, negates any possibility of mail or wire fraud based on his conduct. *See* Carpenter's Mem. at 11-15.  He further argues the Court did not have the benefit of decisions from other Circuit Courts, including *United States v. Takhalov*, 827 F.3d 1307 (11th Cir. 2016) and *United States v. Weimert*, 819 F.3d 351 (7th Cir. 2016). *See* Carpenter's Mem. at 11, 16-29. He also argues that Court did not have the benefit of the First Circuit's decision in *United States v. Tavares*, 844 F.3d 46 (1st Cir. 2016) discussing the requirement that mailings and wires be in furtherance of the fraud. *See* Carpenter's

Mem. at 26-27. Carpenter's arguments are without merit and are barred by the procedural default and mandate rules.

First, Carpenter raised these same arguments in his Rule 29 motion for acquittal and motions for reconsideration, and he specifically cited to each of these cases and numerous other cases that Carpenter cites again in his 2255 motion. *See* Criminal Case, Doc. 229 at 22-39 (Rule 29 motion discussing *Countrywide* and *Takhalov*), Doc. 283 at 9-10 (discussing *Weimert*), Doc. 309 at 5 (discussing *Tavares*). Indeed, many paragraphs in his 2255 motion appear to be copied verbatim from his Rule 29 motion and reply brief. The Court denied the Rule 29 motion, and expressly found that *Countrywide* did not change the Court's analysis:

> With regard to the *Countrywide* decision which came down after I issued my decision, I think the government's opposition memorandum does a very good job of explaining why *Countrywide* does not provide Mr. Carpenter with a basis for relief, and again I see no point in simply repeating what the government has stated in its opposition memorandum.
>
> Suffice it to say that *Binday* remains good law after *Countrywide* and Mr. Carpenter's convictions for mail and wire fraud are fully supported by the analysis in *Binday*.

Criminal Case, Doc. 312 at 7 (Tr. of Tel. Conf., Nov. 16, 2017) (denying Rule 29 motion).

Afterwards, Carpenter filed a motion for reconsideration, again arguing that *Countrywide*, *Takhalov*, and several other cases that he cites in his 2255 motion warrant acquittal. *See* Criminal Case, Doc. 309. The Court found that reconsideration was unwarranted. *See id.*, Doc. 326 (minute entry); Doc. 474 at 28 (Tr. of Hr'g, Dec. 12, 2017).

However, Carpenter did not raise any of these cases in his appeal, although he was well aware of them.[4] *See* Ex. A. Accordingly, his arguments are procedurally defaulted. *See, e.g., Yick Man Mui,* 614 F.3d at 54.

---

[4] Throughout Carpenter's 2255 motion, he also repeatedly cites the Second Circuit's decision in *AEI Life LLC v. Lincoln Ben. Life Co.*, 892 F .3d 126 (2d Cir. 2018) for the proposition that the insurance carriers were not cheated

Second, with respect to the First Circuit's decision in *Tavares* discussing the "in furtherance" requirement, *see* Carpenter's Mem. at 26-27, even though Carpenter did not raise this case in his brief on appeal, Carpenter generally raised the "in furtherance" argument in his appeal, but the Second Circuit rejected it. *See Bursey*, 801 F. App'x at 4-5 ("Carpenter argues that the relevant mailings or wires . . . do not qualify as acts in furtherance of the charged fraud. We disagree."). Accordingly, Carpenter's argument regarding the "in furtherance" requirement is not only without merit, it is barred by the mandate rule. *See, e.g., Yick Man Mui,* 614 F.3d at 53.

### C. CLAIM FIVE: The Supreme Court's Decision in *Kelly v. United States*.

Carpenter next argues that the Supreme Court's decision in *Kelly v. United States*, 140 S. Ct. 1565 (2020) "thoroughly dismantled the 'Right to Control' theory of fraud" advanced by the Government based on the Second Circuit's decision in *United States v. Binday*, 804 F.3d 558 (2d Cir. 2015), which involved a similar STOLI scheme. *See* Carpenter's Mem. at 30-32. Carpenter's argument is without merit.

