UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| DANIEL E. CARPETNER | ) | CIVIL ACTION NO. |
| Petitioner | ) | 3:21-cv-01485-RNC |
| v. | ) |  |
|  | ) |  |
| MERRICK B. GARLAND, | ) |  |
| UNITED STATES ATTORNEY GENERAL | ) |  |
| Respondent | ) |  |
|  | ) | July 29, 2022 |

JUL 29 2022 PM3:05
FILED-USDC-CT-HARTFORD

**<u>SUPPLEMENTAL ADDENDUM TO THE COURT CONCERNING RECENTLY ADJUDICATED CASES IN SUPPORT OF PETITIONER'S APPLICATION TO VACATE CONVICTION AND DISMISS INDICTMENT</u>**

1

## PRELIMINARY STATEMENT

As the Court is well aware, the Petitioner in this case, Daniel Carpenter (hereinafter "Petitioner") has consistently asserted the many flaws in his Superseding Indictment of May 14, 2014. The Court is also aware that Petitioner has consistently argued that his Indictment was "constructively amended" at trial to match the Second Circuit's use of the "Right to Control Theory of Fraud" in *United States v. Binday,* 804 F.3d 558 (2d Cir. 2015), Whereas Petitioner respectfully begs that the Government would confess its error as was done in *United States v. Nejad*, 521 F. Supp. 3d 438, 442 (S.D.N.Y. 2021) who was fortunate to have his conviction vacated because the Government admitted that they did not turnover one piece of *Brady* evidence.

The Supreme Court granted Certiorari on June 30th in four cases from the Second Circuit dealing with the "Right to Control" Theory of Fraud. The attorneys petitioned the district court on July 1st and the defendants were released on Saturday, July 2nd. Petitioner has been waiting on his 2243 and 2255 since November 2021. After more than a year on Supervised Release, Petitioner asked this Court to grant the termination of his Supervised Release. Petitioner asked this Court to grant the termination of his Supervised Release on May 20th. Two months later there has been no response from the Government or this Court.

Petitioner will also discuss a case submitted by AUSA Patel to Judge Meyer, who is in charge of Petitioner's 2243 to vacate his conviction in Boston—*United States v. Lesane*, No. 20-7144, 2022 WL 2720852, at *10 (4th Cir. July 14, 2022). Obviously, AUSA Patel did not read the case because he cited it for an old case before AEDPA and Petitioner more than qualifies for the same four elements of *Coram Nobis* that the defendant in *Lesane* qualified for.

Finally, Petitioner will quote extensively from Justice Breyer's Opinion for a 9-0 unanimous Supreme Court in *Ruan*. This Court will recognize many famous quotes that have appeared before in Petitioner's many filings. Suffice it to say, the Government is required to allege facts to show all five elements of Mail & Wire Fraud. Petitioner respectfully suggests they did not even "suggest" *any* of the necessary five elements. The Court can readily see that words like "*mens rea*" and "scienter" are nowhere to be found in Petitioner's untimely and Constitutionally defective Superseding Indictment. Petitioner therefore requests that this Court expeditiously grant the Petitioner's 2255 Petitioner pursuant to 28 U.S.C. 2243.

## I.     THE DEMISE OF THE "RIGHT TO CONTROL" THEORY OF FRAUD

One could easily surmise that Louis Cinninelli was lucky to have Michael Dreeben as his attorney. While former Solicitor General Dreeben is the recordholder for appearances before the Supreme Court, Petitioner respectfully suggests that the Right to Control Theory of Fraud created by the Second Circuit has been under attack for years. Petitioner respectfully asks this Court for the same two-day treatment that Louis Ciminelli received (as well as *Ex Parte Merryman*) and grant Petitioner's *Writ of Habeas Corpus* sometime in August based on Exhibit One, the granting of the *Writ of Certiorari* and the famous cases cited by Michael Dreeben in his original petition attached as Exhibit Two, and his reply brief attached as Exhibit Three.

Petitioner would like to suggest that if the Government confessed error in *Olan v. United States*, No. 20-306, Judgment Vacated January 11, 2021, after the Supreme Court's decision in *Kelly v. United States*, 140 S. Ct. 1565 (2020), they should do the same thing in this case. Not surprisingly, the Supreme Court has ordered the Government to reply in *Binday* in August.

