AUG 8 2022 PM 2:00
FILED-USDC-CT-HARTFORD

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DANIEL E. CARPENTER | ) | CIVIL ACTION NO. |
| Petitioner | ) | 3:21-cv-01485-RNC |
| v. | ) | |
| | ) | |
| MERRICK B. GARLAND, | ) | |
| UNITED STATES ATTORNEY GENERAL | ) | |
| Respondent | ) | |
| | ) | August 5, 2022 |

## PETITIONER'S REPLY IN SUPPORT HIS APPLICATION TO VACATE CONVICTION AND DISMISS INDICTMENT

TO THE HONORABLE JUDGE ROBERT N. CHATIGNY, MAY IT PLEASE THE COURT:

NOW COMES THE PETITIONER, Daniel E. Carpenter (hereinafter "Petitioner"), to reply to the Government's Objection to his 28 USC 2243 and 28 USC 2255 Petition that was submitted to this Court on November 4, 2021.

## PRELIMINARY STATEMENT

Petitioner respectfully begs the Court's indulgence as AUSA Patel seeks to create his own version of the famous "Prisoner's Dilemma" whereby someone who has a dozen constitutional complaints to raise forfeits those complaints if they are not raised on appeal. Of course, if they were raised on appeal and the conviction was not overturned, then according to AUSA Patel those grounds are now foreclosed. As this Court is well aware, the Second Circuit will not entertain new constitutional problems that were not first raised with the District Court. Especially in a decade where "gun and drug" prisoners are using the "Sacred Writ" to overturn convictions where they pleaded guilty and AUSA Patel submitted a new case to Judge Meyer from the Fourth Circuit (the day before his brief was due) where the Court granted *Coram Nobis* relief in July 2022 of a *pro se*

1

petitioner's 2003 conviction on a gun case. So once this Court grants Petitioner's 18 U.S.C. 3583

Motion to terminate his Supervised Release filed in May, then Petitioner can submit his own *Writ*

*of Coram Nobis* just as the petitioner in *Lesane* did. *United States v. Lesane*, No. 20-7144, 2022

WL 2720852, at *10 (4th Cir. July 14, 2022).

Moreover, in the unlikely event that this Court dismisses Petitioner's 2243 and 2255,

Petitioner can then submit a Rule 60(b)(6) Motion as the *pro se* petitioner did in *Cobb*:

> In the Second Circuit, a district court has the authority to vacate its own judgment
> sua sponte under Federal Rule of Civil Procedure 60(b)(6). *See, e.g., Fort Knox
> Music, Inc. v. Baptiste*, 257 F.3d 108, 111 (2d Cir. 2001); The rule, which permits
> a court to "relieve a party ... from a final judgment" for "any ... reason that justifies
> relief," Fed. R. Civ. P. 60(b)(6), "confers broad discretion ... to grant relief when
> appropriate to accomplish justice." Relief is appropriate "where there are
> extraordinary circumstances, or where the judgment may work an extreme and
> undue hardship, and should be liberally construed when substantial justice will thus
> be served." Courts in this circuit have relied on 60(b)(6) to sua sponte vacate a
> denial of habeas and reopen the proceeding. *See Walker v. Conway*, No. 9:02-CV-
> 790 (FJS/VEB), 2007 WL 2027911, at *1 (N.D.N.Y. July 11, 2007); *Cole v. United
> States*, No. 98 CV 7670(SJ), 2003 WL 21909758, at *1 (E.D.N.Y. July 30, 2003).
>
> I find that the circumstances here warrant vacatur of my judgment denying Mr.
> Cobb's § 2255 habeas petition. As discussed infra, the petition included a
> meritorious argument for vacating his sentence, but the argument was overlooked
> by both the government and the Court. *Cobb v. United States*, No. 04-CR-203
> (ARR), 2019 WL 2607002, at *2–3 (E.D.N.Y. Jan. 11, 2019)

Obviously, AUSA Patel also forgets that Petitioner's Superseding Indictment was not only

untimely—it did not invoke this Court's jurisdiction in May of 2014, which is before the change

in the law in December 2014. Therefore, Petitioner can also submit a challenge to this Court's

jurisdiction pursuant to the "old" rule under Rule 12(b)(3)(B). *See e.g. United States v. Pirro*, 212

F.3d 86 (2d Cir. 2000) and *United States v. Aleynikov*, 676 F.3d 71 (2d Cir. 2012). Ultimately,

Petitioner can also keep challenging the lack of jurisdiction of this Court pursuant to Rule 60(b)(4).

AUSA Patel should know better as the Dissent in the Second Circuit by Judges Jacobs and Cabranes were proven right by the Supreme Court's decision in *Marinello v. United States*, 138 S.Ct. 1101 (2018):

