
JAN 12 2023 PM 12:25
FILED-USDC-CT-HARTFORD

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DANIEL E. CARPENTER<br>Petitioner | ) )<br>)<br>) | CIVIL ACTION NO.<br>3:21-cv-01485-RNC |
| v. | )<br>)<br>) | Hon. Robert N. Chatigny |
| UNITED STATES OF AMERICA<br>Respondent | )<br>)<br>) | JANUARY 11, 2023 |

### SUPPLEMENTAL ADDENDUM TO PETITIONER'S 2255 WRIT OF HABEAS CORPUS CONCERNING RECENTLY ADJUDICATED SUPREME COURT CASES IN SUPPORT OF HIS APPLICATION TO VACATE HIS CONVICTION AND DISMISS HIS INDICTMENT

## PRELIMINARY STATEMENT

Petitioner is exceedingly grateful to this Court to allow him to supplement his original 2255 Petition because of several recent Supreme Court cases that clearly require the vacating of his conviction and the dismissal of the clearly constitutional defective Superseding Indictment. The first of course, was the Supreme Court's 9-0 unanimous June 27, 2022 decision in *Ruan v. United States*, 142 S. Ct. 2370 (2022), where the Supreme Court cites cases that this Court is very familiar with including *Morissette v. United States,* 342 U.S. 246, 251-52 (1952), *Liparota v. United States*, 471 U.S. 419, (1985), and *Elonis v. United States*, 575 U.S. 723, 734, (2015) for the proposition that an indictment (as is with Petitioner's May 2014 Superseding Indictment) that does not mention words like *mens rea*, Scienter, intent, and does not include the "concurrence" theory of *Morissette*, whereby a crime happens only with the concurrence of an "evil-thinking mind" and an "evil doing hand," thereby separating truly criminal activity from what otherwise might be called "questionable" innocent activity is unconstitutionally defective as a matter of law. This means that Petitioner's Original Indictment and the Superseding Indictment of May 2014 were both defective as a matter of law, which means this Court lacks jurisdiction, and the Petitioner was actually innocent both factually and as a matter of law. Petitioner will also discuss below that because the Superseding Indictment broadened the Original Indictment, the Superseding Indictment was untimely as a matter of law and was also constructively amended based on new Supreme Court decisions. Simply put, the failure of the Indictment to state a crime deprives this Court of Federal Jurisdiction and the judgment must be vacated. *See, e.g. Arbaugh v. Y&H Corp.*, 546 U.S. 500, 500, (2006)(The objection that a federal court lacks subject-matter jurisdiction, see Fed. Rule Civ. Proc. 12(b)(1), may be raised at any stage in the litigation, even after trial and the entry of judgment, Rule 12(h)(3)).

The Supreme Court made clear in *Ruan* that if the indictment was not sufficient in that it did not allege that the Defendant knowingly and willfully broke the law by crossing the bright-marked line of *Morrissette*, then the indictment must be dismissed because a Federal District Court would not have jurisdiction to hear a non-federal criminal case. Then three days later on June 30, 2022, the Supreme Court granted certiorari in four famous cases all attacking the Second Circuit's Right to Control Theory of Fraud. *See e.g.*, *United States v. Percoco*, 13 F.4th 158, 164 (2d Cir. 2021), *cert. granted sub nom*, which was recently discussed in the *Wall Street Journal*, and in *Ciminelli v. United States*, No. 21-1170, 2022 WL 2347619 (U.S. June 30, 2022) is the case mentioned by the Government in its recent filing to the Second Circuit, suggesting that Petitioner (Mr. Carpenter) might be successful on his 2255 and therefore they need to hold onto the Boxes unlawfully seized three times; first by the IRS invalid Search Warrant of April 2010, and then by the DOL's invalid search warrant of May 2011, and then for a third time by the infamous AUSA Novick Secret "*Silverthorne*" Subpoena of May 2011 that just came to light in the most recent case where Judge Underhill ruled in Petitioner's favor. This is the third trip to the Second Circuit establishing multiple Fourth Amendment violations that this Court should mention. For the ease of the Court's perusal, the Grist Mill Capital response to the Government's appeal on Judge Underhill's decision is attached as Exhibit One. Obviously, if this Court grant's Petitioner relief in vacating his conviction there will be no new trial pursuant to the Constitution's Double Jeopardy Clause; and the Fourth Amendment violations in this case are numerous, continuous, and ongoing, which would be a separate and independent reason to vacate Petitioner's conviction for violations of the Fourth and Fifth Amendment. *See, e.g., U.S. v. Nejad*, 487 F. Supp. 3d 206, 215–16 (S.D.N.Y. 2020), where the Court vacated the Defendant's

