UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

AUG 3 2023 AM 10:06
FILED-USDC-CT-HARTFORD

|  |  |  |
|---|---|---|
| DANIEL E. CARPENTER | ) | |
| **Petitioner** | ) | |
| | ) | **CIVIL ACTION NO.** |
| v. | ) | **3:21-cv-01485-RNC** |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| **Respondent** | ) | **AUGUST 3, 2023** |
| | ) | |

## NOTICE OF RECENT SUPPLEMENTAL AUTHORITY IN FAVOR OF VACATING PETITIONER'S CONVICTION

**NOW COMES THE PETITIONER DANIEL E. CARPENTER** to inform the Court

of recent decisions of both the Supreme Court and the Second Circuit that abrogated the law that

Petitioner's conviction was based on, but further suggest that Petitioner did not actually commit

any criminal act at all based on the Supreme Court's recent decisions in *Ciminelli* and *Percoco*,

and the case that was the basis of the Petitioner's prosecution, *Binday*. Moreover, recently in a

related case, *Carpenter v. Allen*, the Second Circuit heard arguments for a third time on the

property unlawfully seized from the never indicted company Grist Mill Capital, LLC in 2010—

and all three judges commented that it looks like Petitioner will be successful on his 2255

Petition, which is the basis for the Government keeping an innocent party's property more than

13 years after the raid of 100 Grist Mill Road. See link to audio of June 28, 2023 in footnote

below.[1]

The Rule 28(j) Letter by Attorney Jon Einhorn sent to the Second Circuit in that case is

attached as Exhibit One and contains the Order in *Binday* from the Supreme Court; the decision

in *Ciminelli*; a letter from the Government to stop collecting Restitution in the related cases

vacated by the Supreme Court under the now defunct "Right to Control Theory of Fraud" and

---

[1] https://www.ca2.uscourts.gov/decisions/isysquery/23a04348-36b0-4c3a-869b-ba654463d615/11-20/list/

also a letter from AUSA Patel written to the Second Circuit in 2019, where AUSA Patel makes

clear that the Government actually did use a "small amount" (but more than one piece of paper

as described below by Justice Brandeis) of property unlawfully seized from the Petitioner at his

trial in violation of the immortal words from Justice Brandies in *Olmstead*:

> Time and again this Court, in giving effect to the principle underlying the Fourth
> Amendment, has refused to place an unduly literal construction upon it. This was
> notably illustrated in the *Boyd* Case itself. Taking language in its ordinary
> meaning, there is no 'search' or 'seizure' when a defendant is required to
> produce a document in the orderly process of a court's procedure. 'The right of
> the people of be secure in their persons, houses, papers, and effects, against
> unreasonable searches and seizures,' would not be violated, under any ordinary
> construction of language, by compelling obedience to a subpoena. But this Court
> holds the evidence inadmissible simply because the information leading to the
> issue of the subpoena has been unlawfully secured. *Silverthorne Lumber Co. v.
> United States*.   Literally, there is no 'search' or 'seizure' when a friendly visitor
> abstracts papers from an office; yet we held in *Gouled v. United States*,   that
> evidence so obtained could not be used.

> Decisions of this Court applying the principles of the *Boyd* case have settled
> these things. Unjustified search and seizure violates the **Fourth Amendment**,
> whatever the character of the paper; whether the paper when taken by the federal
> officers was in the home, **in an office**, or elsewhere; whether the taking was
> effected by force, by fraud, or in the orderly process of a court's procedure.
> **From these decisions, it follows necessarily that the Amendment is violated
> by the officer's reading the paper without a physical seizure, without his
> even touching it, and that use, in any criminal proceeding, of the contents of
> the paper so examined -- as where they are testified to by a federal officer
> who thus saw the document, or where, through knowledge so obtained, a
> copy has been procured elsewhere -- any such use constitutes a violation of
> the Fifth Amendment**.

> The protection guaranteed by the Amendments is much broader in scope. The
> makers of our Constitution undertook to secure conditions favorable to the
> pursuit of happiness. They recognized the significance of man's spiritual nature,
> of his feelings, and of his intellect. They knew that only a part of the pain,
> pleasure and satisfactions of life are to be found in material things. They sought
> to protect Americans in their beliefs, their thoughts, their emotions and their
> sensations. They conferred, as against the Government, the right to be let alone -
> - the most comprehensive of rights, and the right most valued by civilized men.
> **To protect that right, every unjustifiable intrusion by the Government upon
> the privacy of the individual, whatever the means employed, must be
> deemed a violation of the Fourth Amendment. And the use, as evidence in a**

**criminal proceeding, of facts ascertained by such intrusion must be deemed a violation of the Fifth.**

*Olmstead v. United States*, 277 U.S. 438, 476-485 (1928)(Brandeis, J., dissenting).

Justice Brandeis focuses on even if just once piece of paper is read by the Government that results in a violation of the Fourth as well as Fifth Amendment. As the Court knows, Petitioner was in prison at the time this letter was sent to the Second Circuit by AUSA Patel, which should cause this Court to vacate Petitioner's conviction as well. Moreover, Petitioner just learned that the Second Circuit recalled the  Mandate on *Binday* and will hear argument on *Binday* a week after *Ciminelli* and *Percoco*. Petitioner would respectfully ask this Court to ask the Government to voluntarily withdraw the Superseding Indictment in Petitioner's case or that this Court immediately grant relief pursuant to 28 U.S.C. 2243 or otherwise vacate Petitioner's conviction and dismiss the Indictment based on the Second Circuit's recall of the mandate in *Binday*.

This is the third time the Government has appealed Judge Underhill's Order to return all of the property seized in the raids of April 2010 and May 2011—but now Petitioner has also introduced to the Second Circuit that the remaining Grist Mill Capital boxes that have not been returned were procured by an unlawful *"Silverthorne* Subpoena" issued by AUSA Novick (Exhibit Two) based on the Boxes listed in an Emergency Affidavit submitted to Judge Covello by Wayne Bursey in April of 2010 (attached as Exhibit Three). A *"Silverthorne* Subpoena" has been illegal in this Country for a century and is actually mentioned by Justice Brandeis in his *Olmstead* opinion above. AUSA Novick told Petitioner's attorneys at Halloran Sage to keep it "Secret" due to their ongoing investigation, which was allegedly based on conduct that the Supreme Court has found not to be criminal.

Finally, this Court will recall that the Petitioner brought several motions under Rule 12(b)(3)(B) for lack of jurisdiction and under Rule 33 and Rule 29 that the original Indictment

3

was Constructively Amended—and the words "Right to Control Theory of Fraud" are nowhere

to be found in either of Petitioner's Indictments. *See* Judge Preska's analysis of this problem in

the World Trade Center Case: *U.S. v. Davis* No. 13-CR-923 (LAP), 2017 WL 3328240, at *13–

14 (S.D.N.Y. Aug. 3, 2017):

> The theory of "constructive amendment" is based on the fundamental principle
> that "after an indictment has been returned its charges may not be broadened
> through amendment except by the grand jury itself." *Stirone v. United States*, 361
> U.S. 212, 215-16 (1960). "To prevail on a constructive amendment claim, a
> defendant must demonstrate that either the proof at trial or the trial court's jury
> instructions so altered an essential element of the charge that, upon review, it is
> uncertain whether the defendant was convicted of conduct that was the subject of
> the grand jury's indictment." *United States v. Salmonese*, 352 F.3d 332, 337 (2d
> Cir. 1998); see also *United States v. LaSpina*, 299 F.3d 165, 181 (2d Cir. 2002). A
> constructive amendment is a per se violation of the Fifth Amendment, *LaSpina* at
> 181, and constructive amendments have been found when the government alleges
> one theory of the case in the indictment but argues another at trial. *Stirone* at 217
> (proof of interference with interstate shipment of steel from Pennsylvania to
> Michigan and Kentucky was constructive amendment of indictment that alleged
> interference with shipment of sand into Pennsylvania).
>
> In considering the issue of constructive amendment, the Court is mindful that it is
> a fairly narrow doctrine in this Circuit. Indeed, the Court is aware of only six
> cases since 1988 in which the Court of Appeals has found constructive
> amendments. *See United States v. Mollica*, 849 F.2d 723, 730 (2d Cir. 1988);
> *United States v. Zingaro*, 858 F.2d 94, 99 (2d Cir. 1988); *United States v.
> Milstein*, 401 F.3d 53, 65 (2005); *United States v. Wozniak*, 126 F.3d 105, 111 (2d
> Cir. 1997); *United States v. Dhinsa*, 243 F.3d 635 (2d Cir. 2001); *United States v.
> Hassan*, 578 F.3d 108 (2d Cir. 2008)
>
> "A constructive amendment occurs where the actions of the court 'broaden the
> possible bases for conviction from that which appeared in the indictment.'" *Id*.
> (*quoting United States v. Banki*, 685 F.3d 99, 118 (2d Cir. 2011)). The Court of
> Appeals elaborated upon the standard as follows: Even if an indictment might
> have been drawn in more general terms to encompass the ultimate conviction,
> where "only one particular kind of [criminal conduct] is charged ... a conviction
> must rest on that charge and not another." *Zingaro* at 99 (emphasis added).
>
> Turning to the right to control theory first, either the right to control theory was
> contained in the core of criminality of the indictment or it was not. If the right to
> control theory was within the core criminality charged in the indictment, then the
> indictment is insufficient because *Shellef* teaches that when a right to control
> theory involving a contract is alleged in an indictment there must also be an