The right-to-control theory of mail and wire fraud is well-established in the Second Circuit's precedent. *See, e.g.*, *United States v. Finazzo*, 850 F.3d 94, 105-09 (2d Cir. 2017). *Kelly* did not alter the analysis. In *Kelly*, the Supreme Court ruled that a "scheme to reallocate the

---

because there were no lies about age, gender, or health. *See* Carpenter's Mem. at 20-21, 31. Carpenter cited this case for the same proposition in his appeal. *See* Ex. A at 90 (citing *AEI Life LLC* for proposition that "STOLI does not cheat carriers of premiums if there is truthful information about the insured's age and other conditions.). The Second Circuit considered and rejected this argument in Carpenter's appeal. *See Bursey*, 801 F. App'x at 5 ("Carpenter argues that because the information regarding Spencer's age and health was accurate, proceeds from the [death] benefit were not fraudulently obtained. We disagree.").

Carpenter also claims that like the investors in *AEI Life LLC*, his company lost over $74 million. He claims that Judge Underhill has already ruled in his favor. *See* Carpenter's Mem. at 11. Although it appears Carpenter is referring to the *Bivens* action he filed against the DOL agents, it is unclear what ruling Carpenter is referring to. *See Carpenter v. Allen*, Case No. 3:14-cv-00741 (SRU). There has been no ruling in Carpenter's favor with respect to the substantive *Bivens* claims or damages. To the contrary, Judge Underhill dismissed most of the *Bivens* claims, *see id.*, Doc. 79, and motions for summary judgment on the remaining claims have been fully briefed and are pending, *see id.*, Docs. 96-111.

[George Washington] Bridge's access lanes" was not property for purposes of the wire fraud statute because lane realignment by the Port Authority was an "exercise of regulatory power," not "the taking of property." *Kelly*, 140 S. Ct. at 1573-74. *Kelly* is inapposite here because this case does not concern the exercise of regulatory power. Indeed, the Second Circuit recently denied Binday's successive 2255 motion for relief based on *Kelly*, noting that Binday "has not otherwise shown that his case is covered by the ruling in *Kelly*." *Binday v. United States*, No. 21-1206, 2021 WL 7500326, at *1 (2d Cir. Oct. 12, 2021); *see also United States v. Gatto*, 986 F.3d 104, 116 (2d Cir. 2021) (distinguishing *Kelly* on basis that defendants there were motivated by "political retaliation" and not taking of property).

Accordingly, *Binday* and the right-to-control theory remain binding precedent in this circuit, and Carpenter's 2255 motion should be denied.

### D.     CLAIM SIX: Fourth Amendment violations

In Carpenter's sixth claim for relief, he raises the same Fourth Amendment claims that he raised before and after trial in his criminal case, and that he also raised in his direct appeal. Specifically, he argues that the 2010 and 2011 two search warrants were defective and the government cannot rely on the good-faith exception. *See* Carpenter's Mem. at 33-39.

These claims are barred by the mandate rule. Prior to trial, Carpenter challenged the search warrants and moved to suppress the seized evidence, claiming the warrants were facially defective for the same reasons he argues here. *See* Criminal Case, Docs. 80-83. On December 24, 2015, the Court denied Carpenter's motions to suppress. *See id.*, Doc. 155 at 11 n.4 (denying Carpenter's motion to suppress and stating "any failure to attach the search warrant affidavits does not render the warrants defective.").

14

After trial, in July 2017, and then again in November 2017, Carpenter filed motions to reconsider the Court's denial of the motions to suppress, based, in part, on *United States v. Wey*. *See id.*, Docs. 243, 259, 280, 307.  Again, the Court denied the motions. *See id.*, Doc. 300, Doc. 312 at 14 ("There's no new law on the point and I think that the analysis of the motion is still correct."), Doc. 326 (denying motion for reconsideration of motion to suppress based on *Wey*), Doc. 474 at 29-30 (noting that the motion for reconsideration "lacks merit.").

On appeal, Carpenter raised the same arguments again, alleging the warrants were facially deficient and that the Government could not rely on the good faith exception. *See* Ex. A at 32-57. The Second Circuit rejected those arguments. *See Bursey*, 801 F. App'x at 4 ("Carpenter argues that the district court erroneously denied his motion to suppress evidence seized on the basis of facially defective search warrants. We disagree").  The Second Circuit also determined that the good faith exception applies, holding that "[e]ven if the warrants were facially invalid, the agents' reliance on them was reasonable. . . . Accordingly, the evidence seized as a result of the warrants was admissible under the good faith exception, and we conclude that the district court did not err when it denied Carpenter's motion to suppress." *Id.*

Because Carpenter's challenges to the search warrants were fully litigated on appeal, the mandate rule bars him from raising the same challenges again in a 2255 motion. *See Yick Man Mui*, 614 F.3d at 53.