A good example of various Courts coming to grips with the demise of the Right to Control Theory of Fraud can be seen in this recent decision from the District of Guam granting an

3

Acquittal after trial and citing the Ninth Circuit's decision in *Yates* which decimated the idea that misinformation could qualify as "money or property" under the fraud statutes:

> As to the government's second theory based on loss of employee compensation, the Court rejected that theory because the loss was only incidental. In other words, the property must play more than some bit part in a scheme: It must be an "object of the fraud." Put differently, a property fraud conviction cannot stand when the loss to the victim is only an incidental byproduct of the scheme.
>
> The Ninth Circuit more recently addressed this issue in *United States v. Yates*, 16 F.4th 256, 267 (9th Cir. 2021), a case involving bank executives charged with conspiracy to commit bank fraud for misrepresenting the condition of their bank. The government charged the defendants with property fraud, not honest-services fraud. **But in describing the deprivation of "something of value," the government told the jury that the defendants "sought to deprive" the bank and the board of directors of 'accurate financial information in the bank's books and records."** *Id.* **at 265. The Ninth Circuit majority panel concluded that this "accurate-information theory is legally insufficient as there is no cognizable property interest in "the ethereal right to accurate information."** *Id*. The government also argued that the defendants sought to deprive the bank of their salaries and moneys, which the Court noted are forms of money, but there is a difference between a scheme whose object is to obtain a new or higher salary and a scheme whose object is to deceive an employer while continuing to draw an existing salary—essentially, avoiding being fired. *Id.* at 266. *United States v. Smith*, No. 1:17-CR-00020, 2022 WL 2103063, at *6 (D. Guam June 3, 2022)

## II. THE SUPREME COURT'S UNANIMOUS DECISION IN *XIULU RUAN V. UNITED STATES*, 597 U.S. ___ (2022) IS DISPOSTIVE IN THIS CASE

On June 30, 2022 the Supreme Court granted Certiorari in four different Writs attacking the Second Circuit's "Right to Control Theory" of Fraud. The decisions were announced on Friday July 1st and the Petitioner's were released from prison the next day on a Saturday. Petitioner has respectfully asked for the immediate issuance of the Writ as was done in *Ex Parte Merryman*, 17 F. Cas. 144 (1861)—in two days during the Civil War.

Prior to that on June 27, 2022 the Supreme Court vacated the conviction of a doctor, who thought he was writing legal prescriptions, with Justice Breyer writing for a 9-0 unanimous Supreme Court in *Ruan*:

4

**First as a general matter, our criminal law seeks to punish the " vicious will."** *Morissette v. United States*, 342 U.S. 246, (1952); **With few exceptions, " wrongdoing must be conscious to be criminal."** *Elonis v. United States*, 575 U.S. 723, 734, (2015) (quoting *Morissette*, 342 U.S. at 252, 72 S.Ct. 240). Indeed, we have said that consciousness of wrongdoing is a principle "as universal and persistent in mature systems of [criminal] law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil."

**Consequently, when we interpret criminal statutes, we normally "start from a longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state."** *Rehaif v. United States*, 588 U. S. ——, ——, 139 S.Ct. 2191, 2195, (2019). **We have referred to this culpable mental state as "scienter," which means the degree of knowledge necessary to make a person criminally responsible for his or her acts.** *Morissette*, 342 U.S. at 250–252, 72 (1952)

**Applying the presumption of scienter, we have read into criminal statutes that are "silent on the required mental state"—meaning statutes that contain no *mens rea* provision whatsoever—" that *mens rea* which is necessary to separate wrongful conduct from "otherwise innocent conduct."** *Elonis*, 575 U.S. at 736, 135 S.Ct. 2001. Unsurprisingly, given the meaning of scienter, the *mens rea* we have read into such statutes is often that of knowledge or intent. *See, e.g., Staples v. United States*, 511 U.S. 600, 619, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994); *United States v. United States Gypsum Co.*, 438 U.S. 422, 444–446, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978).