> I respectfully dissent from the denial of rehearing en banc. **The panel weighed in on the wrong side of a circuit split, affirmed a criminal conviction based on the most vague of residual clauses, and in so doing has cleared a garden path for prosecutorial abuse.**
>
> **Similar alarm about fair warning and overbreadth animates *Arthur Andersen LLP v. United States*, which recognized and generously construed a knowledge requirement to limit the scope of a statute that criminalized "corruptly persuad[ing]" someone to destroy documents.** 544 U.S. 696, 125 S.Ct. 2129, 161 L.Ed.2d 1008 (2005) (interpreting 18 U.S.C. § 1512). For much the same reason, the Supreme Court sharply curtailed so-called honest-services fraud in *Skilling v. United States*, 561 U.S. 358, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010). Further, in *Yates v. United States*, the government used a provision of the Sarbanes-Oxley Act criminalizing destruction of evidence to prosecute a poaching fisherman who threw fish overboard; the plurality invoked the rule of lenity to reverse on the ground that, under the statute, a fish was not a "tangible object." —— U.S. ——, 135 S.Ct. 1074, 1088, 191 L.Ed.2d 64 (2015) (interpreting 18 U.S.C. § 1519). And in *Johnson v. United States*, the Court held that the "residual clause" of the Armed Career Criminal Act was so vague that it failed to provide the constitutionally required fair notice of what conduct it actually punished. —— U.S. ——, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015) (interpreting 18 U.S.C. § 924(e)). Most recently, in *McDonnell v. United States*, the Court rejected an expansive view of what qualifies as an "official act" in public corruption cases. —— U.S. ——, 136 S.Ct. 2355, 195 L.Ed.2d 639 (2016). **The panel opinion in *Marinello* affords the sort of capacious, unbounded, and oppressive opportunity for prosecutorial abuse that the Supreme Court has repeatedly curtailed.**
>
> Finally, unlike the panel, I decline to defer to the Department of Justice's views to determine the scope of a criminal statute. Even if the majority is correct—even if any limit to the omnibus clause is insupportable—then we should have gone in banc to determine whether such a limitless statute is constitutional. **At some point, prosecutors must encounter boundaries to discretion, so that no American prosecutor can say, "Show me the man and I'll find you the crime."** *United States v. Marinello*, 855 F.3d 455-459 (2d Cir. 2017)

The Court must realize AUSA Patel and AUSA Novick violated the law several times, and Petitioner respectfully requests the relief granted and the statements made by Judge Alison Nathan in *United States v. Nejad,* 487 F. Supp. 3d 206, 215–16 (S.D.N.Y. 2020). More importantly, this

3

Court knows that AUSA Patel vilified Petitioner as a "danger to society" while praising Ed Waesche for his help in convicting an innocent man. The irony of this is inescapable because Petitioner did not lie to anyone at anytime about anything (as acknowledged by this Court in the Verdict); and Ed Waesche admitted to lying on insurance applications which AUSA Patel thinks is a crime even after the Supreme Court's decision in *Stipcich v. Metropolitan Life*, 277 U.S. 311 (1928) and the Second Circuit's decisions in *AEI v. Lincoln,* 892 F.3d 126 (2d Cir. 2018) and *United States v. Countrywide*, 822 F.3d 650 (2d Cir. 2016), which was a $10 Billion scandal. Suffice it to say, if there was no Mail & Wire Fraud in *Countrywide*, there was no fraud involving the Charter Oak Trust Welfare Benefit Plan. Petitioner thinks of AUSA Patel and AUSA Novick every time he hears a commercial for 877-SELL-EASY or the ubiquitous commercials for Coventry Direct to buy your insurance policy.

## I.   PETITIONER IS ACTUALLY AND FACTUALLY INNOCENT AS A MATTER OF LAW

Respectfully, AUSA Patel makes a number of nonsensical statements in his Opposition Brief that betray his lack of understanding of the law and the Due Process requirements of the Constitution. For example, his fundamental claim is that this Court should disregard both the claims that his attorneys brought up on appeal as well as the claims not brought up on appeal. For this remarkable misstatement of the law, AUSA Patel cites *Yick Man Mui v. United States*, 614 F.3d 50 (2nd Cir. 2010), a 2010 case from the Second Circuit where the defendant actually won and had his case returned to the District Court judge who denied his 2255. But remarkably, this case, *Yick Man Mui*, is three years before the Supreme Court's decision in *McQuiggin v. Perkins*, 569 U.S. 383, 392–93, 403 (2013), which expanded the "innocence gateway" and the "miscarriage of justice" exception. Similarly, the Supreme Court's decision in *Buck v. Davis*, 580 U.S. 100 (2017), gave new life to the Rule 60(b)(6) in criminal cases. AUSA Patel seems to think that the

4

Second Circuit's decision in *United States v. Finazzo*, 850 F.3d 94 (2nd Cir. 2017) in March 2017 takes away from the Supreme Court's unanimous decision in *Kelly v. United States*, 140 S.Ct. 1565 (2020), but it was three years before *Kelly* and adds the actual "tangible" harm requirement.

Therefore, to make it easier for the Court to see through AUSA Patel's violation of *Berger* and to help this Court participate in the destruction of the "Right to Control" Theory of Fraud––Petitioner has included as Exhibit One the briefs submitted by the former Solicitor General Michael Dreeben––as well as the language from Justice Breyer's opinion for another unanimous Supreme Court decision from June 27, 2022 in *Ruan v. United States*, No. 20-1410, 2022 WL 2295024, at 5-6 (U.S. June 27, 2022), requiring that the words "scienter" and "*mens rea*" must not only be in an indictment, they must be proven by the Government. Amazingly, the Second Circuit quoted several cases from the 1890's to arrive at the very same conclusion in *Countrywide*:

> Even earlier, the highest common-law courts in the country routinely espoused the view that any party wishing to claim fraud must prove that the representation was actually made with contemporaneous fraudulent intent:

> The representation upon which [a fraud claim] is based must be shown not only to have been false and material, but that the defendant when he made it knew that it was false, or not knowing whether it was true or false and not caring what the fact might be, made it recklessly, paying no heed to the injury which might ensue. *Kountze v. Kennedy*, 147 N.Y. 124, 129, 41 N.E. 414 (1895) (emphasis added).

> **There can be no question at this date that, in an action of deceit, the scienter must not only be alleged, but proved,** and the jury must be satisfied that the defendant made a statement knowing it to be false, or with such conscious ignorance of its truth as to be equivalent to a falsehood. This is the general rule, and it has been declared with notable emphasis in several recent cases in this state. *Griswold v. Gebbie*, 126 Pa. 353, 363, 17 A. 673 (1889); *see also, e.g., Shackett v. Bickford*, 74 N.H. 57, 65 A. 252 (1906); *Nw. S.S. Co. v. Dexter Horton & Co.*, 29 Wash. 565, 568–69, 70 P. 59 (1902). *U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 659 (2d Cir. 2016)

*Countrywide* is not mentioned anywhere in Petitioner's appeal brief because it was decided in August of 2016 after Petitioner's Verdict in June 2016. AUSA Patel cites this Court dismissing the application to *Countrywide* in this case on a phone call—and AUSA Patel cites the Court saying that *United States v. Binday*, 908 F. Supp.2d 485, 491 (S.D.N.Y. 2012) and the "Right to Control" Theory are still the law. *See* AUSA Patel Brief at 12.