3

conviction for conduct much less severe than the egregious prosecutorial misconduct in Petitioner's case and sanctioned the Government.

But for the purpose of this submission, Petitioner will focus on the flaws in the Indictment of May 14, 2014 based on *Ruan* and other cases currently before the Supreme Court. If the Superseding Indictment was flawed for any reason, and did not invoke the jurisdiction of this Court, it must be dismissed as a matter of law as was done in *Cleveland v. United States*, 531 U.S. 12, 19 (2000) and most recently in *Kelly v. United States*, 140 S. Ct. 1565, 1571 (2020), because stealing "property" was not the "primary purpose" of the "deceit" and/or "bad" acts. Certainly, the Court now realizes that none of the mailings or wirings of this case were timely, and they were certainly not "in furtherance" of any fraud.

As this Court is aware, Petitioner spent his time in prison helping others—over 180 inmates—all but two have been released. One of the attorneys of a previous "client" reached out to Petitioner to explain that the Government was abandoning the "Right to Control Theory of Fraud" in the famous John Wilson "*Varsity Blues*" case in Boston. Shortly thereafter, Petitioner was contacted by attorneys representing one of the other "Right to Control Theory of Fraud" defendants to invite him to hear oral argument before the Supreme Court on November 28, 2022. Because Petitioner is still on Supervised Release, despite having more than enough credits under the First Step Act—Petitioner declined. Petitioner did listen to the Oral Argument and now that the transcript is out—it is clear that the Government has confessed error and abandoned altogether the flawed "Right to Control Theory of Fraud." The Government has also stated that they will dismiss *United States v. Binday*, 804 F.3d 558 (2d Cir 2015) based on what happens in *Ciminelli*.

4

This development clearly creates three distinct problems for the Government (along with the dozen others that this Court is already familiar with). First, the Superseding Indictment of May 14, 2014 does not mention any of the words that are required for a valid indictment to invoke the jurisdiction of this Court. Because this defective Indictment was issued prior to December 2014 when the law changed—Petitioner is allowed to challenge this Court's jurisdiction at any time pursuant to the "old" rules under Rule 12(b)(3)(B).

The Second problem the Government has is that the words "Right to Control Theory" are nowhere to be found in the Superseding Indictment. This means the Government committed a Constructive Amendment of Petitioner's Indictment to conform with the conduct of the Defendants in *United States v. Binday*, 804 F.3d 558 (2d Cir 2015)(also before the Supreme Court currently). A Constructive Amendment is a *per se* violation of the Fifth Amendment and requires the immediate vacating of Petitioner's Indictment and conviction.

The Third problem for the Government, which they clearly recognize, is that if the Government is confessing error and no longer supporting the Right to Control Theory of Fraud—the Petitioner is just like the famous defendants in *Cleveland v. United States*, 531 U.S. 12, 19 (2000), *United States v. Marinello*, 855 F.3d 455-459 (2d Cir. 2017), *Kelly v. United States*, 140 S. Ct. 1565, 1571 (2020), and now *Xiulu Ruan v. United States*, 142 S. Ct. 2370 (2022), and therefore the Indictment must be dismissed as Petitioner's Indictment failed to state a federal crime, and that means this Court did not have jurisdiction to try and sentence the Petitioner. Vacating the judgment and dismissing the indictment is mandatory.