Turning to the right to control theory first, either the right to control theory was contained in the core of criminality of the indictment or it was not. If the right to control theory was within the core criminality charged in the indictment, then the indictment is insufficient because *Shellef* teaches that when a right to control theory involving a contract is alleged in an indictment there must also be an allegation that the misrepresentation had "relevance to the object of the contract" or an equivalent allegation, that there was a "discrepancy between benefits reasonably anticipated and actual benefits received," or that the misrepresentation went to "the nature of the bargain." *Shellef*, 507 F.3d at 108 (internal quotations omitted); see also *United States v. Binday*, 908 F. Supp.2d 485, 491 (S.D.N.Y. 2012)("Given the '*Shellef*' language in the present indictment, there is no danger that a jury might improperly convict the defendants based on a misrepresentation[ ] that had no relevance to the object of the contracts in question."), aff'd, 804 F.3d 558 (2d Cir. 2015). This indictment contained none of this language or anything approximating it.

 If, however, the right to control theory was not part of the core of criminality contained in the indictment, then offering evidence, argument, and an instruction based on such a theory constitutes an impermissible constructive amendment. Here, the indictment did not contain within its core of criminality the Government's right to control theory of harm. There is no allegation in the indictment that comes close to the right to control theory contained in the jury instruction,  which reads "it suffices [for a finding of fraudulent intent] that a defendant intend that his misrepresentation induce a counterparty to enter a transaction without the relevant facts to make an informed economic decision on matter that could expose the victim to economic harm,"  Also, the indictment never specifies, as would be required for an indictment relying on a right to control theory, that the MWBE aspect of the contract was an essential element of the contract (or similar language). See *Shellef*, 507 F.3d at 108; *see also Binday*, 908 F. Supp.2d at 491.

Without that language, a sufficiently pled right to control theory was not contained in the indictment. Accordingly, the evidence and jury charge pursuant to a right to control theory worked a constructive amendment.  Similar logic applies to the Government's theories of actual harm. The core of criminality alleged by the Government by the end of trial included both the cost overrun theory and the certified payroll theory of actual harm. However, no allegation in the indictment encompasses these factual complexes or would have put the Defendants fairly on notice. Therefore, by the end of trial, the Government alleged a different core of criminality from-that of the indictment with respect to its theories of actual harm. *United States v. Davis*, No. 13-CR-923 (LAP), 2017 WL 3328240, at \*32–33 (S.D.N.Y. Aug. 3, 2017).

Moreover, these clear defects in the Indictment means this Court lacked jurisdiction to impose judgment in this case. From the earliest days of the Constitution, and until the middle of the twentieth century, habeas relief was limited to claims that the court lacked "jurisdiction". *See, e.g., McCleskey v. Zant*, 499 U.S. 467, 468 (1991). The understanding of a court lacking "jurisdiction" at the time of the Founding Fathers encompassed claims that an individual was detained for conduct that was not actually criminal under the applicable law.

Thus, the Framers understood that courts lacked jurisdiction to convict an individual for conduct that (in retrospect, of course, upon review) was not, by statute, a crime. *See Ex parte Yarbrough*, 110 U.S. 651, 654 (1884). ("If the law which defines the offence and prescribes its punishment is void, the court was without jurisdiction, and the prisoners must be discharged."); *Ex parte Siebold*, 100 U.S. 371, 375 (1879) (holding a "party imprisoned under a sentence of a United States court, upon conviction of a crime created by and indictable under an unconstitutional act of Congress, may be discharged from imprisonment by this court on habeas corpus" because there was no authority to indict and try the defendant for a crime is "illegal and void, and cannot be a legal cause of imprisonment"); *cf. Ex parte Page*, 49 Mo. 291, 294 (1872) (granting habeas to a person sentenced to ten years under statute that allowed maximum sentence of seven years because the "judgment of the court in passing sentence was illegal" and "absolutely void" and thus exceed[ed] the jurisdiction of the court and [was not] the exercise of an authority prescribed by law").

*Bousley v. United States*, 523 U.S. 614 (1998), totally supports Petitioner's constitutional entitlement to reconsideration and review by this Court. There, Bousley pleaded guilty to "using" a firearm in violation of 18 U.S.C. § 924(c)(1), on the ground that guns in his "bedroom were in close proximity to drugs and were readily accessible". 523 U.S. at 617. Five years later, the

6

Supreme Court interpreted Section 924(c)(1)'s "use" prong more restrictively, requiring a showing of "active employment of the firearm", not merely "storing a weapon near drugs". *Id.* Bousley sought collateral relief under 28 U.S.C. § 2255, alleging that his plea was unintelligent because he was misinformed about the elements of a Section 924(c)(1) offense. The Supreme Court agreed. And while it held that Bousley had procedurally defaulted that claim by failing to raise it on direct review, that default did not bar relief insofar as petitioner could "establish actual innocence." 523 U.S. at 623. As the Supreme Court famously explained:

> "[D]ecisions of this Court holding that a substantive federal criminal statute does not reach certain conduct, like decisions placing conduct beyond the power of the criminal law-making authority to proscribe, necessarily carry a significant risk that a Defendant stands convicted of an act that the law does not make criminal … Accordingly, it would be inconsistent with the doctrinal underpinnings of habeas review to preclude petitioner from relying on [an intervening decision] in support of his claim that his guilty plea was constitutionally invalid." *Id.* At 620-21 (internal citations and quotation marks omitted).

In short, the Supreme Court relied on constitutional concerns to allow the defendant in *Bousley* to advance his claim where the Supreme Court's recent interpretation of a criminal statute created "a significant risk that a defendant stands convicted of an act that the law does not make criminal". *Id.* At 620 (internal quotation marks omitted). Similar constitutional concerns favor this Court reconsidering and vacating the Petitioner's conviction because nothing he did was "criminal" or in violation of any law in the past and certainly not now with the Supreme Court's recent decisions.

The Due Process Clause also prohibits continued imprisonment for conduct that "a criminal statute, as properly interpreted, does not prohibit". *Fiore v. White*, 531 U.S. 255, 228 (2001) (per curiam). Like Petitioner here, the defendant in *Fiore* was convicted of violating a statute that was later interpreted to clarify that an element of the crime has a narrower meaning than the meaning understood at the time the defendant was convicted. The Supreme Court

7

deemed it "clear" that Due Process forbade Fiore's "conviction and continued incarceration" for conduct that a criminal statute, "as properly interpreted, does not prohibit". *Id.; see also Bunkley v. Florida*, 538 U.S. 835, 840 (2003) ("It has long been established by this Court that the 'Due Process Clause . . . forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt.'" (quoting *Fiore*, 531 U.S. at 228-29)). As the Supreme Court previously explained, [t]here can be no room for doubt" that sustaining "conviction and punishment . . . for an act that the law does not make criminal "inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346-47 (1974).

For similar reasons, punishing Petitioner for conduct that Congress did not make criminal also violates the Separation of Powers under the Constitution. "[U]nder our federal system it is only Congress, and not the courts, which can make conduct criminal". *Bousley*, 523 U.S. at 620-21; *see also United States v. Lanier*, 520 U.S. 259, 267-68, n.6 (1997); *United States v. Hudson*, 11 U.S. 32 (7 Cranch) (1812). Therefore, where the Supreme Court construes a federal criminal statute, detaining individuals under contrary readings of the statute exceeds the District Court's constitutionally granted authority. Such is the case under the facts this Court must assume here. Petitioner is currently being punished not because *Congress* authorized his punishment, but because *a federal court* erroneously construed the statute to criminalize conduct Congress did not in fact make a crime and which now everyone knows is not, in fact, criminal conduct.