### E.    CLAIM SEVEN: *Brady* and *Jencks* Act violations

In Carpenter's next argument for relief, he claims that there is "substantial newly discovered" *Brady*, *Giglio*, and *Bagley* evidence that the Government suppressed and failed to provide him. *See* Carpenter's Mem. at 40-61. Despite Carpenter's lengthy exposition of *Brady* and its progeny, he points to only three documents that he claims were improperly withheld:

- a "Search Warrant Plan" prepared by IRS-CI Special Agent Shaun Shrader in connection with the execution of the 2010 IRS Search Warrant;

- a Memorandum of Interview of Stephen Cherneski prepared by an IRS-CI Special Agent following his interview of Cherneski on April 20, 2010 during the execution of the 2010 IRS Search Warrant (hereinafter, the "Cherneski MOI"); and

- an internal IRS-CI "Synopsis of the Case" prepared by IRS-CI Special Agent Kathy Enstrom in connection with the IRS Investigation;

*See id.*; *see also* Criminal Case, Docs. 298-1, 298-2, 298-3 (copies of the above documents).[5]

Carpenter's arguments are virtually identical to the arguments he raised in the *Brady* and *Jencks* Act motions he filed in November 2017 in his criminal case. Specifically, after trial in the criminal case, Carpenter filed (1) a motion and accompanying memorandum of law for a mistrial pursuant to 18 U.S.C. § 3500 or new trial pursuant to Fed. R. Crim P. 33 based on alleged *Jencks* Act and *Brady* violations, *see id.,* Docs. 295, 296, and (2) a motion for a new trial pursuant to Fed. R. Crim P. 33 based on alleged *Brady* and *Giglio* violations, *see id.,* Doc. 298.  In those two motions, he claimed the same three documents were "newly discovered evidence" that was improperly withheld and that would have resulted in a verdict of not guilty.

The Government opposed both motions, arguing among things that (1) the Government provided the Search Warrant Plan, which included the substance of the Case Synopsis, to the defense on November 5, 2014, which was 15 months prior to trial, (2), the Government prosecution

---

[5] Carpenter's claims that these documents are "newly discovered evidence" is belied by very fact that these documents were the subject of litigation in the criminal case

team did not have possession or knowledge of the Cherneski MOI or the actual Case Synopsis prior to trial, and (3), the documents were not material and did not prejudice him. *See id.,* Doc. 313.

The Court held a hearing, agreed with the Government, and denied Carpenter's *Brady* and *Jencks* Act motions on the merits. *See id.,* Doc. 326. In denying the motions, the Court stated:

> I believe that the government is correct on the law with regard to both the *Brady* and *Jencks* claims. I think that, dealing with the *Jencks* claim first, this is not a statement of Mr. Cherneski covered by the act, so I don't think that the defendant is eligible for relief under the *Jencks* Act in any event, but as I have stated unequivocally, the memorandum makes no difference to me.
>
> The effect of this memorandum on my view of the case is really nonexistent. I think Mr. Cherneski testified credibly. His testimony was substantiated by the testimony of other witnesses and the documents, including contemporaneous documents. All was spelled out in abundant detailed in the verdict and special findings.
>
> So the *Jencks* Act does not provide a basis for disturbing the verdict, nor does *Brady* provide a basis for disturbing the verdict. I think the government is correct that there was no *Brady* violation; and in any case, this memorandum does not create a reasonable doubt, not even close.
>
> So the motions docketed as documents 295 and 298 are denied for substantially the reasons stated by the government in its papers and in view of the overwhelming evidence of Mr. Carpenter's guilt as established by other witnesses, the documents and his own testimony, which reinforced in my mind his guilt.

*Id.*, Doc. 474 at 24-25.

Carpenter did not raise these *Brady* and *Jencks* Act claims in his appeal, even though he obviously was aware of them as he raised them before his sentencing. Accordingly, not only are these claims meritless for the same reasons the Court articulated when it previously denied these claims, *see id.*, they also are barred by procedural default.