And when a statute is not silent as to *mens rea* but instead "includes a general scienter provision," "the presumption applies with equal or greater force" to the scope of that provision. *Rehaif*, 588 U. S., at ——, 139 S.Ct., at 2195 (emphasis added). We have accordingly held that a word such as "knowingly" modifies not only the words directly following it, but also those other statutory terms that "separate wrongful from innocent acts." Id., at ——, 139 S.Ct., at 2197; see, e.g., ibid.; *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72, 115 S.Ct. 464 (1994); *Liparota v. United States*, 471 U.S. 419, 426, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985). Applying § 841's "knowingly or intentionally" *mens rea* to the authorization clause thus "helps advance the purpose of scienter, for it helps to separate wrongful from innocent acts." *Rehaif*, 588 U. S., at ——, 139 S.Ct., at 2197; see also *X-Citement Video*, 513 U.S. at 72–73, 115 S.Ct. 464.

Rather, § 841 imposes severe penalties upon those who violate it, including life imprisonment and fines up to $1 million. See § 841(b)(1)(C); see generally § 841(b). **Such severe penalties counsel in favor of a strong scienter requirement. See Staples, 511 U.S. at 618–619, 114 S.Ct. 1793 (noting that "a severe penalty is a further factor tending to suggest that ... the usual presumption that a defendant must know the facts that make his conduct**

5

**illegal should apply");** *United States Gypsum*, 438 U.S. at 442, n. 18, 98 S.Ct. 2864.

Analogous precedent reinforces our conclusion. In *Liparota*, we interpreted a statute penalizing anyone who " 'knowingly uses [food stamps] in any manner not authorized by' " statute. 471 U.S. at 420, 105 S.Ct. 2084. We held that "knowingly" modified both the "use" of food stamps element and the element that the use be "not authorized." *Id.*, at 423, 433, 105 S.Ct. 2084. We applied "knowingly" to the authorization language even though Congress had not "explicitly and unambiguously" indicated that it should so apply. *Id.*, at 426, 105 S.Ct. 2084. But if knowingly did not modify the fact of nonauthorization, we explained, the statute "would ... criminalize a broad range of apparently innocent conduct." *Ibid.*

Similarly, in *X-Citement Video*, we interpreted a statute penalizing anyone who " 'knowingly transports' " or " 'knowingly receives' " videos " 'involv[ing] the use of a minor engaging in sexually explicit conduct.' " 513 U.S. at 68, 115 S.Ct. 464. **We held that "knowingly" applied not only to the element of transporting or receiving videos but also to the elemental fact that the videos involve "the use of a minor."** *Id.*, at 66, 115 S.Ct. 464. We recognized that this was not "the most grammatical reading of the statute." *Id.*, at 70, 115 S.Ct. 464. But, we explained, "the age of the performers is the crucial element separating legal innocence from wrongful conduct," for possessing sexually explicit videos involving nonminors is protected First Amendment activity. *Id.*, at 72–73, 115 S.Ct. 464.

Finally, in *Rehaif*, we interpreted a statutory scheme in which one statutory subsection provided penalties for anyone who "knowingly violates" a separate subsection. 588 U. S., at —— – ——, 139 S.Ct., at 2195-2196. This latter subsection made it "unlawful" for people with certain statuses (i.e., being a felon or being in the country unlawfully) to possess a gun. *Ibid.* We held that the first subsection's "knowingly" language applied to the status element in the second subsection. *Id.*, at ——, 139 S.Ct., at 2196. To convict under the statute, then, the Government had to prove that a defendant knew he had one of the listed statuses. Ibid. "Without knowledge of that status," we reasoned, "the defendant may well lack the intent needed to make his behavior wrongful," because "[a]ssuming compliance with ordinary licensing requirements, the possession of a gun can be entirely innocent." Id., at ——, 139 S.Ct., at 2197. *Ruan v. United States*, No. 20-1410, 2022 WL 2295024, at 5-6 (U.S. June 27, 2022).

As the Court can clearly see—none of the requirements concerning scienter, *mens rea*, or "knowingly" violating a statute, that Justice Breyer speaks of as constitutionally required can be found in Petitioner's Superseding Indictment of May 14, 2014 attached as Exhibit Five. To make the examination of the Superseding Indictment easy for the Court, Petitioner has attached

6

Charles Doyle's study of the elements of Mail & Wire Fraud as Exhibit Four for the ease of the Court's perusal. None of the required "words" or "elements" can be found in the untimely Superseding Indictment that should be dismissed on other grounds as well.