Being fair to AUSA Patel, Petitioner is just looking for the "immediate" relief that was granted to the four "fraudulent felons" appealing their convictions under the "Right to Control" Theory of Fraud. Their *Writs of Certiorari* were granted on June 30th, it was announced on July 1st—a Friday—and they were released on Saturday July 2nd. Similarly, a District Court expeditiously granted a 2255 *pro se* petition on the pleadings based on *United States v. Capriata*, No. 12-CR-712 (SHS), 2021 WL 1180049 (S.D.N.Y. Mar. 29, 2021)(Alternatively, courts may grant Section 2255 relief on the pleadings). *See United States v. Godfrey*, No. 17-CR-511 (SHS), 2022 WL 2872274, at *5 (S.D.N.Y. July 21, 2022).

The Court knows well that Petitioner has submitted all of his filings pursuant to the familiar "Plain Error" Standard—because new law favorable to the Petitioner is being created all the time. *See e.g. United States v. Pikus*, 39 F.4th 39, 52–53 (2d Cir. June 30, 2022)(Speedy trial decision by the Second Circuit, vacating the defendant's conviction for a minor delay compared to the extensive delays in Petitioner's case.) Petitioner even has a valid 18 U.S.C. 3161(j) case that is much stronger than *United States v. Benatta*, 2003 WL 22202371 (W.D.N.Y. 2003). The defendant in *Benatta* only spent four months at MDC Brooklyn while Petitioner was there for over six months.

Finally AUSA Patel makes the unbelievable statement that Judge Underhill never ruled in Petitioner's favor. Not only is that categorically untrue—Judge Underhill ruled to return

Petitioner's property in 2015 and 2018—and again in April 2022 to have it destroyed and the Government is appealing for a third time. Significantly a Westlaw search shows the only case anywhere to distinguish itself from Judge Alison Nathan's brilliant discussion of the Fourth Amendment in *United States v. Wey*, 256 F. Supp. 3d 355, 381–82 (S.D.N.Y. 2017) is one of the decisions in *Carpenter v. Allen*, No. 3:14-cv-741(SRU)(D. Conn). "Justice" in the Second Circuit should not depend on what Judge or Prosecutor you get—but Petitioner wants to make a big deal of the injustice in this case so that this Court can do a "required-reading" opinion as Judge Nathan did in *Nejad*.

Being innocent gives Petitioner an absolute gateway to overcome any procedural obstacle. But Petitioner also satisfies the original "cause and prejudice" that was in effect before AEDPA and *Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioner need only satisfy one or the other—actual innocence under the law or the traditional "cause and prejudice" standard. Here Petitioner satisfies both. But Petitioner also has a dozen "major league" violations of the Constitution—any one of which satisfies the third exception—the Miscarriage of Justice exception. Petitioner respectfully cites AUSA Patel's Brief again *at 12* where the Court says it agrees with the Government that *Countrywide* is *inapplicable* to Petitioner's case and that Petitioner's conviction will stand based on the "Right to Control" Theory of Fraud in *Binday*. This is a classic Constructive Amendment violation because the words "Right to Control" are nowhere to be found in Petitioner's untimely May 14, 2014 Superseding Indictment. A Constructive Amendment alone requires vacating Petitioner's conviction. *See Charles Doyle, Elements of Mail & Wire Fraud* as Exhibit Four of Exhibit One, as well as Petitioner's Indictment as Exhibit Five of Exhibit One attached.

Petitioner respectfully asserts that AUSA Patel's Mandate Rule does not bar any of his constitutional claims—but this is what the Supreme Court stated in *McQuiggin*:

> As relevant here, we have also expressed a willingness to excuse a petitioner's default, even absent a showing of cause, "**where a constitutional violation has probably resulted in the conviction of one who is actually innocent**." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *see Schlup v. Delo*, 513 U.S. 298, 326–327(1995); *House v. Bell*, 547 U.S. 518, 536–537, (2006).

> We have recognized, however, that a prisoner "otherwise subject to defenses of abusive or successive use of the writ [of habeas corpus] may have his federal constitutional claim considered on the merits if he makes a proper showing of actual innocence." (*citing Sawyer v. Whitley*, 505 U.S. 333, (1992)). *See also Murray v. Carrier*, 477 U.S. 478, 496, (1986) ("[W]e think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."). In other words, a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims (here, ineffective assistance of counsel) on the merits notwithstanding the existence of a procedural bar to relief. "**This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons.**" *Herrera,* 506 U.S., at 404, 113 S.Ct. 853.

> We have applied the miscarriage of justice exception to overcome various procedural defaults. These include "successive" petitions asserting previously rejected claims, *see Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986) (plurality opinion), "abusive" petitions asserting in a second petition claims   that could have been raised in a first petition, *see McCleskey v. Zant*, 499 U.S. 467, 494–495 (1991), failure to develop facts in state court, *see Keeney v. Tamayo–Reyes*, 504 U.S. 1, 11–12, 8 (1992), and failure to observe state procedural rules, including filing deadlines, *see Coleman v. Thompson*, 501 U.S. 722, 750, (1991); *Carrier*, 477 U.S., at 495–496, (1986). *McQuiggin v. Perkins*, 569 U.S. 383, 392–93, 403 (2013).