## I. THE SUPREME COURT'S UNANIMOUS DECISION IN *XIULU RUAN V. UNITED STATES*, 142 S. Ct. 2370 (2022) IS DISPOSTIVE IN THIS CASE

On June 30, 2022 the Supreme Court granted four different Writs attacking the Second Circuit's "Right to Control Theory" of Fraud. The decisions were announced on Friday July 1st and the Petitioner's were released from prison the next day on a Saturday. Petitioner has respectfully asked for the immediate issuance of the Writ as was done in *Ex Parte Merryman*, 17 F. Cas. 144 (1861)—in two days during the Civil War.

Rather than reciting cases mentioned in Petitioner's original 2255 Petition, Petitioner would prefer to cite Justice Breyer's writing for a 9-0 unanimous Supreme Court in *Ruan*:

> **First as a general matter, our criminal law seeks to punish the " vicious will." *Morissette v. United States*, 342 U.S. 246, (1952); With few exceptions, " wrongdoing must be conscious to be criminal." *Elonis v. United States*, 575 U.S. 723, 734, (2015) (quoting *Morissette*, 342 U.S. at 252, 72 S.Ct. 240). Indeed, we have said that consciousness of wrongdoing is a principle "as universal and persistent in mature systems of [criminal] law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil."**

> **Consequently, when we interpret criminal statutes, we normally "start from a longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state." *Rehaif v. United States*, 588 U. S. ——, ——, 139 S.Ct. 2191, 2195, (2019). We have referred to this culpable mental state as "scienter," which means the degree of knowledge necessary to make a person criminally responsible for his or her acts. *Morissette*, 342 U.S. at 250–252, 72 (1952)**

> **Applying the presumption of scienter, we have read into criminal statutes that are "silent on the required mental state"—meaning statutes that contain no *mens rea* provision whatsoever—" that *mens rea* which is necessary to separate wrongful conduct from "otherwise innocent conduct." *Elonis*, 575 U.S. at 736, 135 S.Ct. 2001. Unsurprisingly, given the meaning of scienter, the *mens rea* we have read into such statutes is often that of knowledge or intent. *See, e.g., Staples v. United States*, 511 U.S. 600, 619, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994); *United States v. United States Gypsum Co.*, 438 U.S. 422, 444–446, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978).**

And when a statute is not silent as to *mens rea* but instead "includes a general scienter provision," "the presumption applies with equal or greater force" to the scope of that provision. *Rehaif*, 588 U. S., at ——, 139 S.Ct., at 2195 (emphasis added). We have accordingly held that a word such as "knowingly" modifies not only the words directly following it, but also those other statutory terms that "separate wrongful from innocent acts." Id., at ——, 139 S.Ct., at 2197; see, e.g., ibid.; *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72, 115 S.Ct. 464 (1994); *Liparota v. United States*, 471 U.S. 419, 426, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985). Applying § 841's "knowingly or intentionally" *mens rea* to the authorization clause thus "helps advance the purpose of scienter, for it helps to separate wrongful from innocent acts." *Rehaif*, 588 U. S., at ——, 139 S.Ct., at 2197; see also *X-Citement Video*, 513 U.S. at 72–73, 115 S.Ct. 464.

Rather, § 841 imposes severe penalties upon those who violate it, including life imprisonment and fines up to $1 million. See § 841(b)(1)(C); see generally § 841(b). **Such severe penalties counsel in favor of a strong scienter requirement. See Staples, 511 U.S. at 618–619, 114 S.Ct. 1793 (noting that "a severe penalty is a further factor tending to suggest that ... the usual presumption that a defendant must know the facts that make his conduct illegal should apply"); *United States Gypsum*, 438 U.S. at 442, n. 18, 98 S.Ct. 2864.**

Analogous precedent reinforces our conclusion. In *Liparota*, we interpreted a statute penalizing anyone who " 'knowingly uses [food stamps] in any manner not authorized by' " statute. 471 U.S. at 420, 105 S.Ct. 2084. We held that "knowingly" modified both the "use" of food stamps element and the element that the use be "not authorized." *Id.*, at 423, 433, 105 S.Ct. 2084. We applied "knowingly" to the authorization language even though Congress had not "explicitly and unambiguously" indicated that it should so apply. *Id.*, at 426, 105 S.Ct. 2084. But if knowingly did not modify the fact of nonauthorization, we explained, the statute "would ... criminalize a broad range of apparently innocent conduct." *Ibid*.