The Supreme Court's direction that substantive interpretations narrowing criminal statutes apply retroactively on collateral review further supports the notion that the Constitution precludes punishing individuals under statutes that do not in fact criminalize their conduct – regardless of when it is actually determined what is and is not criminal conduct. In *Mackey v. United States*, 401 U.S. 667, 675 (1971), Justice Harlan articulated a view of retroactivity for

cases on collateral review, later adopted in *Teague v. Lane*, 489 U.S. 288 (1989), that finality interests should yield when a conviction is attacked on the grounds, as is it here, that the "conduct [is] beyond the power of the criminal law-making authority to proscribe". *Id.* at 310; *see Mackey*, 401 U.S. at 692-93 (Harlan, J., opinion concurring in judgments in part). Because **"[a] conviction or sentence imposed in violation of a substantive rule is not just erroneous but contrary to law and, as a result, void . . . a court has no authority to leave in place a conviction or sentence that violates a substantive rule, regardless of whether the conviction or sentence became final before the rule was announced**." *Montgomery v. Louisiana*, 577 U.S. 190, 203 (2016).

Accordingly, both the Due Process Clause and the Separation of Powers supports the common-sense proposition that the Constitution does not permit the continued punishment of an individual whose conduct was not actually a crime.

Moreover, punishing someone for conduct that is not actually a crime would also violate the Eighth Amendment. Punishment is "cruel and unusual" U.S. Const. amend. VIII, when it is "grossly disproportionate and excessive punishment for the crime". *Solem v. Helm*, 463 U.S. 277, 288 (1983). That being so, it must also violate the Eighth Amendment to inflict punishment for no crime at all, as was done in this case by this Court. **Serving "[e]ven one day in prison would be a cruel and unusual punishment for the 'crime of' something that the law does not punish**. *See Robinson v. California*, 370 U.S. 660, 667 (1962).

Therefore, based on these dramatic recent developments in both the Second Circuit and the Supreme Court, Petitioner respectfully asks this Court to grant the Writ Pursuant to 28 U.S.C. 2243 so that his conviction be vacated, his Indictment dismissed with prejudice and the following relief granted:

9

## RELIEF SOUGHT

Petitioner respectfully requests that the Court grant the instant Petition and issue an order: (i) vacating and setting aside the Court's Judgment of June 6, 2016, the Order of Restitution and Petitioner's December 2018 conviction for mail and wire fraud in its entirety; (ii) expunging and sealing all records of the foregoing indictment and conviction; (iii) ordering the Government to return all funds paid to the Government on behalf of Petitioner in this case; and (iv) granting such other and further relief as this Court deems just, equitable, and proper.

## EXPEDITED RELIEF

Petitioner's conviction continues to prevent him from practicing law as an attorney, or acting as an insurance agent or working on any ERISA Employee Benefit Plan. This has caused and continues to cause significant financial instability to his family. In addition, it would be better for Society to restore Petitioner's law license so that he may help other individuals who are still in prison and not able to afford legal counsel to help them prepare the necessary legal documents to secure their release. Petitioner helped to secure the early release of over 120 inmates pursuant to the First Step Act and the CARES Act during his period of incarceration. Accordingly, to the extent possible and practicable, Petitioner most respectfully requests that his Petition be treated on an expedited basis as the Due Process delays in this case have been extraordinary to date and far exceed any other case in the history of the Second Circuit.

## EXPUNGEMENT

After a conviction is invalidated "district courts possess ancillary jurisdiction to expunge criminal records. That jurisdiction flows out of the congressional grant of jurisdiction to hear cases involving offenses against the United States pursuant to 18 U.S.C. § 3231." *See, e.g., United States v. Sumner,* 226 F.3d 1005, 1014 (9th Cir. 2000). Here, in the event the Court grants

10

this Petition and invalidates Petitioner's conviction, Petitioner respectfully requests that this Court order the record of the conviction to be expunged and sealed. As discussed, *supra*, Petitioner's conviction is invalid as a matter of law and was premised on erroneous applications of the law that were never valid. Accordingly, Petitioner has demonstrated appropriate, extraordinary, and unusual circumstances to warrant the relief of expungement and the return of all funds paid to the Government over the past seven years.

## CONCLUSION

For all of the above reasons, it is respectfully submitted that the Court has a rare opportunity to correct a miscarriage of justice, inasmuch that Petitioner stands convicted of acts he did not do, that the law does not make criminal, and were never criminal under any proper understanding of the Mail and Wire Fraud statutes. Petitioner therefore respectfully asks the Court to vacate and set aside Petitioner's conviction and to expunge and seal all records of the indictment and conviction in this case, and order the Government to return all funds and to vacate the Order of Restitution in this case as described above.

Therefore, based on the major appellate decisions establishing a clarification of and an intervening change in the understanding of the law of Mail and Wire Fraud in *Kelly*, *Ciminelli*, *Binday*, *Countrywide, Takhalov, Weimert*, and *AEI v. Lincoln*, Petitioner respectfully moves this Court to reconsider and vacate Petitioner's Conviction and dismiss the untimely and defective Superseding Indictment of May 14, 2014.

Dated:        August 3, 2023

Respectfully Submitted,

 /s/ Daniel E. Carpenter 
Daniel E. Carpenter
Petitioner, *pro se*
18 Pondside Lane
West Simsbury, CT 06092

11

## CERTIFICATION

I hereby certify that on this day of  August 3, 2023, a copy of the foregoing was filed at the District of Connecticut Clerk's office in Hartford 450 Main Street, Hartford, CT 06103. Notice of this filing was also sent by USPS to US Attorney's Office Hartford Office, US Attorney's New Haven Office, Connecticut Financial Center, 157 Church Street, Floor 25, New Haven, CT 06510

# EXHIBIT ONE

Rule 28(j) Letter to Second Circuit RE: *Binday* Order

June 20, 2023

Catherine O'Hagan Wolfe
Clerk of the Court
U.S. Court of Appeals for the Second Circuit
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

      Re: *Carpenter v. Allen*,
           Docket Nos. 22-1057, 22-1061(XAP)

Dear Ms. Wolfe:

Pursuant to Rule 28(j), this letter is to advise the Court of two recent decisions from the Supreme Court that will have a major impact on the future of the litigation between the parties in *Carpenter v. Allen*. The first case, *Binday v. United States*, is included as Exhibit One and resulted in the Defendants in *Binday* having their convictions vacated based on the Supreme Court's unanimous decision in *Ciminelli v. United States* (Exhibit Two), which effectively abrogated and reversed a number of convictions involving the Second Circuit's "Right to Control" Theory of Fraud. The Government has already begun to advise people to stop collecting restitution on cases involving the "Right to Control" Theory. See e.g., Notice to Trevon Gross attached as Exhibit Three.

The gist of the Government-Appellants' appeal of Judge Underhill's three Orders over the past eight years is that Mr. Carpenter might succeed in his efforts to vacate his conviction and the Government will need the property unlawfully seized in two raids in 2010 and 2011 for what the Government believes will be a second trial for Mr. Carpenter.

But the Double Jeopardy Clause of the Constitution precludes any such second trial because: "In essence, the Double Jeopardy Clause protects criminal defendants against three things: (1) "a second prosecution for the same offense after acquittal," (2) "a second prosecution for the same offense after conviction," and (3) "multiple punishments for the same offense." *United States v. Olmeda*, 461 F.3d 271, 279 (2d Cir. 2006).

The Government's claim that it must withhold the unlawfully seized property from the innocent Grist Mill Capital LLC is also dubious because the Government claimed in 2019 that it had all of the evidence that it needed and there was no evidence illegally seized from Mr. Carpenter's office that it needed for any future trial. See Government's Rule 28(j) Letter attached as Exhibit Four. So, there is no further evidence that the Government needs to retain for a hypothetical second trial.