### F.      CLAIM EIGHT: Cumulative Effect of Misconduct

Carpenter next claims that because each of his other claims independently provides a basis for vacating his conviction, the Court should also vacate his conviction based on the cumulative effect of these claims. *See* Carpenter's Mem. at 62. As shown above, each of Carpenter's claims are barred by the procedural default and mandate rules, or are otherwise without merit. Therefore, his argument that the cumulative effect of these claims entitles him to relief also fails.

### G.      CLAIM NINE: Due Process Delays

As his final basis for relief, Carpenter argues that the delay between his offense conduct in 2006 and his sentencing until December 2018 violates due process and his rights to a speedy trial under the Sixth Amendment and Speedy Trial Act. *See* Carpenter's Mem. at 63-64. He also claims that he should have been credited on his sentence for his entire time at Wyatt prior to and during trial, *see id.* at 65, and that the Government violated his rights under 18 U.S.C. § 3161(j), *see id.* at 65-67. Once again, Carpenter is simply relitigating the same issues he raised before judgment entered in his criminal case, all of which are without merit.

First, prior to trial, Carpenter filed a motion to dismiss the indictment on speedy trial grounds, claiming violations of both the Speedy Trial Act and the Sixth Amendment. *See* Criminal Case, Doc. 170. The Court issued a detailed ruling denying the motion. *See id.*, Doc. 211.

Second, after sentencing but before his appeal, Carpenter filed a motion for reconsideration of his sentence claiming that the Court overlooked his argument that he should have received credit for the time he believes he overserved on his prior Massachusetts conviction. *See id.,* Doc. 405. He claims that because of the indictment in this STOLI case, he was not released earlier to a halfway house in connection with his Massachusetts conviction, and instead was held in custody at Wyatt before and during trial in the STOLI case. *See id.*

The Court rejected this argument when he first made it at sentencing, and again in denying his motion for reconsideration. As the Court noted in its written judgment, "[t]he possibility that the indictment in this case caused an increase in the defendant's prior federal sentenced, and prevented him from being released to a halfway house or home confinement, as he contends, does not justify a further reduction in his sentence of imprisonment." *Id.*, Doc. 411 at 2. (judgment). When the Court denied Carpenter's motion for reconsideration, it again stated "the defendant's argument does not support a further reduction in the sentence." *Id.*, Doc. 416.

Finally, in Carpenter's motion for reconsideration, he made, almost verbatim, the same due process and 3161(j) claims he now makes in 2255 motion. *See id.,* Doc. 405 at 5-6.  The Government opposed the motion, arguing that 3161(j) simply did not apply to Carpenter's case since he was arraigned on the superseding indictment *before* he reported to prison on the Massachusetts case. *See id.*, Doc. 413 at 11 to 13.  The Court agreed and rejected the due process and 3161(j) claim on the merits. *See id.,* Doc. 416 ("[Carpenter's] due process argument is also unavailing. He argues that the government violated 18 U.S.C. 3161(j) and 18 U.S.C. 3164 but neither statute applies here.").

Significantly, Carpenter did not raise any of these issues on appeal, except for his Speedy Trial Act claims. *See* Ex. A at 10-32. The Second Circuit rejected his Speedy Trial Act claims, holding "Carpenter's rights to a speedy trial were not violated." *Bursey*, 801 F. App'x at 3. *See Yick Man Mui*, 614 F.3d at 53.

As a result, his Speedy Trial Act claim is barred by the mandate rule. With respect to his remaining speedy trial claims, due process claims, and 3161(j) claim, he certainly was aware of them at the time of his appeal and could have raised them, but he did not. Accordingly, they are procedurally defaulted. *See id.* at 54.

IV.   **CONCLUSION**

For the foregoing reasons, the Government submits that Carpenter's 2255 motion to vacate

his conviction should be denied and that no hearing is necessary.

Respectfully submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

*/s/ Neeraj N. Patel*
NEERAJ N. PATEL
ASSISTANT U.S. ATTORNEY
Federal Bar No. phv04499
157 Church Street, 25th Floor
New Haven, CT 06510
Tel: 203-821-3700
Email: Neeraj.Patel@usdoj.gov

<u>CERTIFICATION OF SERVICE</u>

This is to certify that on July 30, 2022, a copy of the foregoing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


BY:   /s/ Neeraj N. Patel
      NEERAJ N. PATEL
      ASSISTANT UNITED STATES ATTORNEY