### III. THE FOURTH CIRCUIT'S DECISION IN LESANE, SUBMITTED BY AUSA PATEL ALSO SUGGESTS THAT THE *WRIT* SHOULD BE GRANTED

This case was decided by the Fourth Circuit the day before AUSA Patel's brief was due in Petitioner's 2243 Petition in front of Judge Meyer and is very instructive because it granted the *Writ of Coram Nobis* to a pro se Petitioner vacating his 2003 gun conviction in July of 2022 based on several famous Supreme Court decisions that are all applicable to Petitioner's case:

> [T]he Court explained that **there is a presumption that collateral consequences flow from any criminal conviction.** *Id.* at 606. **And it recognized that "a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction."** *Id.* (quoting *Sibron v. New York*, 392 U.S. 40, 57, (1968)). We are persuaded by the sound reasoning of the Ninth Circuit. And we are also satisfied that the possibility that Lesane's invalid 2003 firearm conviction has actually impacted his sentence in the 2019 proceedings — or will affect a future one — is sufficient to satisfy the third coram nobis prong. Our analysis thus leads us to conclude that Lesane has satisfied the requirements for coram nobis relief and that the district court abused its discretion in denying the writ. We emphasize that an essential purpose of the coram nobis remedy, as Judge Widener explained in *Mandel*, is to "achieve justice." See 862 F.2d at 1074. **In order to achieve justice in this situation — where it is clear that the coram nobis petitioner is actually innocent, yet spent several years in custody for an offense he did not commit — we are obliged to set the record straight.** *United States v. Lesane*, No. 20-7144, 2022 WL 2720852, at *7 (4th Cir. July 14, 2022).

In *Lesane*, citing the Supreme Court's decision in *McQuiggin*, the Fourth Circuit noted that:

> The Supreme Court recently recognized that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or, as in this case, expiration of the statute of limitations." *See McQuiggin v. Perkins*, 569 U.S. 383, 386, 133 S.Ct. 1924, 185 L.Ed.2d 1019

7

(2013). **In its *McQuiggin* decision, the Court ruled that AEDPA's statute of limitations can be overcome by a showing of actual innocence.** *Id.* **Nevertheless, the Court deemed relevant the existence of unjustified delay in the petitioner's efforts to obtain habeas corpus relief based on a showing of actual innocence. As the Court explained, "a federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown."** *Id.* at 387, 133 S.Ct. 1924.

The Supreme Court's approach to an "unjustifiable delay" in pursuing habeas corpus relief based on actual innocence should also inform our analysis of the timeliness requirement for coram nobis proceedings where the petitioner is actually innocent. And we are satisfied that, when a coram nobis petitioner presents a persuasive claim of actual innocence, a failure to explain a lack of effort in seeking relief earlier can be relevant, but will not categorically preclude the writ. **Moreover, if the petitioner is clearly innocent of the offense being challenged, untimeliness should not ordinarily bar relief.** *United States v. Lesane*, No. 20-7144, 2022 WL 2720852, at *7 (4th Cir. July 14, 2022).

There is a certain irony in AUSA Patel's citing but failing to understand the fundamentals of the Fourth Circuit's decision in *Lesane*, which maintains that: "**it is difficult to imagine an error of a more fundamental character than a conviction for an offense the person did not commit.** *See, e.g., McQuiggin*, **569 U.S. at 392, 133 S.Ct. 1924 (explaining that fundamental miscarriage of justice occurs when an innocent person is convicted).** *United States v. Lesane*, No. 20-7144, 2022 WL 2720852, at *7 (4th Cir. July 14, 2022).

## CONCLUSION

Wherefore, based on Petitioner's actual innocence under the law and the obvious defects in Petitioner's untimely Superseding Indictment, Petitioner respectfully prays that this Court follow the alacrity of other District Courts and immediately issue the "sacred" *Writ* to vacate the Petitioner's unlawful conviction and dismiss his constitutionally defective Indictment pursuant to 28 U.S.C 2243.

Respectfully Submitted,

/s/ Daniel E. Carpenter
Daniel E. Carpenter
Petitioner, *pro se*
18 Pondside Lane
West Simsbury, CT 06092

## CERTIFICATION

I hereby certify that on this 29th day of July, 2022, a copy of the foregoing was filed at the District of Connecticut Clerk's office in Hartford 450 Main Street, Hartford, CT 06103. Notice of this filing was also sent by USPS to US Attorney's Office Hartford Office, US Attorney's New Haven Office, Connecticut Financial Center, 157 Church Street, Floor 25, New Haven, CT 06510