## II.    THE DEFECTIVE INDICTMENT DID NOT ESTABLISH THE COURT'S JURISDICTION

As this Court knows from the Supreme Court's decision in *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006), a federal court's jurisdiction may be challenged at anytime and at any level for the first time. Recently, the First Circuit vacated a defendant's gun conviction despite the fact that the defendant had pleaded guilty, which as AUSA Patel would be quick to point out extinguishes all of a petitioner's "non-jurisdictional" claims. *See United States v. Guzman-Merced,* 2020 WL 7585176 (1st Cir. 2020). Significantly, the First Circuit based its decision that the guilty plea was defective because the District Court lacked jurisdiction because the prosecutor left out "knowingly" in the Indictment and the Court's Rule 11 instructions. The First Circuit similarly found only one element missing in vacating the convictions and dismissing the indictments in *United States v. Bravo-Fernandez*, 913 F.3d 244 (1st Cir. 2019).

The First Circuit's decision in *Guzman-Merced* and the Second Circuit's decision in *United States v. Balde*, 943 F.3d 73 (2d Cir. 2019) are both based on the Second Circuit's decision in *United States v. Prado*, 933 F.3d 121, 153–54 (2d Cir. 2019):

> But where the record provided no basis for a finding that the vessel was unregistered, or otherwise subject to the jurisdiction of the United States, the defendants' drug possession did not come within the reach of the MDLEA. They had not committed a criminal offense under the laws of the United States. There was no valid basis for their convictions. The deficiencies in the Rule 11 procedure affected the defendants' substantial rights. Their guilty pleas and the judgments of conviction must be vacated.  Section 70504(a) of the MDLEA requires the court to make a preliminary determination of jurisdictional issues. **The import of this rule, although unstated, is that if the government fails to establish the jurisdictional element, such as by failing to show that the vessel was subject to the jurisdiction of the United States, the court should dismiss the indictment.** In this case, for reasons explained above, the indictment should have been dismissed upon the government's failure to demonstrate at the pretrial hearing that the vessel was subject to the jurisdiction of the United States. The error was not cured by the defendants' subsequent defective guilty pleas.  The judgments of conviction are hereby VACATED and the indictment is DISMISSED.

Significantly, the Second Circuit's decision in *Balde* and *Prado* both refer to the Second

Circuit's decision in *United States v. Pirro,* 212 F.3d 86 (2d Cir. 2000), which Petitioner has cited

numerous times in numerous motions:

> Jurisdiction is vested in the federal courts when a proper indictment is filed: "[i]f
> the indictment alleges an offense under U.S. criminal statutes, the courts of the
> United States have jurisdiction to adjudicate the claim. If the facts fail to show a
> violation, the court enters judgment for the defendant." *United States v. Prado*, 933
> F.3d 121, 134 (2d Cir. 2019).

> [J]urisdictional argument — i.e. one that would survive waiver by a valid guilty
> plea — is one where a defendant demonstrates that the "face of the indictment
> discloses that the count or counts to which he pleaded guilty failed to charge a
> federal offense." *Yousef*, 750 F.3d at 259 (quoting *Hayle*, 815 F.2d at 881); see also
> *United States v. Bastian*, 770 F.3d 212, 217 (2d Cir. 2014) ("**A defect qualifies as
> jurisdictional only if it alleges that the face of the defendant's indictment
> discloses that the count to which he pleaded guilty failed to charge a federal
> offense, such that the district court lacked the power to entertain the
> prosecution.**") *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (quoting
> *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000)). *United States v. Balde*, 943
> F.3d 73, 88–89 (2d Cir. 2019)

## III.   THE DEFECTIVE INDICTMENT WAS CONSTRUCTIVELY AMENDED BY THE GOVERNMENT

Unlike the Petitioner in this prosecution, the Government received ample "Fair Warning"

from the Second Circuit that it should be very careful about how it drafts indictments involving

fraud claims, especially when a conspiracy is alleged:

> In order to avoid [constructively] amending an indictment in violation of the Fifth
> Amendment**, the government in fraud cases should think through the nature of the
> crime it wishes to allege and then spell out the offense in a carefully drafted
> indictment**, instead of confronting the defendant with its theory of criminality for the first
> time at trial. *See United States v. Mollica,* 849 F.2d 723, 729 (2d Cir. 1988), *citing* among
> other cases, *United States v. Rosenblatt*, 554 F.2d 36, 40 (2d Cir. 1977), *quoting Grunewald
> v. United States*, 353 U.S. 391, 404 (1957) (emphasis added).

As Judge Preska described what happened in Petitioner's case perfectly when describing

the failure of the indictment in the famous Larry Davis-World Trade Center case—*U.S. v. Davis

No.* 13-CR-923 (LAP), 2017 WL 3328240, at *13–14 (S.D.N.Y. Aug. 3, 2017) to even mention

the words "Right to Control," which words are nowhere to be found in Petitioner's Indictment,

Petitioner would respectfully request that the Court review Judge Preska's scholarly analysis of

the Constructive Amendment Doctrine in her decision in *Davis*:

> The theory of "constructive amendment" is based on the fundamental principle that "after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Stirone v. United States*, 361 U.S. 212, 215-16 (1960). "To prevail on a constructive amendment claim, a defendant must demonstrate that either the proof at trial or the trial court's jury instructions so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment." *United States v. Salmonese*, 352 F.3d 332, 337 (2d Cir. 1998); *see also United States v. LaSpina*, 299 F.3d 165, 181 (2d Cir. 2002). A constructive amendment is a per se violation of the Fifth Amendment, *LaSpina* at 181, and constructive amendments have been found when the government alleges one theory of the case in the indictment but argues another at trial. *Stirone* at 217 (proof of interference with interstate shipment of steel from Pennsylvania to Michigan and Kentucky was constructive amendment of indictment that alleged interference with shipment of sand into Pennsylvania).