Similarly, in *X-Citement Video*, we interpreted a statute penalizing anyone who " 'knowingly transports' " or " 'knowingly receives' " videos " 'involv[ing] the use of a minor engaging in sexually explicit conduct.' " 513 U.S. at 68, 115 S.Ct. 464. **We held that "knowingly" applied not only to the element of transporting or receiving videos but also to the elemental fact that the videos involve "the use of a minor."** *Id.*, at 66, 115 S.Ct. 464. We recognized that this was not "the most grammatical reading of the statute." *Id.*, at 70, 115 S.Ct. 464. But, we explained, "the age of the performers is the crucial element separating legal innocence from wrongful conduct," for possessing sexually explicit videos involving nonminors is protected First Amendment activity. *Id.*, at 72–73, 115 S.Ct. 464.

Finally, in *Rehaif*, we interpreted a statutory scheme in which one statutory subsection provided penalties for anyone who "knowingly violates" a separate

subsection. 588 U. S., at —— – ——, 139 S.Ct., at 2195-2196. This latter subsection made it "unlawful" for people with certain statuses (i.e., being a felon or being in the country unlawfully) to possess a gun. *Ibid*. We held that the first subsection's "knowingly" language applied to the status element in the second subsection. *Id.*, at ——, 139 S.Ct., at 2196. To convict under the statute, then, the Government had to prove that a defendant knew he had one of the listed statuses. Ibid. "Without knowledge of that status," we reasoned, "the defendant may well lack the intent needed to make his behavior wrongful," because "[a]ssuming compliance with ordinary licensing requirements, the possession of a gun can be entirely innocent." Id., at ——, 139 S.Ct., at 2197. *Ruan v. United States*, No. 20-1410, 2022 WL 2295024, at 5-6 (U.S. June 27, 2022).

As the Court can clearly see—none of the requirements concerning scienter, *mens rea*, or "knowingly" violating a statute, that Justice Breyer speaks of as constitutionally required can be found in Petitioner's Superseding Indictment of May 14, 2014. To make the examination of the Superseding Indictment easy for the Court, Petitioner refers to Charles Doyle's study of the Elements of Mail & Wire Fraud. In his highly regarded report to Congress, Charles Doyle of the Congressional Research Service, states that the elements of Mail and Wire Fraud that must be alleged in an indictment and proven beyond a reasonable doubt are that the defendant(s):

(1) Used either mail or wire communications **in the foreseeable furtherance**,
(2) of a scheme to defraud,
(3) involving a material deception,
(4) with the intent to deprive another of,
(5) either property or honest services.

None of the required "words" to establish "*mens rea*" or the "knowing intent" to commit a crime or the necessary "five elements" of Mail & Wire Fraud can be found in Petitioner's untimely Superseding Indictment of May 14, 2014 that should be dismissed on other grounds as well. But failure to include all essential elements of a crime is yet one more reason that the Court lacked jurisdiction and the Court must vacate Petitioner's Conviction.

8

## II. THE DEFECTIVE INDICTMENT WAS CONSTRUCTIVELY AMENDED BY THE GOVERNMENT

Unlike the Petitioner in this prosecution, the Government received ample "Fair Warning" from the Second Circuit that it should be very careful about how it drafts indictments involving fraud claims, especially when a conspiracy is alleged:

> In order to avoid [constructively] amending an indictment in violation of the Fifth Amendment, **the government in fraud cases should think through the nature of the crime it wishes to allege and then spell out the offense in a carefully drafted indictment**, instead of confronting the defendant with its theory of criminality for the first time at trial. *See United States v. Mollica,* 849 F.2d 723, 729 (2d Cir. 1988), *citing* among other cases, *United States v. Rosenblatt,* 554 F.2d 36, 40 (2d Cir. 1977), *quoting Grunewald v. United States,* 353 U.S. 391, 404 (1957) (emphasis added).