> By: */s/ Jonathan J. Einhorn*
> JONATHAN J. EINHORN
> 129 WHITNEY AVENUE
> NEW HAVEN, CT 06510
> FEDERAL BAR NO. ct00163
> EINHORNLAWOFFICE@GMAIL.COM

# EXHIBIT ONE

## Binday v. United States

# Supreme Court of the United States
## Office of the Clerk
## Washington, DC 20543-0001

Scott S. Harris
Clerk of the Court
(202) 479-3011

May 22, 2023

Clerk
United States Court of Appeals for the Second
Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

> Re:  Michael L. Binday
> v. United States
> No. 21-1241
> (Your No. 21-1206)

Dear Clerk:

The Court today entered the following order in the above-entitled case:

The petition for a writ of certiorari is granted. The judgment is vacated, and the case is remanded to the United States Court of Appeals for the Second Circuit for further consideration in light of *Ciminelli* v. *United States*, 598 U. S. ___ (2023).

The judgment or mandate of this Court will not issue for at least thirty-two days pursuant to Rule 45. Should a petition for rehearing be filed timely, the judgment or mandate will be further stayed pending this Court's action on the petition for rehearing.

Sincerely,

*Scott S. Harris*

Scott S. Harris, Clerk

# EXHIBIT TWO

## Ciminielli v. United States

Case 3:21-cv-01485-RNC   Document 16   Filed 08/03/23   Page 19 of 46

Case 22-1061, Document 99, 06/20/2023, 3531495, Page6 of 25
Case 19-1272, Document 190-1, 05/15/2023, 3515212, Page1 of 1

# Supreme Court of the United States
## Office of the Clerk
## Washington, DC 20543-0001

Scott S. Harris
Clerk of the Court
(202) 479-3011

May 11, 2023

Clerk
United States Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

> Re: Louis Ciminelli
> v. United States, et al.
> No. 21-1170
> (Your No. 18-3710, 18-3712, 18-3715, 18-3850)

Dear Clerk:

The opinion of this Court was announced today in the above stated case. A copy of the opinion is available on the Court's website at www.supremecourt.gov.

The judgment or mandate of this Court will not issue for at least twenty-five days pursuant to Rule 45. Should a petition for rehearing be filed timely, the judgment or mandate will be further stayed pending this Court's action on the petition for rehearing.

Sincerely,

*Scott S. Harris*

Scott S. Harris, Clerk

by

Laurie Wood
Deputy Clerk
(202) 479-3031

Case 3:21-cv-01485-RNC  Document 16  Filed 08/03/23  Page 20 of 46

Case 22-1061, Document 99, 06/20/2023, 3531495, Page7 of 25
Case 19-1272, Document 190-2, 05/15/2023, 3515212, Page1 of 14

(Slip Opinion)          OCTOBER TERM, 2022                    1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## CIMINELLI *v.* UNITED STATES ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 21–1170.  Argued November 28, 2022—Decided May 11, 2023

Petitioner Louis Ciminelli was convicted of federal wire fraud for his in-volvement in a scheme to rig the bid process for obtaining state-funded development projects associated with then-New York Governor An-drew Cuomo's Buffalo Billion initiative. The Buffalo Billion initiative was administered by the nonprofit Fort Schuyler Management Corpo-ration. Investigations uncovered that Fort Schuyler board member Alein Kaloyeros paid lobbyist Todd Howe $25,000 in state funds each month to ensure that the Cuomo administration gave Kaloyeros a prominent role in administering projects for Buffalo Billion. Ci-minelli's construction company, LPCiminelli, paid Howe $100,000 to $180,000 each year to help it obtain state-funded jobs. In 2013, Howe and Kaloyeros devised a scheme whereby Kaloyeros would tailor Fort Schuyler's bid process to smooth the way for LPCiminelli to receive major Buffalo Billion contracts by designating LPCiminelli as a "pre-ferred developer" with priority status to negotiate for specific projects. Kaloyeros, Howe, and Ciminelli jointly developed a set of requests for proposal (RFPs) that effectively guaranteed LPCiminelli's selection as a preferred developer by treating unique aspects of LPCiminelli as qualifications for preferred-developer status. With that status in hand, LPCiminelli secured the marquee $750 million "Riverbend pro-ject" in Buffalo. After the scheme was uncovered, Ciminelli, Kaloyeros, Howe, and others were indicted for, as relevant here, wire fraud in vi-olation of 18 U. S. C. §1343 and conspiracy to commit the same under §1349.

In the operative indictment and at trial, the Government relied solely on the Second Circuit's right-to-control theory of wire fraud, un-der which the Government can establish wire fraud by showing that

Case 3:21-cv-01485-RNC Document 16 Filed 08/03/23 Page 21 of 46

Case 22-1061, Document 99, 06/20/2023, 3531495, Page8 of 25
Case 19-1272, Document 190-2, 05/15/2023, 3515212, Page2 of 14

2                        CIMINELLI *v.* UNITED STATES

### Syllabus

the defendant schemed to deprive a victim of potentially valuable eco-
nomic information necessary to make discretionary economic deci-
sions. Consistent with that theory, the District Court instructed the
jury that the term "property" in §1343 "includes intangible interests
such as the right to control the use of one's assets," which could be
harmed by depriving Fort Schuyler of "potentially valuable economic
information." The jury convicted Ciminelli of wire fraud and conspir-
acy to commit wire fraud. On appeal, Ciminelli argued that the right
to control one's assets is not "property" for purposes of §1343. The Sec-
ond Circuit affirmed the convictions on the basis of its longstanding
right-to-control precedents.

*Held:* Because the right to valuable economic information needed to
make discretionary economic decisions is not a traditional property in-
terest, the Second Circuit's right-to-control theory cannot form the ba-
sis for a conviction under the federal fraud statutes. Pp. 4–10.

(a) The federal wire fraud statute criminalizes the use of interstate
wires for "any scheme or artifice to defraud, or for obtaining money or
property by means of false or fraudulent pretenses, representations, or
promises." 18 U. S. C. §1343. When the federal wire fraud statute
was enacted, the "common understanding" of the words "to defraud"
referred "to wronging one in his property rights." *Cleveland* v. *United
States,* 531 U. S. 12, 19. This Court has therefore consistently under-
stood the statute's "money or property" requirement as limiting the
"scheme or artifice to defraud" element. *Ibid.* Even so, lower federal
courts for decades interpreted the mail and wire fraud statutes to pro-
tect intangible interests unconnected to traditional property rights.
See *Skilling* v. *United States,* 561 U. S. 358, 400. This Court halted
that trend in *McNally* v. *United States,* 483 U. S. 350, which confined
the statutes to the "protect[ion of] individual property rights." *Id.,* at
359, n. 8.

The right-to-control theory cannot be squared with the text of the
federal fraud statutes, which are "limited in scope to the protection of
property rights." *Id.,* at 360. The so-called right to control is not an
interest that had "long been recognized as property" when the wire
fraud statute was enacted. *Carpenter* v. *United States,* 484 U. S. 19,
26. From the theory's inception, the Second Circuit has not grounded
the right to control in traditional property notions. The theory is also
inconsistent with the structure and history of the federal fraud stat-
utes. Congress responded to this Court's decision in *McNally* by en-
acting §1346, which revived only the intangible right of honest ser-
vices, one of many intangible rights protected by courts under the
fraud statutes pre-*McNally.* Congress' silence regarding other such
intangible interests forecloses the judicial expansion of the wire fraud
statute to cover the intangible right to control. Finally, by treating

Case 3:21-cv-01485-RNC   Document 16   Filed 08/03/23   Page 22 of 46

Case 22-1061, Document 99, 06/20/2023, 3531495, Page9 of 25
Case 19-1272, Document 190-2, 05/15/2023, 3515212, Page3 of 14

Cite as: 598 U. S. ____ (2023)               3

Syllabus

mere information as the protected interest, the right-to-control theory
vastly expands federal jurisdiction to an almost limitless variety of de-
ceptive actions traditionally left to State law.  Pp. 4–9.

   (b) Despite relying exclusively on the right-to-control theory before
the grand jury, District Court, and Second Circuit, the Government
now concedes that the theory as articulated below is erroneous.  Yet,
the Government insists that the Court can affirm Ciminelli's convic-
tions by applying facts presented to the jury below to the elements of
a different wire fraud theory.  The Court declines the Government's
request, which would require the Court to assume not only the func-
tion of a court of first view, but also of a jury.  See *McCormick* v. *United
States*, 500 U. S. 257, 270–271, n. 8.  Pp. 9–10.

13 F. 4th 158, reversed and remanded.

   THOMAS, J., delivered the opinion for a unanimous Court.  ALITO, J.,
filed a concurring opinion.