Judge Preska goes on to examine the history of the Constructive Amendment Doctrine in

the Second Circuit:

> In considering the issue of constructive amendment, the Court is mindful that it is a fairly narrow doctrine in this Circuit. Indeed, the Court is aware of only six cases since 1988 in which the Court of Appeals has found constructive amendments. *See United States v. Mollica*, 849 F.2d 723, 730 (2d Cir. 1988); *United States v. Zingaro*, 858 F.2d 94, 99 (2d Cir. 1988); *United States v. Milstein*, 401 F.3d 53, 65 (2005); *United States v. Wozniak*, 126 F.3d 105, 111 (2d Cir. 1997); *United States v. Dhinsa*, 243 F.3d 635 (2d Cir. 2001); *United States v. Hassan*, 578 F.3d 108 (2d Cir. 2008)
>
> "A constructive amendment occurs where the actions of the court 'broaden the possible bases for conviction from that which appeared in the indictment.'" *Id*. (*quoting United States v. Banki*, 685 F.3d 99, 118 (2d Cir. 2011)). The Court of Appeals elaborated upon the standard as follows:  Even if an indictment might have been drawn in more general terms to encompass the ultimate conviction, where "**only one particular kind of [criminal conduct] is charged ... a conviction must rest on that charge and not another**." *Zingaro* at 99(emphasis added).

Judge Preska also does a brilliant analysis of why *Davis* is just like the Constructive

Amendments in *Stirone* and *Wozniak*, but Petitioner wishes to direct the Court's attention to the

11

*Davis* discussion on whether the "Right to Control Theory" was addressed in the indictment in

*Davis* or in the Indictment in Petitioner's case, or whether it was not:

> **Turning to the right to control theory first, either the right to control theory was contained in the core of criminality of the indictment or it was not**. If the right to control theory was within the core criminality charged in the indictment, then the indictment is insufficient because *Shellef* teaches that when a right to control theory involving a contract is alleged in an indictment there must also be an allegation that the misrepresentation had "relevance to the object of the contract" or an equivalent allegation, that there was a "discrepancy between benefits reasonably anticipated and actual benefits received," or that the misrepresentation went to "the nature of the bargain." *Shellef* at 108; *see also United States v. Binday*, 908 F. Supp.2d 485, 491 (S.D.N.Y. 2012)("Given the '*Shellef*' language in the present indictment, there is no danger that a jury might improperly convict the defendants based on a misrepresentation[] that had no relevance to the object of the contracts in question."), *aff'd*, 804 F.3d 558 (2d Cir. 2015). **This indictment contained none of this language or anything approximating it.**
>
> **If, however, the right to control theory was not part of the core of criminality contained in the indictment, then offering evidence, argument, and an instruction based on such a theory constitutes an impermissible constructive amendment**. Here, the indictment did not contain within its core of criminality the Government's right to control theory of harm. There is no allegation in the indictment that comes close to the right to control theory contained in the jury instruction, (*see supra* p. 90), which reads "it suffices [for a finding of fraudulent intent] that a defendant intend that his misrepresentation induce a counterparty to enter a transaction without the relevant facts to make an informed economic decision on matter that could expose the victim to economic harm," (see Tr. 1136-37.) Also, the indictment never specifies, as would be required for an indictment relying on a right to control theory, that the MWBE aspect of the contract was an essential element of the contract (or similar language). *See Shellef* at 108; *see also Binday* at 491. Without that language, a sufficiently pled right to control theory was not contained in the indictment. **Accordingly, the evidence and jury charge pursuant to a right to control theory worked a constructive amendment**. *Davis* at *35-36 (emphasis added).

Most importantly to the Petitioner's case, Judge Preska goes on to explain exactly the same

situation that Petitioner has experienced at the hands of the Government in this case:

> Similar logic applies to the Government's theories of actual harm. The core of criminality alleged by the Government by the end of trial included both the cost overrun theory and the certified payroll theory of actual harm. However, no allegation in the indictment encompasses these factual complexes or would have put the Defendants fairly on notice. **Therefore, by the end of trial, the Government alleged a different core of criminality from-that of the indictment with respect to its theories of actual harm**. *Davis* at *36.

As the Court is well aware, neither the words "right to control" nor the theory of "deprivation of valuable economic information" or even the required level of "tangible economic harm" as mandated by the Second Circuit in *United States v. Mittelstaedt*, 31 F.3d 1208 (2d Cir. 1994) are mentioned anywhere in either of Petitioner's Indictments. Those words simply do not appear anywhere in Petitioner's Superseding Indictment.

Therefore, the Government's Indictment of Petitioner lacked the necessary elements of "intended actual concrete harm" of *United States v. Rossomando*, 144 F.3d 197 (2d Cir. 1998), the "tangible economic harm" of *Mittelstaedt* and the words "Right to Control valuable economic information" required by *Davis*. The fact that Petitioner's trial was all about the "Right to Control" Theory of Fraud means that there was a Constructive Amendment of Petitioner's Indictment at trial that mandates vacating his conviction.

## IV.  THE *BRADY-JENCKS* VIOLATIONS IN THIS CASE ARE WORSE THAN *NEJAD*

AUSA Patel does not dispute that the Cherneski-Jencks Statement was not turned over to Petitioner before his trial or even after Stef Cherneski testified as is required by law. There are several other *Brady-Jencks* statements that were held from Petitioner, but in *United States v. Nejad*, 487 F. Supp. 3d 206, 215–16 (S.D.N.Y. 2020) there was only one such accidental failure by the Government and it resulted in Nejad's conviction being vacated and his indictment dismissed. Thus, in contemplating whether and when to disclose, such *Brady-Jencks* statements "[t]he Government must bear in mind, however, that it has the affirmative duty to resolve doubtful questions in favor of disclosure, and that if the sword of Damocles is hanging over the head of one of the two parties, it is hanging over the head of the [government]." *United States v. Hsia*, 24 F.Supp.2d 14, 30 (D.D.C. 1998). **Thus, when the "exculpatory character harmonizes with the theory of the defense case," failure to disclose that evidence in a timely fashion before the**

**start of a trial, when the defense counsel can take advantage of it, constitutes a *Brady***

**violation**. *United States v. Triumph Capital Group*, 544 F.3d 149, 164 (2d Cir. 2008). In this case,

the Government clearly violated not just *Brady* but the Jencks Act by not turning over the

Cherneski-Jencks Statement, and therefore, Petitioner's conviction should be vacated as was done

in *Nejad*.