As Judge Preska described what happened in Petitioner's case perfectly when describing the failure of the indictment in the famous Larry Davis-World Trade Center case—*U.S. v. Davis* No. 13-CR-923 (LAP), 2017 WL 3328240, at *13–14 (S.D.N.Y. Aug. 3, 2017) to even mention the words "Right to Control," which words are nowhere to be found in Petitioner's Indictment, Petitioner would respectfully request that the Court review Judge Preska's scholarly analysis of the Constructive Amendment Doctrine in her decision in *Davis*:

> The theory of "constructive amendment" is based on the fundamental principle that "after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Stirone v. United States,* 361 U.S. 212, 215-16 (1960). "To prevail on a constructive amendment claim, a defendant must demonstrate that either the proof at trial or the trial court's jury instructions so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment." *United States v. Salmonese,* 352 F.3d 332, 337 (2d Cir. 1998); *see also United States v. LaSpina,* 299 F.3d 165, 181 (2d Cir. 2002). A constructive amendment is a per se violation of the Fifth Amendment, *LaSpina* at 181, and constructive amendments have been found when the government alleges one theory of the case in the indictment but argues another at trial. *Stirone* at 217 (proof of interference with interstate shipment of steel from Pennsylvania to Michigan and Kentucky was constructive amendment of indictment that alleged interference with shipment of sand into Pennsylvania).

9

Judge Preska goes on to examine the history of the Constructive Amendment Doctrine in the Second Circuit:

> In considering the issue of constructive amendment, the Court is mindful that it is a fairly narrow doctrine in this Circuit. Indeed, the Court is aware of only six cases since 1988 in which the Court of Appeals has found constructive amendments. *See United States v. Mollica*, 849 F.2d 723, 730 (2d Cir. 1988); *United States v. Zingaro*, 858 F.2d 94, 99 (2d Cir. 1988); *United States v. Milstein*, 401 F.3d 53, 65 (2005); *United States v. Wozniak*, 126 F.3d 105, 111 (2d Cir. 1997); *United States v. Dhinsa*, 243 F.3d 635 (2d Cir. 2001); *United States v. Hassan*, 578 F.3d 108 (2d Cir. 2008)
>
> "A constructive amendment occurs where the actions of the court 'broaden the possible bases for conviction from that which appeared in the indictment.'" *Id.* (*quoting United States v. Banki*, 685 F.3d 99, 118 (2d Cir. 2011)). The Court of Appeals elaborated upon the standard as follows: Even if an indictment might have been drawn in more general terms to encompass the ultimate conviction, where "<u>**only one particular kind of [criminal conduct] is charged ... a conviction must rest on that charge and not another**</u>." *Zingaro* at 99(emphasis added).

Judge Preska also does a brilliant analysis of why *Davis* is just like the Constructive Amendments in *Stirone* and *Wozniak*, but Petitioner wishes to direct the Court's attention to the *Davis* discussion on whether the "Right to Control Theory" was addressed in the indictment in *Davis* or in the Indictment in Petitioner's case, or whether it was not:

> **Turning to the right to control theory first, either the right to control theory was contained in the core of criminality of the indictment or it was not.** If the right to control theory was within the core criminality charged in the indictment, then the indictment is insufficient because *Shellef* teaches that when a right to control theory involving a contract is alleged in an indictment there must also be an allegation that the misrepresentation had "relevance to the object of the contract" or an equivalent allegation, that there was a "discrepancy between benefits reasonably anticipated and actual benefits received," or that the misrepresentation went to "the nature of the bargain." *Shellef* at 108; *see also United States v. Binday*, 908 F. Supp.2d 485, 491 (S.D.N.Y. 2012)("Given the '*Shellef*' language in the present indictment, there is no danger that a jury might improperly convict the defendants based on a misrepresentation[] that had no relevance to the object of the contracts in question."), *aff'd*, 804 F.3d 558 (2d Cir. 2015). **This indictment contained none of this language or anything approximating it.**
>
> **If, however, the right to control theory was not part of the core of criminality contained in the indictment, then offering evidence, argument, and an instruction based on such a theory constitutes an impermissible constructive amendment.** Here,