Case 3:21-cv-01485-RNC Document 16 Filed 08/03/23 Page 23 of 46

Case 22-1061, Document 99, 06/20/2023, 3531495, Page10 of 25
Case 19-1272, Document 190-2, 05/15/2023, 3515212, Page4 of 14

Cite as: 598 U. S. \_\_\_\_ (2023)    1

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the
United States Reports. Readers are requested to notify the Reporter of
Decisions, Supreme Court of the United States, Washington, D. C. 20543,
pio@supremecourt.gov, of any typographical or other formal errors.

# SUPREME COURT OF THE UNITED STATES

## No. 21–1170

### LOUIS CIMINELLI, PETITIONER v. UNITED STATES, ET AL.

#### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

#### [May 11, 2023]

JUSTICE THOMAS delivered the opinion of the Court.

In this case, we must decide whether the Second Circuit's longstanding "right to control" theory of fraud describes a valid basis for liability under the federal wire fraud statute, which criminalizes the use of interstate wires for "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U. S. C. §1343. Under the right-to-control theory, a defendant is guilty of wire fraud if he schemes to deprive the victim of "potentially valuable economic information" "necessary to make discretionary economic decisions." *United States* v. *Percoco*, 13 F. 4th 158, 170 (CA2 2021) (internal quotation marks omitted). Petitioner Louis Ciminelli was charged with, tried for, and convicted of wire fraud under this theory. And the Second Circuit affirmed his convictions on that same basis.

We have held, however, that the federal fraud statutes criminalize only schemes to deprive people of traditional property interests. *Cleveland* v. *United States*, 531 U. S. 12, 24 (2000). Because "potentially valuable economic in-

Case 3:21-cv-01485-RNC   Document 16   Filed 08/03/23   Page 24 of 46

Case 22-1061, Document 99, 06/20/2023, 3531495, Page11 of 25
Case 19-1272, Document 190-2, 05/15/2023, 3515212, Page5 of 14

Opinion of the Court

formation" "necessary to make discretionary economic deci-
sions" is not a traditional property interest, we now hold
that the right-to-control theory is not a valid basis for lia-
bility under §1343. Accordingly, we reverse the Second Cir-
cuit's judgment.

I

This case begins with then-New York Governor Andrew
Cuomo's "Buffalo Billion" initiative. On its face, the initia-
tive was administered through Fort Schuyler Management
Corporation, a nonprofit affiliated with the State Univer-
sity of New York (SUNY) and the SUNY Research Founda-
tion. It aimed to invest $1 billion in development projects
in upstate New York. Later investigations, however, un-
covered a wide-ranging scheme that involved several of for-
mer Governor Cuomo's associates, most notably Alain Kalo-
yeros and Todd Howe. Kaloyeros was a member of Fort
Schuyler's board of directors and was in charge of develop-
ing project proposals for Buffalo Billion; Howe was a lobby-
ist who had deep ties to the Cuomo administration. Each
month, Kaloyeros paid Howe $25,000 in state funds to en-
sure that the Cuomo administration gave Kaloyeros a
prominent position in Buffalo Billion.

Ciminelli had a similar arrangement. His construction
company, LPCiminelli, paid Howe $100,000 to $180,000
each year to help it obtain state-funded jobs. In 2013, Howe
and Kaloyeros devised a scheme whereby Kaloyeros would
tailor Fort Schuyler's bid process to smooth the way for
LPCiminelli to receive major Buffalo Billion contracts.
First, on Kaloyeros' suggestion, Fort Schuyler established a
process for selecting "preferred developers" that would be
given the first opportunity to negotiate with Fort Schuyler
for specific projects. Then, Kaloyeros, Howe, and Ciminelli
jointly developed a set of requests for proposal (RFPs) that
treated unique aspects of LPCiminelli as qualifications for

Case 3:21-cv-01485-RNC  Document 16  Filed 08/03/23  Page 25 of 46

Case 22-1061, Document 99, 06/20/2023, 3531495, Page12 of 25
Case 19-1272, Document 190-2, 05/15/2023, 3515212, Page6 of 14

Cite as: 598 U. S. ___ (2023)            3

Opinion of the Court

preferred-developer status. Those RFPs effectively guaranteed that LPCiminelli would be (and was) selected as a preferred developer for the Buffalo projects. With that status in hand, LPCiminelli secured the marquee $750 million "Riverbend project" in Buffalo.

After an investigation revealed their scheme, Ciminelli, Howe, Kaloyeros, and several others were indicted by a federal grand jury on 18 counts including, as relevant here, wire fraud in violation of 18 U. S. C. §1343 and conspiracy to commit wire fraud in violation of §1349.

Throughout the grand jury proceedings, trial, and appeal, the Government relied on the Second Circuit's "right to control" theory, under which the Government can establish wire fraud by showing that the defendant schemed to deprive a victim of potentially valuable economic information necessary to make discretionary economic decisions. The Government's indictment and trial strategy rested solely on that theory.[1] And, it successfully defeated Ciminelli and his codefendants' motion to dismiss by relying on that theory. In addition, it successfully moved the District Court to exclude certain defense evidence as irrelevant to that theory. The Government also relied on that theory in its summation to the jury.

Consistent with the right-to-control theory, the District Court instructed the jury that the term "property" in §1343 "includes intangible interests such as the right to control the use of one's assets." App. 41. The jury could thus find that the defendants harmed Fort Schuyler's right to control

---

[1] An earlier indictment alleged that the Buffalo Billion contracts were the property at issue. But, to defend against the defendants' motion to dismiss, the Government relied solely on the theory that the scheme "defraud[ed] Fort Schuyler of its right to control its assets." App. 31–32. The District Court then relied expressly on the right-to-control theory in denying the motion to dismiss. *United States* v. *Percoco*, 2017 WL 6314146, *8 (SDNY, Dec. 11, 2017).

Case 3:21-cv-01485-RNC   Document 16   Filed 08/03/23   Page 26 of 46

Case 22-1061, Document 99, 06/20/2023, 3531495, Page13 of 25
Case 19-1272, Document 190-2, 05/15/2023, 3515212, Page7 of 14

4                      CIMINELLI *v.* UNITED STATES

                          Opinion of the Court

its assets if Fort Schuyler was "deprived of potentially val-
uable economic information that it would consider valuable
in deciding how to use its assets." *Ibid.* The District Court
further defined "economically valuable information" as "in-
formation that affects the victim's assessment of the bene-
fits or burdens of a transaction, or relates to the quality of
goods or services received or the economic risks of the trans-
action." *Ibid.* The jury found Ciminelli guilty of wire fraud
and conspiracy to commit wire fraud and the District Court
sentenced him to 28 months' imprisonment followed by 2
years' supervised release.

On appeal, Ciminelli challenged the right-to-control the-
ory, arguing that the right to control one's assets is not
"property" for purposes of the wire fraud statute. Defend-
ing the wire fraud convictions, the Government relied solely
on the right-to-control theory. The Second Circuit affirmed
the convictions based on its longstanding right-to-control
precedents, holding that, by "rigging the RFPs to favor their
companies, defendants deprived Fort Schuyler of poten-
tially valuable economic information." 13 F. 4th, at 171 (in-
ternal quotation marks omitted).

We granted certiorari to determine whether the Second
Circuit's right-to-control theory of wire fraud is a valid basis
for liability under 18 U. S. C. §1343. 597 U. S. ___ (2022).
And, we now hold that it is not.

                                II
                                A

The wire fraud statute criminalizes "scheme[s] or arti-
fice[s] to defraud, or for obtaining money or property by
means of false or fraudulent pretenses, representations, or
promises." §1343. Although the statute is phrased in the
disjunctive, we have consistently understood the "money or
property" requirement to limit the "scheme or artifice to de-
fraud" element because the "common understanding" of the
words "to defraud" when the statute was enacted referred

Case 3:21-cv-01485-RNC Document 16 Filed 08/03/23 Page 27 of 46

Case 22-1061, Document 99, 06/20/2023, 3531495, Page14 of 25
Case 19-1272, Document 190-2, 05/15/2023, 3515212, Page8 of 14

Cite as: 598 U. S. ____ (2023)          5

Opinion of the Court

"to wronging one in his property rights." *Cleveland*, 531
U. S., at 19 (internal quotation marks omitted).[2] This un-
derstanding reflects not only the original meaning of the
text, but also that the fraud statutes do not vest a general
power in "the Federal Government . . . to enforce (its view
of) integrity in broad swaths of state and local policymak-
ing." *Kelly* v. *United States*, 590 U. S. ___, ___ (2020) (slip
op., at 12). Instead, these statutes "protec[t] property rights
only." *Cleveland*, 531 U. S., at 19. Accordingly, the Gov-
ernment must prove not only that wire fraud defendants
"engaged in deception," but also that money or property was
"an object of their fraud." *Kelly*, 590 U. S., at ___ (slip op.,
at 7) (alterations omitted).