In reluctantly vacating the defendant's conviction in *St Germain*, the District Court Judge

pondered the following;

> Here, the practice has proved costly. I reluctantly conclude that the Government
> violated its Brady obligations with respect to one piece of evidence by disclosing it
> on the eve of trial and in the guise of Jencks Act material. I further reluctantly
> conclude that the violation prejudiced the defendant. I am vacating the judgment of
> conviction on that basis. I do not need to reach, and therefore do not reach, the
> defendant's allegation that the Government knowingly proffered false testimony, or
> make any determination as to whether "newly discovered evidence" warrants a
> retrial—issues that are, in my mind, inextricably intertwined, and that could not be
> resolved without a hearing.

> *Brady* requires disclosure of the material exculpatory evidence early enough so that
> the defense can make use of the information. *Leka v. Portunado*, 257 F.3d 889 (2d
> Cir.2001). Suppression of exculpatory material violates due process irrespective of
> the good faith or bad faith of the prosecution. *Strickler v. Greene*, 119 S.Ct. 1936,
> 1948 (1999). However, if the defendant could have discovered the evidence on its
> own, exercising due diligence, then it will not be considered "suppressed" for Brady
> purposes.

> To find a *Brady* violation, a court need not conclude that the undisclosed evidence
> would have been admissible at trial. Rather, a court need only conclude any of the
> following: (1) all or part of the document was admissible; (2) it could have led to
> the discovery of admissible evidence, or (3) it would have been an effective tool in
> disciplining a witness during cross-examination, by refreshment of recollection or
> otherwise. *United States v. Gil*, 297 F.3d at 104.

> The standard for granting a new trial for *Brady* violations is whether there is a
> reasonable probability that there would have been a different result at trial if the
> evidence had been timely disclosed. *United States v. Bagley*, 473 U.S. 667, 682
> (1985). As the Supreme Court stated recently, there is never a "real" Brady
> violation unless the non-disclosure was so serious that there is a reasonable
> probability that the suppressed evidence would have produced a different verdict.
> *Strickler v. Greene*, 527 U.S. 263, 281 (1999). The non-disclosure (or belated

14

disclosure) of Brady material deprives a defendant of a fair trial only where there is a reasonable probability that the Government's suppression affected the outcome of the case, *United States v. Bagley*, 473 U.S. 667, 682 (1985), or where the suppressed evidence "put[s] the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitney*, 514 U.S. 419, 435 (1995). On the usual motion for post-conviction relief, the Court sits as a proverbial "thirteenth juror," and looks at the evidence in whatever way Justice requires.

Fortunately I, like the Court of Appeals in *Leka*, need not decide whether the Government's belated non-disclosure of the transcripts was a deliberate tactical concealment or the product of mismanagement of information or sloppy thinking about the evidentiary significance of the material. *Leka*, 257 F.3d at 103. *Brady* compels disclosure. By treating the *Davis* and *Klein* transcripts in this fashion, the Government suppressed them. It thus violated both Brady and its affirmative agreement to advise Maroulis of the identity (no more, admittedly) of non-witnesses who could impeach a Government witness on material matters. *St. Germain v. United States*, No. 03 CV 8006(CM), 2004 WL 1171403, at *15 (S.D.N.Y. May 11, 2004)

As the Second Circuit explained in *United States v. Certified Environmental Services, Inc.*, 753 F.3d 72 (2d Cir. 2014) ("*CES*"), "[u]nder *Brady* and its progeny, the government has a constitutional duty to disclose favorable evidence to the accused where such evidence is material either to guilt or to punishment." *Id.* at 91, *quoting United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001). In that context:

> [t]here are three components of a true *Brady* violation:
> (1) The evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) that evidence must have been suppressed by the [government], either willfully or inadvertently; and (3) prejudice must have ensued. *United States v. Jackson*, 345 F.3d 59, 71 (2d Cir. 2003), *quoting Strickler v. Greene,* 527 U.S. 263, 281-82 (1999). *CES*, 753 F.3d at 91.*See Moore v. Illinois*, 408 U.S. 786, 794-95 (1972), and *United States v. Thomas*, 981 F.Supp.2d 229, 233 (S.D.N.Y. 2013) ("[w]hen *Brady* material is withheld, the government's case is 'much stronger, and the defense case much weaker, than the full facts would have suggested'"), *citing Kyles v. Whitley*, 514 U.S. 419, 429 (1995).

Regarding the prong by which *Brady* material is defined, in *CES*, the Second Circuit pointed out that:

> "evidence is material within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed the result of the proceeding would have been different, such that the failure to disclose undermine[s] confidence in the verdict. *Cone v. Bell*, 556 U.S. 449, 469-70 (2009), *quoting Kyles v. Whitley*, 514 U.S. at 435." *CES*, 753 F.3d at 91.

The standard for the inquiry regarding prejudice, as the Supreme Court explained in *Kyles v. Whitley*, asks not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. *Kyles,* 514 U.S. at 434. *See, also, Lambert v. Beard*, 537 Fed. Appx. 78, 87 (3d Cir. 2013), *after remand by, Wetzel v. Lambert*, 565 U.S. 520 (2012), *vacating and remanding*, 633 F.3d 126 (3d Cir. 2011).