the indictment did not contain within its core of criminality the Government's right to control theory of harm. There is no allegation in the indictment that comes close to the right to control theory contained in the jury instruction, (*see supra* p. 90), which reads "it suffices [for a finding of fraudulent intent] that a defendant intend that his misrepresentation induce a counterparty to enter a transaction without the relevant facts to make an informed economic decision on matter that could expose the victim to economic harm," (see Tr. 1136-37.) Also, the indictment never specifies, as would be required for an indictment relying on a right to control theory, that the MWBE aspect of the contract was an essential element of the contract (or similar language). *See Shellef* at 108; *see also Binday* at 491. Without that language, a sufficiently pled right to control theory was not contained in the indictment. **Accordingly, the evidence and jury charge pursuant to a right to control theory worked a constructive amendment.** *Davis* at *35-36 (emphasis added).

Most importantly to the Petitioner's case, Judge Preska goes on to explain exactly the same situation that Petitioner has experienced at the hands of the Government in this case:

> Similar logic applies to the Government's theories of actual harm. The core of criminality alleged by the Government by the end of trial included both the cost overrun theory and the certified payroll theory of actual harm. However, no allegation in the indictment encompasses these factual complexes or would have put the Defendants fairly on notice. **Therefore, by the end of trial, the Government alleged a different core of criminality from-that of the indictment with respect to its theories of actual harm.** *Davis* at *36.

As the Court is well aware, neither the words "right to control" nor the theory of "deprivation of valuable economic information" or even the required level of "tangible economic harm" as mandated by the Second Circuit in *United States v. Mittelstaedt*, 31 F.3d 1208 (2d Cir. 1994) are mentioned anywhere in either of Petitioner's Indictments. Those words simply do not appear anywhere in Petitioner's Superseding Indictment.

Therefore, the Government's Indictment of Petitioner lacked the necessary elements of "intended actual concrete harm" of *United States v. Rossomando*, 144 F.3d 197 (2d Cir. 1998), the "tangible economic harm" of *Mittelstaedt* and the words "Right to Control valuable economic information" required by *Davis*. The fact that Petitioner's trial was all about the "Right to Control" Theory of Fraud means that there was a Constructive Amendment of Petitioner's Indictment at trial that mandates vacating his conviction.

11

## III. THE DEMISE OF THE "RIGHT TO CONTROL" THEORY OF FRAUD

One could easily surmise that Louis Ciminelli was lucky to have Michael Dreeben as his attorney. While former Solicitor General Dreeben is the recordholder for appearances before the Supreme Court, Petitioner respectfully suggests that the Right to Control Theory of Fraud created by the Second Circuit has been under attack for years. Petitioner respectfully asks this Court for the same two-day treatment that Louis Ciminelli received (as well as *Ex Parte Merryman*) and grant Petitioner's *Writ of Habeas Corpus* sometime this month and Petitioner would like to suggest that if the Government confessed error in *Olan v. United States*, No. 20-306, Judgment Vacated January 11, 2021, after the Supreme Court's decision in *Kelly v. United States*, 140 S. Ct. 1565 (2020), they should do the same thing in this case. Not surprisingly, the Supreme Court ordered the Government to reply in *Binday* and the Government responded that they are waiting for the Court's decision in *Ciminelli*.

A good example of various Courts coming to grips with the demise of the Right to Control Theory of Fraud can be seen in this recent decision from the District of Guam granting an Acquittal after trial and citing the Ninth Circuit's decision in *Yates* which decimated the idea that misinformation could qualify as "money or property" under the fraud statutes:

> As to the government's second theory based on loss of employee compensation, the Court rejected that theory because the loss was only incidental. In other words, the property must play more than some bit part in a scheme: It must be an "object of the fraud." Put differently, a property fraud conviction cannot stand when the loss to the victim is only an incidental byproduct of the scheme. The Ninth Circuit more recently addressed this issue in *United States v. Yates*, 16 F.4th 256, 267 (9th Cir. 2021), a case involving bank executives charged with conspiracy to commit bank fraud for misrepresenting the condition of their bank. The government charged the defendants with property fraud, not honest-services fraud. **But in describing the deprivation of "something of value," the government told the jury that the defendants "sought to deprive" the bank and the board of directors of 'accurate financial information in the bank's books and records." *Id.* at 265. The Ninth Circuit majority panel concluded that this "accurate-information theory is legally insufficient as there is no cognizable property interest in "the ethereal right to accurate information."** *Id*. The government also argued that the defendants sought

to deprive the bank of their salaries and moneys, which the Court noted are forms of money, but there is a difference between a scheme whose object is to obtain a new or higher salary and a scheme whose object is to deceive an employer while continuing to draw an existing salary—essentially, avoiding being fired. *Id.* at 266. *United States v. Smith*, No. 1:17-CR-00020, 2022 WL 2103063, at *6 (D. Guam June 3, 2022)

When the Supreme Court heard oral argument in *Ciminelli*, the Justices seemed to agree that the Right-to-Control Theory was problematic. Based on comments like Justice Barrett's that "the right-to-control theory conflated materiality and intent," and Justice Gorsuch posited possible "radical agreement that the Second Circuit misinterpreted the law." Justice Sotomayor seemingly spoke for all the justices when she admitted that she "totally remain[ed] confused" about how the right-to-control theory was workable.

Interestingly, the Government itself backed away from the Right-to-Control Theory, including in its brief on the merits, where it opened the door to "further limitation" of property fraud statutes. For example, the Government conceded that as to the Second Circuit's right-to-control theory, "without further limitation, that conception could lead to overbroad results that would expand property fraud beyond its definition at common law and as Congress would have understood it"). Brief of Respondent United States, No. 21-1170 (U.S. Oct. 12, 2022), at 12.

The first question to the Government, coming from Justice Thomas, was whether the government was "abandoning the Second Circuit's right to control theory." And the Deputy Solicitor General basically agreed, responding that "we would be fine with the Court explaining that that's not the right way for the Second Circuit to be going about thinking about these cases." The government instead argued that the right-to-control theory could be applicable to a more focused "core set of cases" in which the defendant "fraudulently induces a victim to enter into a transaction." As Justice Jackson observed, this suggested that the government could possibly argue that Mr. Ciminelli was still guilty even if the Supreme Court "determined that the [right-to-control theory] is not consistent with the law in some way."

13

After a series of very negative barbed questions for the Government, Justice Kavanagh perhaps best summarized the broader issue with how the Government has been approaching this right-to-control theory. Noting that "the government has been pushing this theory for several decades, and lots of people have been convicted under it," Justice Kavanagh called it "very problematic" that it took the government appearing under "the bright light of this Court, for the government to then say, actually, you know, that theory doesn't hold up." While the government disputed that characterization, such statements suggest that the Court is inclined to rein the government in here and vitiate for once and for all the Right to Control Theory of Fraud as it relates to all future Federal Fraud cases, including Petitioner's.

## CONCLUSION

Wherefore, based on Petitioner's actual innocence under the law and the obvious defects in Petitioner's untimely Superseding Indictment, Petitioner respectfully prays that this Court follow the alacrity of other District Courts and immediately issue the "sacred" *Writ* to vacate the Petitioner's unlawful conviction and dismiss his constitutionally defective Indictment immediately pursuant to 28 U.S.C 2243.

Respectfully Submitted,

/s/ Daniel E. Carpenter
Daniel E. Carpenter
Petitioner, *pro se*
18 Pondside Lane
West Simsbury, CT 06092

## CERTIFICATION

I hereby certify that on this 11th day of January, 2023, a copy of the foregoing was filed at the District of Connecticut Clerk's office in Hartford 450 Main Street, Hartford, CT 06103. Notice of this filing was also sent by USPS to the US Attorney's New Haven Office, Connecticut Financial Center, 157 Church Street, Floor 25, New Haven, CT 06510

    /s/ Daniel E. Carpenter
Daniel E. Carpenter
Petitioner, *pro se*