Despite these limitations, lower federal courts for dec-
ades interpreted the mail and wire fraud statutes to protect
intangible interests unconnected to traditional property
rights. See *Skilling* v. *United States*, 561 U. S. 358, 400
(2010) (recounting how "the Courts of Appeals, one after an-
other, interpreted the term 'scheme or artifice to defraud' to
include deprivations not only of money or property, but also
of intangible rights"). For example, federal courts held the
fraud statutes reached such intangible interests as the
right to "honest services," *ibid.* (internal quotation marks
omitted); the right of the citizenry to an honest election, see
*United States* v. *Girdner*, 754 F. 2d 877, 880 (CA10 1985);
and the right to privacy, *United States* v. *Louderman*, 576
F. 2d 1383, 1387 (CA9 1978). In *McNally* v. *United States*,
483 U. S. 350 (1987), this Court halted that trend by con-
fining the federal fraud statutes to their original station,
the "protect[ion of] individual property rights." *Id.*, at 359,
n. 8. Congress then amended the fraud statutes "specifi-
cally to cover one of the 'intangible rights' that lower courts

---

[2]Although *Cleveland* involved the mail fraud statute, 18 U. S. C.
§1341, "we have construed identical language in the wire and mail fraud
statutes *in pari materia.*" *Pasquantino* v. *United States*, 544 U. S. 349,
355, n. 2 (2005).

Case 3:21-cv-01485-RNC   Document 16   Filed 08/03/23   Page 28 of 46

Case 22-1061, Document 99, 06/20/2023, 3531495, Page15 of 25
Case 19-1272, Document 190-2, 05/15/2023, 3515212, Page9 of 14

6                              CIMINELLI *v.* UNITED STATES

                                    Opinion of the Court

had protected under [the statutes] prior to *McNally*: 'the in-
tangible right of honest services.'" *Cleveland*, 531 U. S., at
19–20 (quoting 18 U. S. C. §1346).

    The right-to-control theory applied below first arose after
*McNally* prevented the Government from basing federal
fraud convictions on harms to intangible interests uncon-
nected to property. See *United States* v. *Wallach*, 935 F. 2d
445, 461–464 (CA2 1991). As developed by the Second Cir-
cuit, the theory holds that, "[s]ince a defining feature of
most property is the right to control the asset in question,"
"the property interests protected by the wire fraud statute
include the interest of a victim in controlling his or her own
assets." *United States* v. *Lebedev*, 932 F. 3d 40, 48 (2019)
(alterations omitted). Thus, a "cognizable harm occurs
where the defendant's scheme denies the victim the right to
control its assets by depriving it of information necessary to
make discretionary economic decisions." *United States* v.
*Binday*, 804 F. 3d 558, 570 (CA2 2015) (alterations omit-
ted).[3]

    The right-to-control theory cannot be squared with the
text of the federal fraud statutes, which are "limited in
scope to the protection of property rights." *McNally*, 483
U. S., at 360. The so-called "right to control" is not an in-
terest that had "long been recognized as property" when the
wire fraud statute was enacted. *Carpenter* v. *United States*,
484 U. S. 19, 26 (1987). Significantly, when the Second Cir-
cuit first recognized the right-to-control theory in 1991—
decades after the wire fraud statute was enacted and over
a century after the mail fraud statute was enacted—it could

────────────

[3] At least two Circuits have expressly repudiated the right-to-control
theory of wire fraud. *United States* v. *Sadler*, 750 F. 3d 585, 590–592
(CA6 2014); *United States* v. *Bruchhausen*, 977 F. 2d 464, 467–469 (CA9
1992). Several other Circuits have embraced the theory to varying de-
grees. See, *e.g.*, *United States* v. *Gray*, 405 F. 3d 227, 234 (CA4 2005)
(collecting cases).

Case 3:21-cv-01485-RNC   Document 16   Filed 08/03/23   Page 29 of 46

Case 22-1061, Document 99, 06/20/2023, 3531495, Page16 of 25
Case 19-1272, Document 190-2, 05/15/2023, 3515212, Page10 of 14

Opinion of the Court

cite no authority that established "potentially valuable economic information" as a traditionally recognized property interest. See *Wallach*, 935 F. 2d, at 462–463.[4] And, the Second Circuit has not since attempted to ground the right-to-control theory in traditional property notions. We have consistently rejected such federal fraud theories that "stray from traditional concepts of property." *Cleveland*, 531 U. S., at 24. For its part, the Government—despite relying upon the right-to-control theory for decades, including in this very case—now concedes that if "the right to make informed decisions about the disposition of one's assets, without more, were treated as the sort of 'property' giving rise to wire fraud, it would risk expanding the federal fraud statutes beyond property fraud as defined at common law and as Congress would have understood it." Brief for United States 25–26. Thus, even the Government now agrees that the Second Circuit's right-to-control theory is unmoored from the federal fraud statutes' text.

_____

[4] The only judicial authority the Second Circuit cited for this key proposition was a 1989 Fifth Circuit opinion that conclusorily asserted that "[t]he economic value of . . . knowledge" was "sufficient 'property' to implicate" the mail fraud statute, and that appears to have misunderstood 18 U. S. C. §1346 as "eliminating the requirement of property loss" in all cases. *United States* v. *Little*, 889 F. 2d 1367, 1368–1369. The Second Circuit then proceeded to rely on the "bundle of sticks" metaphor of property rights. See *United States* v. *Wallach*, 935 F. 2d 445, 463 (1991) ("[G]iven the important role that information plays in the valuation of a corporation, the right to complete and accurate information is one of the most essential sticks in the bundle of rights that comprise a stockholder's property interest"). But that metaphor—whatever its merits in other contexts—cannot compensate for the absence of an interest that itself "has long been recognized as property," *Carpenter* v. *United States*, 484 U. S. 19, 26 (1987), particularly in light of our rejection of attempts to construe the federal fraud statutes "in a manner that leaves [their] outer boundaries ambiguous." *McNally* v. *United States*, 483 U. S. 350, 360 (1987). As noted above, the right to information necessary to make informed economic decisions, while perhaps useful for protecting and making use of one's property, has not itself traditionally been recognized as a property interest.

Case 3:21-cv-01485-RNC   Document 16   Filed 08/03/23   Page 30 of 46

Case 22-1061, Document 99, 06/20/2023, 3531495, Page17 of 25
Case 19-1272, Document 190-2, 05/15/2023, 3515212, Page11 of 14

8                CIMINELLI v. UNITED STATES

Opinion of the Court

The right-to-control theory is also inconsistent with the structure and history of the federal fraud statutes. As recounted above, after *McNally* put an end to federal courts' use of mail and wire fraud to protect an ever-growing swath of intangible interests unconnected to property, Congress responded by enacting §1346, which—despite the wide array of intangible interests courts protected under the fraud statutes pre-*McNally*—revived "*only* the intangible right of honest services." *Cleveland*, 531 U. S., at 19–20 (emphasis added). "Congress' reverberating silence about other [such] intangible interests" forecloses the expansion of the wire fraud statute to cover the intangible right to control. *United States* v. *Sadler*, 750 F. 3d 585, 591 (CA6 2014).

Finally, the right-to-control theory vastly expands federal jurisdiction without statutory authorization. Because the theory treats mere information as the protected interest, almost any deceptive act could be criminal. See, *e.g.*, *United States* v. *Viloski*, 557 Fed. Appx. 28 (CA2 2014) (affirming right-to-control conviction based on an employee's undisclosed conflict of interest). The theory thus makes a federal crime of an almost limitless variety of deceptive actions traditionally left to state contract and tort law—in flat contradiction with our caution that, "[a]bsent [a] clear statement by Congress," courts should "not read the mail [and wire] fraud statute[s] to place under federal superintendence a vast array of conduct traditionally policed by the States." *Cleveland*, 531 U. S., at 27. And, as it did below, the Second Circuit has employed the theory to affirm federal convictions regulating the ethics (or lack thereof) of state employees and contractors—despite our admonition that "[f]ederal prosecutors may not use property fraud statutes to set standards of disclosure and good government for state and local officials." *Kelly*, 590 U. S., at ___ (slip op., at 12) (alterations omitted). The right-to-control theory thus criminalizes traditionally civil matters and federalizes traditionally state matters.