As the Court in *Kyles* noted, "a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal...[M]ateriality is a reasonable probability of a different result, and the adjective is important." *Kyles* at 434. *See, also, Thomas*, 981 F.Supp.2d at 242-43. A reasonable probability of a different outcome "is not a sufficiency of evidence test," and thus, does not require that the "evidence would have rendered the evidence as a whole insufficient to support a conviction." *United States v. Payne*, 63 F.3d 1200, 1209 (2d Cir. 1995), *quoting Kyles*, 514 U.S. at 435. Rather, evidence must be disclosed if it "could reasonably [have been] taken to put the whole case in such a different light as to undermine confidence in the verdict." *Coppa*, 367 F.3d 139, *quoting Kyles*, 514 U.S. at 435.

As the Second Circuit has held, even when evidence may be both inculpatory and exculpatory, its disclosure is not thus precluded under *Brady*. *See United States v. Mahaffy*, 693

F.3d 113, 130 (2d Cir. 2012) ("[t]he fact that the government is able to argue that portions of the transcripts were consistent with the prosecution's theory failed to lessen the exculpatory force" of the remaining parts); *see also United States v. Rivas*, 377 F.3d 195, 199-200 (2d Cir. 2004).   In that context, even when exculpatory evidence is disclosed, a *Brady* violation can still occur if the disclosure is untimely.   As the court in *Thomas* stated, "[e]vidence is suppressed when the prosecutor does not disclose it 'in time for its effective use at trial." 981 F.Supp.2d at 239, *quoting Coppa*, 267 F.3d at 135, *and citing United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998).

> The Second Circuit in *CES* elaborated that:
>
> [t]his aspect of *Brady* affects not only what the government is obligated to disclose, but when it is required to do so.   Temporally, the timing of a disclosure required by *Brady* is…dependent upon the anticipated remedy for a violation of the obligation to disclose: the prosecutor must disclose…exculpatory and impeachment information no later than the point at which a reasonable probability will exist that the outcome would have been different if an earlier disclosure had been made. *CES*, 753 F.3d at 92, *quoting Coppa*, 267 F.3d at 142.

Courts have also encouraged prosecutors to err on the side of disclosure for reasons of prudence as well as fairness.   As the court in *Cone v. Bell* cautioned, "[a]s we have often observed, the prudent prosecutor will err on the side of transparency, resolving doubtful questions in favor of disclosure." *Id.* at 470, *citing Kyles*, 514 U.S. at 439, *Bagley*, 473 U.S. at 711, n.4, *United States v. Agurs*, 427 U.S. 97, 108 (1976).

As the Second Circuit explained in *Leka v. Portuondo*, 257 F.3d 89 (2d Cir. 2001), "[t]he opportunity for use under *Brady* is the opportunity for a responsible lawyer to use the information with some degree of calculation and forethought. ld. at 101-03. See, also, *Thomas*, 981 F.Supp.2d at 240; *St. Germain v. United States*, 2004 WL 1171403, at \*18 (S.D.N.Y. May 11,2004) (defense strategies are largely formed prior to trial. .. and the necessary predicate is that the strategies

selected were chosen after careful consideration of all constitutionally-compelled disclosure).

Consequently, as the Second Circuit described the Petitioner's similar situation in *Leka*:

> [w]hen such a disclosure is first made on the eve of trial, or when trial is under way, the opportunity to use it may be impaired. The defense may be unable to divert resources from other initiatives and obligations that are or may seem more pressing. And the defense may be unable to assimilate the information into its case. *Leka*, 257 F.3d at 101, citing *United States v. Washington*, 294 F.Supp.2d 246, 250 (D. Conn. 2003) (Government's failure to disclose evidence impeaching the central witness until after the first day of trial prejudiced defendant because the late disclosure prevented defense counsel from investigating and planning overall trial strategy.)

Also, the timeliness requirement incorporated in the *Brady* disclosure obligation compels

disclosure of materially favorable evidence in sufficient time to permit the defense the opportunity

to use it effectively before trial. *Coppa*, 267 F.2d at 142 (whether the disclosure is made in a timely

fashion depends on the "sufficiency, under the circumstances, of the defense's opportunity to use

the evidence when disclosure is made"); see also *United States v.Solomonyan*, 451 F.Supp.2d 626,

644-45 (S.D.N.Y. 2006). Thus, implicit in the Government's *Brady* obligation is the requirement

that the defense is able to use the materially favorable evidence, even if only to uncover additional

exculpatory evidence. *See, e.g., United States v. Gil*, 297 F.3d 93,104 (2d Cir. 2002) (materially

favorable evidence, even if not admissible itself, must be disclosed pursuant to *Brady* if it "could

lead to admissible evidence"). **Indeed, in *Gil*, the inclusion of critical exculpatory (and

impeachment) information in boxes of documents produced pursuant to 18 U.S.C §3500 the

weekend prior to trial was deemed insufficient notice.** *Id*. at 106-07. In Petitioner's case, the

exculpatory evidence was never produced and the Government did a document dump on

Petitioner's attorneys the day before the trial was to start.

Moreover, delaying disclosure until it is contemporaneous with production of §3500

material does not absolve the Government of its responsibility to disclose exculpatory material and

information in time for the defense's effective use at trial. **As the Court in *Hsia* recognized, "the existence of a duty to disclose witness statements at trial pursuant to the Jencks Act, 18 U.S.C. §3500, does not eviscerate the Government's Brady obligation to disclose witness statements well in advance of trial if portions of those statements also fall under *Brady*.** *See Hsia*, 24 F.Supp.2d at 29, citing *United States v. Tarantino*, 846 F.2d 1384, 1414 n.11 (D.C. Cir. 1988). As the Court in Hsia pointed out, "[t]his is important because the Government is required to disclose Brady material in sufficient time for the defendant to use the favorable material effectively in the preparation and presentation of its case, while Jencks material is not required to be disclosed until after the witness has testified." Id. at 29. See, also, *Thomas*, 981 F.Supp.2d at 241 **("[t]he Government's argument conflates its Jencks Act and *Brady* obligations. While those responsibilities overlap at times, they are distinct legal concepts. The Jencks Act is concerned with discovery to be produced by the Government. *Brady* is concerned with fairness").**