Case 3:21-cv-01485-RNC  Document 16  Filed 08/03/23  Page 31 of 46

Case 22-1061, Document 99, 06/20/2023, 3531495, Page18 of 25
Case 19-1272, Document 190-2, 05/15/2023, 3515212, Page12 of 14

Opinion of the Court

In sum, the wire fraud statute reaches only traditional property interests. The right to valuable economic information needed to make discretionary economic decisions is not a traditional property interest. Accordingly, the right-to-control theory cannot form the basis for a conviction under the federal fraud statutes.

B

Despite indicting, obtaining convictions, and prevailing on appeal based solely on the right-to-control theory, the Government now concedes that the theory as articulated below is erroneous. Brief for United States 24–26. The Government frankly admits that, "to the extent that language in the [Second Circuit's] opinions might suggest that depriving a victim of economically valuable information, without more, necessarily qualifies as 'obtaining money or property' within the meaning of the fraud statutes, that is incorrect." *Id.*, at 24. That should be the end of the case.

Yet, the Government insists that its concession does not require reversal because we can affirm Ciminelli's convictions on the alternative ground that the evidence was sufficient to establish wire fraud under a traditional property-fraud theory. *Id.*, at 31–32. With profuse citations to the records below, the Government asks us to cherry-pick facts presented to a jury charged on the right-to-control theory and apply them to the elements of a *different* wire fraud theory in the first instance. In other words, the Government asks us to assume not only the function of a court of first view, but also of a jury. That is not our role. See, *e.g.*, *McCormick* v. *United States*, 500 U. S. 257, 270–271, n. 8 (1991) ("Appellate courts are not permitted to affirm convictions on any theory they please simply because the facts necessary to support the theory were presented to the jury"); *Chiarella* v. *United States*, 445 U. S. 222, 236 (1980). Accordingly, we decline the Government's request to affirm Ciminelli's convictions on alternative grounds.

Case 3:21-cv-01485-RNC   Document 16   Filed 08/03/23   Page 32 of 46

Case 22-1061, Document 99, 06/20/2023, 3531495, Page19 of 25
Case 19-1272, Document 190-2, 05/15/2023, 3515212, Page13 of 14

10                          CIMINELLI *v.* UNITED STATES

                            Opinion of the Court

                                    III

The right-to-control theory is invalid under the federal
fraud statutes. We, therefore, reverse the judgment of the
Court of Appeals and remand the case for further proceed-
ings consistent with this opinion.

                                              *It is so ordered.*

Case 3:21-cv-01485-RNC Document 16 Filed 08/03/23 Page 33 of 46

Case 22-1061, Document 99, 06/20/2023, 3531495, Page20 of 25
Case 19-1272, Document 190-2, 05/15/2023, 3515212, Page14 of 14

Cite as: 598 U. S. ____ (2023)　　　　1

ALITO, J., concurring

# SUPREME COURT OF THE UNITED STATES

### No. 21-1170

### LOUIS CIMINELLI, PETITIONER *v.*
### UNITED STATES, ET AL.

#### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
#### APPEALS FOR THE SECOND CIRCUIT

#### [May 11, 2023]

JUSTICE ALITO, concurring.

The opinion of the Court correctly answers the sole question posed to us: whether the right-to-control theory supports liability under the federal wire fraud statute. The jury instructions embody that theory, and therefore this error, unless harmless, requires the reversal of the judgment below. I do not understand the Court's opinion to address fact-specific issues on remedy outside the question presented, including: (1) petitioner's ability to challenge the indictment at this stage of proceedings, see Fed. Rule Crim. Proc. 12(b)(3)(B); (2) the indictment's sufficiency, see *United States* v. *Miller*, 471 U. S. 130, 134–135 (1985) (variance from indictment did not make indictment insufficient); (3) the applicability of harmless error to particular invocations of the right-to-control theory during trial, see *Neder* v. *United States*, 527 U. S. 1, 15 (1999) (omission of element in jury instructions subject to harmless error); and (4) the Government's ability to retry petitioner on the theory that he conspired to obtain, and did in fact obtain, by fraud, a traditional form of property, viz., valuable contracts. On this understanding, I join the Court's opinion.

# EXHIBIT THREE

## Restitution Cases

From: "Robinson, LaKisha (USANYS)" <LaKisha.Robinson@usdoj.gov>
Date: May 31, 2023 at 5:42:07 PM EDT
To: bfloyd@hopecathedral.com
Subject: RE: [EXTERNAL] Trevon Gross payment

Hello Ms. Floyd,

Please do not send June or any payments going forward at this time for Trevon Gross.
We received payment for May
I will send you a letter as well.
Thank You,
Lakisha

FYI

Subject: PLEASE READ!!! Supreme Court vacated judgment of several defendants - 12 Cr 152 and 15 CR
769

The U.S. Supreme Court has vacated the judgments entered in the cases below. The Court further
instructed that the cases be returned to the district court for further proceedings. At this point, we have
no idea whether the Office will pursue different charges against these defendants. In any case, because
the judgments (imposing restitution) have been vacated, please suspend any collection for the
foreseeable future. That means we should remove these defendants from TOP and stop any ongoing
wage garnishments. Thanks, and please contact me if there are any questions.

John E. Gura, Jr.
Assistant United States Attorney
Southern District of New York
Tel. (212) 637-2712
Email: john.gura@usdoj.gov

# EXHIBIT FOUR

## Government Rule 28(j) Letter



**United States Department of Justice**

*United States Attorney*
*District of Connecticut*

*Connecticut Financial Center*          *(203) 821-3700*
*157 Church Street, 25th Floor*         *Fax (203) 773-5376*
*New Haven, Connecticut  06510*         *www.justice.gov/usao/ct*

August 19, 2019

Catherine O'Hagan Wolfe
Clerk of the Court
U.S. Court of Appeals for the Second Circuit
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

     Re:   *United States v. Carpenter*
            Docket No. 19-70

Dear Ms. Wolfe:

     Pursuant to Fed. R. App. P. 28(j), this letter is to advise the Court of the following decision: *United States v. DiTomasso*, No. 17-1699, 2019 WL 3417264 (2d Cir. July 30, 2019). This case has bearing on the government's argument, at pages 48-50 and 77-79 of its brief, that Mr. Carpenter lacked a reasonable expectation of privacy (*i.e.*, standing) to seek suppression of trial evidence obtained from the execution of two searches—one in 2010 and one in 2011—at the offices of the Charter Oak Trust, and that any error was harmless in light of the other evidence properly admitted.

     In *DiTomasso*, this Court rejected the defendant's suppression challenge as to some of the seized material in part because that material was "not offered or admitted at trial." *DiTomasso*, 2019 WL 3417264 at *6. Similarly, in this case, almost none of the material from Carpenter's own office—the only material in which he *may* have had a reasonable expectation of privacy—was introduced as evidence at trial. Only one document from the 2010 search that was admitted at trial came from Carpenter's office. *See* Gov't Br. at 49-50, 78. At most 14 trial exhibits (and 4 parts of composite exhibits) from the 2011 search potentially *could* have come from Carpenter's office (the record was undeveloped on this point). *See id.* at 78-79. The rest of the material coming from Carpenter's office was not admitted at trial and thus, under *DiTomasso*, should not factor in the Court's decision. Moreover, since none of the evidence from Carpenter's office would have affected "in some material

respect" the district court's judgment, *id.* at 77-78, its admission—even if error—was harmless.

I respectfully request that a copy of this letter be circulated to each of the panel members assigned to this case.

Very truly yours,

JOHN H. DURHAM
UNITED STATES ATTORNEY

NEERAJ N. PATEL
DAVID E. NOVICK
ASSISTANT U.S. ATTORNEYS

cc:    Michael A. Levy, Esq. (via ECF)
       Qais Ghafary, Esq. (via ECF)

# EXHIBIT TWO

AUSA Novick "*Silverthorne*" Subpoena



U.S. Department of Justice

*United States Attorney*
*District of Connecticut*

| | |
|---|---|
| *Abraham A. Ribicoff Federal Building* | *(860) 947-1101* |
| *450 Main Street, Room 328* | *Fax (860) 760-7979* |
| *Hartford, Connecticut 06103* | *www.usdoj.gov/usao/ct* |

May 25, 2011

Halloran and Sage, LLP
315 Post Road West
Westport, CT 06880-4739
Attention: Dan E. LaBelle, Esq.