The Court in *Thomas* further recognized a reactive defense maneuver "after a late *Brady* disclosure is no substitute for thoughtful preparation and a considered strategy." *Brady* material must be provided to a defendant "in time for its effective use at trial." *Thomas*, 981 F.Supp.2d at 242, *quoting Coppa*, 267 F.3d at 135 (emphasis supplied in *Thomas*), and *citing Grant v. Alldredge*, 498 F.2d 376, 382 (2d Cir. 1974) (refusing to infer from the failure of defense counsel, when surprised at trial, to seek time to gather other information on [the suppressed witness], that defense counsel would have by-passed the opportunity had the prosecutor apprised him of the [evidence] at a time when the defense was in a reasonable pre-trial position to evaluate carefully all the implications of that information).

In *Thomas*, the Second Circuit also emphasized "the importance of the manner of the Government's disclosure." *Id*. at 240, citing *Gil*, 297 F.3d at 93 (emphasis added) (**labeling *Brady***

**evidence as § 3500 material and producing it as part of a large § 3500 production on the eve**

**of trial constitutes suppression**), and *United States v. Breit*, 767 F.2d 1084,1090 n.4 (4th Cir.

1985) (Government may not discharge its *Brady* obligation merely by tendering a witness without

providing any indication that the witness's testimony maybe helpful to defense). **In that context,**

**"the Government cannot hide *Brady* material as an exculpatory needle in a haystack of**

**discovery materials**." *Thomas*, 981 F.Supp.2d at 239, *citing United States v. Skilling*, 554 F.3d

529, 577 (5th Cir. 2009), aff'd in part and vacated in part on other grounds, 561 U.S. 358 (2010)

(suggesting that *Brady* violations related to voluminous open file discovery depend on what the

Government does in addition to allowing access to a voluminous open file). See, also, *Hsia*, 42 F.

Supp. 2d at 29-30 ([g]overnment cannot meet its *Brady* obligations by providing . . . 600,000

documents and then claiming that [the defendant] should have been able to find the exculpatory

information). In the Petitioner's case, the Government turned over hundreds of thousands of

documents, comprising millions of pages of computer records, but did not turn over a single piece

of exculpatory evidence as the Government is obligated to do. Using the above metaphor

mentioned in *Skilling*, the government turned over a thousand haystacks to Petitioner's attorneys

the day before trial, but not a single "exculpatory needle" - not even one, and certainly not the

Cherneski-Jencks Statement as required by law.

Thus, this Court should grant Petitioner's application to vacate his conviction and dismiss

the Superseding Indictment because the Government failed to produce the Cherneski-Jencks

Statement as well as other exculpatory material in a timely fashion that would have permitted the

defense effective use of the material and information at trial. Moreover, while the Government's

intent is not required for a *Jencks or Brady* violation, in this case the Government's concealment

was clearly willful and calculated, as the Petitioner contends all of the Government's acts were

designed to deprive him of a fair trial and a level playing field. It provided a miniscule percentage of information it possessed from its unlawful raids in April 2010 and May 2011 regarding millions of emails, and none that were exculpatory.

The unlawful searches and seizures of April 2010 and May 2011 and the Secret Subpoena issued by AUSA Novick to Petitioner's attorneys at Halloran & Sage are still being litigated and going to the Second Circuit for the third time as of this month. But there is no question that the Government forcefully took a statement from Stef Cherneski during the unlawful raid of April 20, 2010 that was never turned over to the Petitioner, even after Cherneski testified at Petitioner's trial, which is a clear violation of the Jencks Act and a dozen Supreme Court decisions. Moreover, Petitioner is grateful to the federal agent who turned it over to him in 2018 in the civil litigation against Agent Shaun Schrader, who was the architect of the unlawful raid of April 20, 2010.

## V.    CONCLUSION

Wherefore because the Superseding Indictment of May 2014 was constitutionally defective and failed to state a federal crime, this Honorable Court lacked jurisdiction and the Constructive Amendment of Petitioner's Indictment requires this Court to vacate his conviction and dismiss the defective Indictment with Prejudice. Petitioner also respectfully asks the Court to consider the other constitutional violations raised as part of the cumulative prosecutorial misconduct in this case and the future demise of the "Right to Control" Theory of Fraud in cases currently pending before the Supreme Court as attached in Exhibit One. Petitioner also requests that there be an expeditious judgment on the pleadings, as was done in *United States v. Godfrey*, No. 17-CR-511 (SHS), 2022 WL 2872274, at *5 (S.D.N.Y. July 21, 2022)("Alternatively, courts may grant Section 2255 relief on the pleadings. See, e.g., *United States v. Capriata*, No. 12-CR-712 (SHS), 2021 WL 1180049 (S.D.N.Y. Mar. 29, 2021)).

Respectfully Submitted,
Daniel E. Carpenter
Petitioner, *pro se*

 /s/ Daniel E. Carpenter
Daniel E. Carpenter
Petitioner, *pro se*
18 Pondside Lane
West Simsbury, CT 06092

## **CERTIFICATION**

  I hereby certify that on this 5th day of August, 2022, a copy of the foregoing was filed at the District of Connecticut Clerk's office in Hartford 450 Main Street, Hartford, CT 06103. Notice of this filing was also sent by USPS to US Attorney's Office Hartford Office, US Attorney's New Haven Office, Connecticut Financial Center, 157 Church Street, Floor 25, New Haven, CT 06510 and by USPS to Attorney General of the United States, U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001.

By  /s/ Daniel E. Carpenter
Daniel E. Carpenter
Petitioner, *pro se*