          Re:    Non-Disclosure of Subpoena

Dear Sir or Madam:

You have been served with a subpoena which requires you to appear before a federal grand jury June 28, 2011 with certain specified documents. Because this subpoena is being issued as part of an ongoing investigation, we request that you do not disclose its existence or its contents to any person who is not involved in your internal document production process. If at some point you decide that it is necessary to disclose the existence and/or the contents of this subpoena, I request that you notify me of your intent to do so prior to the time of the disclosure.

In addition, to the extent that you do not produce certain responsive materials on the basis that you believe they are protected by the attorney-client or any other privilege, please include with your production a log identifying any documents withheld on the basis of privilege.

YOUR PERSONAL APPEARANCE BEFORE THE GRAND JURY WILL BE EXCUSED if **these records are provided to Special Agent Lynn Allen, U.S. Department of Labor, Office of Inspector General, c/o Squad 4, 600 State Street, New Haven, CT 06511, telephone (203) 630-9526, facsimile (203) 630-9530 on or before the grand jury date**

Very truly yours,

DAVID B. FEIN
UNITED STATES ATTORNEY

DAVID E. NOVICK
ASSISTANT UNITED STATES ATTORNEY

Enclosure

AO 110 (Rev. 06/09) Subpoena to Testify Before a Grand Jury

# UNITED STATES DISTRICT COURT

H-10-2-9(416)

for the

District of Connecticut

## SUBPOENA TO TESTIFY BEFORE A GRAND JURY

To:

Halloran & Sage, LLP
315 Post Road West
Westport, CT

YOU ARE COMMANDED to appear in this United States district court at the time, date, and place shown below to testify before the court's grand jury. When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place: | United States District Court  (Grand Jury Room, 3rd Floor) 450 Main Street Hartford, CT 06103 | Date and Time: June 28, 2011 at 9:30 a.m. |
|---|---|---|

You must also bring with you the following documents, electronically stored information, or objects *(blank if not applicable)*:

### SEE ATTACHMENT.

PLEASE NOTE:

In lieu of personally appearing before the Grand Jury, these records may be provided to these records are provided to Special Agent Lynn Allen, U.S. Department of Labor, Office of Inspector General, c/o Squad 4, 600 State Street, New Haven, CT 06511, telephone (203) 630-9526, facsimile (203) 630-9530 on or before the grand jury date

Date:

May 25, 2011

CLERK OF COURT

*Zelena Gutierrez*

Digitally signed by Zelena Gutierrez
DN: cn=Zelena Gutierrez, o=Judicial Intce Office,
Court, ou=Clerks Office, email=zelena_gutierrez@ctd,
uscourts.gov, c=US
Date: 2011.04.04 18:38:44 -04'00'

Signature of Clerk or Deputy Clerk

The name, address, e-mail, and telephone number of the United States attorney, or assistant United States attorney, who requests this subpoena, are:

Assistant U.S. Attorney David E. Novick
450 Main Street, Room 328
Hartford, CT 06103
Tele: (860) 947-1101    CONTROL #416

**Attachment to Subpoena**

**TO:**  Halloran and Sage, LLP
315 Post Road West
Westport, CT 06880-4739

Attention: Dan E. LaBelle, Esq.

Provide all documents and other items seized pursuant to a search warrant executed at 100 Grist Mill Road, Simsbury, Connecticut, by the IRS-CID of Milwaukee, Wisconsin, on April 20, 2010, that are related to Charter Oak Trust, Charter Oak Trust 2009, Grist Mill Capital, and Avon Capital and associated entities, including but not limited to IRS evidence box numbers 36, 38, 54, 75, 81, 103, 205, 238, 249, 287, 293, 300, 308, 35, 37, 121,128, 129, 125, 239, 32, 90, 124, 204, 237, 243, 247, 253 and 291.

In lieu of personally appearing before the Grand Jury, these records may be provided to Special Agent Lynn Allen, U.S. Department of Labor, Office of Inspector General, c/o Squad 4, 600 State Street, New Haven, CT 06511, telephone (203) 630-9526, facsimile (203) 630-9530 on or before the grand jury date.

# EXHIBIT THREE

Wayne Bursey Emergency Affidavit Submitted to Judge Covello

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| PETTIBONE TAVERN, LLC, ET AL. | : | |
|---|---|---|
| | : | Case No. _____ |
| V. | : | |
| | : | |
| COMMISSIONER OF INTERNAL REVENUE | : | April 29, 2010 |
| | : | |
| IN RE: Illegal Seizure of Property by Search | : | |
| Warrant at 100 Grist Mill Road, Simsbury, | : | |
| Connecticut | : | |

## DECLARATION OF WAYNE H. BURSEY

I, WAYNE H. BURSEY, pursuant to 28 U.S.C. § 1746(2), hereby declare as

follows:

1.     I am over the age of eighteen and understand the obligations of an oath.

2.     I make this declaration from my personal knowledge and in support of

Petitioners' Emergency Motion for Return of Illegally Seized Property.

3.     I am Trustee of the Charter Oak Trust.

4.     On April 20, 2010, several of my companies located at 100 Grist Mill Road

in Simsbury, Connecticut, including Grist Mill Partners, LLC, Charter Oak Trust, and

1&3 Mill Pond Partners, LLC, were stormed and trampled by 35 – 50 armed Federal

IRS CID Agents wearing Kevlar vests.

5.     On Wednesday, April 21, 2010, I returned to my office located at 100 Grist

Mill Road to find a large number of files and personal documents missing from my

office.

1

6.     The IRS Agents took all documents relating to one particular trust, Charter

Oak Trust, of which I am the Trustee. The Charter Oak Trust does not allow tax

deductions so it could not possibly be associated with any tax investigation or the

underlying search warrant. The IRS's improper search and illegal seizure of documents

that are not, and could not be in any way related to this "criminal investigation" has

completely disrupted and effectively destroyed the day-to-day operating capability of our

company.

7.     As Trustee of the Charter Oak Trust, I must insist on the immediate return

of the property stolen from our building because they took all of the files pertaining to

the Charter Oak Trust, which does not allow any tax deduction and which were not

listed in the warrant, including:

- Live Original Insurance Policies (not Copies);
- Applications for Insurance;
- Confidential Client Financial Information;
- Confidential Medical Information Protected by HIPAA;
- Claim Files;
- Termination Files;
- Loan Agreements;
- Policy Illustrations;
- Adoption Agreements and other Enrollment Documents;
- Policyholder Servicing Requests and other Paperwork;
- Admin Binders.

8.     The federal agents also took every single file and every single policy and

application belonging to Grist Mill Capital, LLC. Grist Mill Capital, LLC's portfolio is

currently over Two Billion Dollars. This is particularly harmful in that Grist Mill Capital,

LLC is in the midst of engineering a deal to sell its portfolio of insurance policies to a

major German pension plan next month. This deal is now at risk because every

insurance portfolio and policy was seized by the IRS on April 20, 2010.

2

9.   The IRS agents also took personal and business files and depositions

from my office and/or my desk, which were not identified in the search warrant, and

which relate to real estate companies 1&3 Mill Pond Partners, LLC and Grist Mill

Partners, LLC. Such files include lease agreements and other important documents

related to these real estate companies, which are not related to any tax investigations.

10.   The IRS agents also took my daily notebooks that are paramount to my

day to day activities and not identified in, or related to, the Search Warrant.

11.   In addition, my personal tax returns and personal 401K file contents were

taken from my desk drawers and e-mails, many of which were personal in nature and all

of which had nothing to do with the subject matter of the Search Warrant were imaged.

12.   The above mentioned items and files were stolen by IRS FED CID Agents
are located in the following boxes:  32, 35, 36, 37, 38, 54, 75, 90, 103, 124, 128, 204,
205, 237, 238, 239, 243, 247, 249, 253, 291, 293 and 300.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated: April 29, 2010

_Wayne H. Bursey_
Wayne H. Bursey

Wayne Bursey, being known to me or having produced satisfactory identification,
affirmed that he had reviewed the contents of the foregoing and affirmed that the
statements made within the affidavit are true.

Subscribed and sworn to before me this 29th day of April, 2010.

Notary Public
My Commission expires:

JASON J. CONCATELLI
Notary Public, State of Connecticut
My Commission Expires March 31, 2012

1743555v.1

3

UNIV_CT - 002325