UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DANIEL E. CARPENTER, :
:
Petitioner, :
:
v. : Case No. 3:21-cv-1485(RNC)
:
UNITED STATES OF AMERICA, :
:
Respondent. :

RULING AND ORDER

Following a bench trial, Daniel Carpenter was convicted of mail and wire fraud and money laundering offenses. See United States v. Carpenter, 190 F. Supp. 3d 260, 297 (D. Conn. 2016)(Verdict and Special Findings), aff'd sub nom. United States v. Bursey, 801 Fed. Appx. 1, 4 (2d Cir. 2020).[1] The charges arose from Carpenter's leadership role in an insurance fraud scheme involving stranger-originated life insurance

[1] The superseding indictment charged conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349; mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343; conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h); illegal monetary transactions in violation of 18 U.S.C. § 1957; money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i); and aiding and abetting in violation of 18 U.S.C. § 2. Carpenter's guilt was proven as to every count.

("STOLI").[2] A lawyer with expertise in employee welfare benefit plans, Carpenter devised a scheme to obtain STOLI policies from life insurance providers by means of fraudulent applications that defeated the providers' attempts to detect and reject STOLI business.

The prosecution relied in part on the right-to-control theory of fraud, which applies to schemes to deprive victims of information they need to make informed decisions regarding the use of their assets. See Binday, 804 F.3d at 570. After Carpenter's convictions were affirmed on appeal, the Supreme Court held that depriving a victim of information in contravention of the right-to-control theory cannot provide the sole basis for a fraud conviction because mere information is not a form of "property" as the

---

[2] "A STOLI policy is one obtained by the insured for the purpose of resale to an investor with no insurable interest in the life of the insured – essentially, it is a bet on a stranger's life." United States v. Binday, 804 F.3d 558, 565 (2d Cir. 2015), judgment vacated, Binday v. United States, 143 S.Ct. 2491 (2023).

term is used in the fraud statutes. Ciminelli v. United States, 598 U.S. 306, 317 (2023).[3]

Carpenter, now self-represented, has moved pursuant to 28 U.S.C. § 2255 to set aside all the convictions. He claims that the mail and wire fraud convictions are invalid on various grounds, including the Government's reliance on the right-to-control theory, and because those convictions provide the predicate for the others, the latter are invalid as well. The Government contends that the claims are procedurally barred and without merit. I agree that Carpenter is not entitled to relief and therefore deny the motion.

## I. Background

[3] After rejecting the right-to-control theory in Ciminelli, the Supreme Court vacated the judgment in Binday, a STOLI fraud case similar to this one. Since then, both the Second Circuit and the District Court have denied motions by Binday seeking relief based on Ciminelli. See Binday v. United States, No. 21-1206 (2d Cir. 2024)(denying motion for leave to file successive § 2255 petition); United States v. Binday, No. 12 CR 152, 2024 WL 4664032 (S.D.N.Y. Nov. 4, 2024)(denying Rule 60(b) motion).

Carpenter executed the STOLI fraud scheme through an entity he controlled, the Charter Oak Trust ("COT"), which purported to be a multi-employer death benefit-only welfare plan but in truth was formed and operated by Carpenter as a vehicle for procuring STOLI policies. Premiums for STOLI policies placed in COT were funded by a Carpenter-controlled entity, Grist Mill Capital, LLC. In the course of the scheme, Carpenter and his co-conspirators obtained a total of 84 STOLI policies with an aggregate face value of $450 million. Insurance companies paid commissions on the policies to a third company controlled by Carpenter, TPG Group ("TPG"). The commissions ranged from 70 to 130 percent of first-year target premiums, amounting in some instances to several hundred thousand dollars per policy. Carpenter required that "TPG receive 40 percent of the commission or 'no deal.'" Verdict, 190 F. Supp. 3d at 274 (citing Govt. Tr. Ex. 2033 at 2). Insurance companies paid TPG over $12 million in commissions on policies they would not have issued but for misrepresentations in the

applications. See Govt. Tr. Ex. 3 (summary chart showing first-year commissions on all COT policies). The Second Circuit held that the commissions were an object of the STOLI scheme. Bursey, 801 Fed. Appx. at 5 ("the scheme did not reach fruition until . . . Carpenter's companies received commissions.").

In the Verdict and Special Findings, I concluded that the Government had proven each of the essential elements of mail and wire fraud, namely, that Carpenter "(1) 'devis[ed]' or 'intend[ed] to devise' a scheme (2) to obtai[n] money or property' (3) 'by means of false or fraudulent pretenses, representations, or promises.'" Kousisis v. United States, 605 U.S. 114, 123 (2025) (quoting 18 U.S.C. § 1343).

The first element, a scheme to defraud, was established by "overwhelming evidence" that Carpenter "oversaw the development and execution of a plan to defraud [the] life insurance providers by using misrepresentations to induce them to issue

STOLI policies." 190 F. Supp. 3d at 297. He "acted with the requisite fraudulent intent" because, "[b]y using misrepresentations to defeat the providers' attempts to ensure that STOLI policies would not be issued, he contemplated doing actual harm to the providers." Id. "At a minimum, he intended to deprive them of economically valuable information," as required by the right-to-control theory of fraud. Id. "[T]he misrepresentations were material to the providers because of the impact they had on the providers' decision making with regard to the applications." Id.

The second element, money or property as the object of the scheme, was "easily satisfied" because "misrepresentations in the applications deprived the providers of information necessary to make discretionary decisions whether to issue the policies and created significant discrepancies between the benefits the providers reasonably anticipated from issuing the policies and the benefits they actually

received. Id. at 298.

The third element, use of interstate wires and mails in furtherance of the scheme, was also proven. That Carpenter did not personally send mailings or wirings specified in the superceding indictment was "of no moment because they were sent by persons acting at his direction or on his behalf and it was 'reasonably foreseeable that the charged transmission[s] would occur in the execution of the scheme." Id. (quoting United States v. Bahel, 662 F.3d 610, 632 (2d Cir. 2011).

## II. Claims

In his motion under § 2255, Carpenter makes the following claims:

- The superseding indictment should have been dismissed because (1) it fails to sufficiently allege all the elements of mail and wire fraud; and (2) he did not have fair warning that he could be criminally liable for his conduct;
- The Government constructively amended the superseding indictment by introducing evidence to

support his conviction under the right-to-control theory, which was not alleged in the superseding indictment;

- The Government failed to prove (1) that he knowingly joined a scheme to defraud with the specific intent to use material misrepresentations to cause economic harm to the insurance companies or (2) that the mailings or wire transmissions specified in the superseding indictment were in furtherance of the scheme;
- Motions to suppress evidence derived from searches in violation of the Fourth Amendment should have been granted;
- The Government violated its disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963) and failed to produce a prior statement of a witness in violation of the Jencks Act, 18 U.S.C. § 3500; and

- He was denied a speedy trial and sentencing in violation of the Fifth and Sixth Amendments and the Speedy Trial Act, 18 U.S.C. §§ 3161-3174.[4]

## III. Discussion

### A. The Claims Are Procedurally Barred

The Government correctly argues that the claims for which Carpenter seeks relief are procedurally barred because they either were not raised on direct appeal, United States v. Frandy, 456 U.S. 152, 162-66 (1982), or were raised and rejected, Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010).

Addressing the claims in the order listed above, the claim that the superseding indictment failed to sufficiently allege all the elements of mail and wire fraud was raised prior to trial in a motion to dismiss for lack of jurisdiction and after trial in a Rule 29 motion for judgment of acquittal. Both motions were

[4] The motion also includes a claim that the cumulative effect of all the other alleged errors requires that the convictions be vacated.

denied and Carpenter did not challenge their denial on appeal.

In the post-trial motion under Rule 29, Carpenter argued that he was denied fair notice that his conduct was criminal. The claim was rejected on the merits and not renewed on appeal.

In connection with the Rule 29 motion and again in an unsuccessful motion for bond pending appeal, Carpenter argued that the Government constructively amended the superseding indictment by presenting evidence to support the right-to-control theory. The argument was rejected and Carpenter did not renew it on appeal.

The Fourth Amendment claims were raised and rejected on the merits before and after trial and again on appeal.

The Brady and Jencks Act claims were raised in a post-trial motion for a mistrial and separately in a

post-trial motion for a new trial. Both claims were denied on the merits. Neither was raised on appeal.

The Speedy Trial Act claim was rejected on appeal. The other claims asserting prejudicial delay were not raised on appeal.

B. Carpenter Has Not Shown Cause For His Procedural Default

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in [a motion under § 2255] only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' Murray v. Carrier, 477 U.S. 478, 485 (1986); Wainwright v. Sykes, 433 U.S. 72, 87 (1977), or that he is "actually innocent, Murray, [477 U.S.] at 496[.]" Bousley v. United States, 523 U.S. 614, 623 (1998).

To show cause, Carpenter must demonstrate that he was impeded from raising the claim by something that cannot fairly be attributed to him. Coleman v. Thompson, 501 U.S. 722 (1991). To show prejudice, he

must demonstrate that a constitutional error "actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Murray, 477 U.S. at 494. The Government argues that Carpenter has not shown cause with regard to any of the procedurally defaulted claims. I agree.

Carpenter argues that he should not be precluded from obtaining relief under Ciminelli, notwithstanding his failure to challenge the validity of the right-to-control theory on direct appeal. He cites Davis v. United States, 4127 U.S. 333, 346 (1974), which concerns the retroactivity of decisions narrowing the scope of criminal statutes. Under Davis, a decision is entitled to retroactive application if it establishes that the conduct for which the defendant has been convicted does not constitute a crime. The issue at this juncture, however, is not whether Ciminelli qualifies for retroactive application, but whether Carpenter has shown cause for his procedural default.

Carpenter has not shown cause for failing to challenge the right-to-control theory on appeal. The invalidity of the right to control theory was an argument reasonably available to him at the time of the appeal. Numerous defendants prosecuted under the right-to-control theory — including Ciminelli himself — challenged the validity of the theory on appeal to the Second Circuit. Moreover, his failure to do so cannot be excused on the ground that attacking the right-to-control theory would have been futile. See Bousely, 523 U.S. at 623 ("futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time.")(internal quotations omitted). Accordingly, Carpenter's default is not excused. See Bousley, 523 U.S. at 624 (post-conviction decision narrowing scope of criminal statute under which movant was convicted, although entitled to retroactivity under Davis, did not constitute cause for procedural default).

Carpenter argues that relief should be available to him, despite the lack of cause for his procedural default, because he is actually innocent of any crime. A movant's inability to show cause for a procedural default does not preclude relief when a constitutional violation may have resulted in the conviction of one who is actually innocent. McClesky v. Zant, 499 U.S. 467, 494 (1991); Bousley, 523 U.S. at 624; Gupta v. United States, 913 F.3d 81, 87-88 (2d Cir. 2019)(relief precluded because movant failed to show actual innocence).

The actual innocence exception does not apply because the scheme alleged in the superseding indictment and proven beyond a reasonable doubt at trial was a "prototypical fraudulent-inducement scheme," which "plainly satisfies each of the[] statutory elements [of mail and wire fraud]." Kousisis, 605 U.S. at 123.

"Under the [fraudulent-inducement theory], a defendant [is guilty if he] (1) 'devise[s] a 'scheme'

(2) to induce the victim into a contract to 'obtai[n] her 'money or property' (3) 'by means of false or fraudulent pretenses." Id. (quoting 18 U.S.C. § 1343).

In this case, the superseding indictment alleged and the evidence proved that: (1) Carpenter devised a scheme (2) to induce the insurance companies into contracts to obtain STOLI policies obligating them to pay commissions and death benefits (3) by means of false or fraudulent misrepresentations in applications and related documents.

Kousisis reaffirms that "'materiality of falsehood is an element of' – and thus a limit on – the federal fraud statutes." 605 U.S. at 132 (quoting Neder v. United States, 527 U.S. at 1, 25 (1999). Two tests of materiality are potentially available. Under the traditional common law standard, "[a] misrepresentation is material if a reasonable person would attach importance to it in deciding how to proceed, of if the defendant knew (or should have known) that the recipient would likely deem it

important." Kousisis, 605 U.S. at 131 (citing Universal Health Sevices, Inc. v. United States, 579 U.S. 176, 193 (2016). Under the stricter "essence of the bargain" test, a misrepresentation is material "if it goes 'to the very essence' of the parties 'bargain.'" Kousisis, 605 U.S. at at 131 (quoting Universal Health Services, 579 U.S. at 194, n.5).

Both tests are satisfied here. The superseding indictment alleged and the Government proved that Carpenter and his co-conspirators falsified insurance applications to avoid raising red flags related to STOLI policies. To that end, they misrepresented the insured's financial situation and motivation for procuring the policy and provided false answers to questions about third-party funding of premiums, the possibility of the sale of the policy and the performance of life expectancy reports. As explained in the Verdict and Special Findings, these misrepresentations were the mechanism by which Carpenter and his co-conspirators were able to defeat

the insurers' underwriting safeguards against STOLI business. See 190 F. Supp. 3d at 284-92. The misrepresentations went directly to the essence of the bargain because Carpenter knew the companies would refuse to issue policies if they suspected the policies were being procured for sale to investors with no insurable interest in the life of the insured. The insurers so testified and I credited their testimony.

Carpenter insists that he is innocent of any offense because the insurers actually incurred no pecuniary harm. However, Kousisis squarely holds that "[a] defendant violates the federal wire fraud statute by scheming to obtain the victim's money or property, regardless of whether he seeks to leave the victim economically worse off." 605 U.S. at 124. This forecloses Carpenter’s argument that the insurance companies got what they bargained for. Judge Learned Hand's formulation, quoted with approval in Kousisis, applies with equal force here: "A man is none the less cheated out of his property, when he is induced to part

with it by fraud, because he gets a quid pro quo of equal value." 605 U.S. at 135 (quoting United States v. Rowe, 56 F.2d 747, 749 (2d Cir. 1932)).

C. The Government's Reliance on the Right-to-Control Theory Does Not Entitle Carpenter To Relief To Avoid A Miscarriage of Justice

Carpenter argues that the Government's reliance on the right-to-control theory requires that his convictions be vacated to avoid a miscarriage of justice. A similar argument was made in United States v. Tuzman, Nos. 21-2229, 21-2379, 2024 WL 1173044 (2d Cir. Mar. 19, 2024)(Summary Order), where the prosecution relied on both the right-to-control theory of fraud and a traditional property theory. On direct appeal from judgments convicting the defendants based on jury verdicts finding them guilty of wire fraud and other offenses, the defendants argued that the convictions should be vacated because the Government had relied on the right-to-control theory subsequently invalidated in Ciminelli. But the indictment charged

fraud based on a traditional property theory, there was sufficient evidence in the record to prove that the defendants schemed to obtain and keep investors' money through fraudulent misrepresentations, and the jury was properly instructed on traditional property fraud. The Court was "unpersuaded" that the convictions should nonetheless be vacated on the basis that "it was impossible to tell whether the jury relied on the improper right-to-control jury instruction." Id. at *2. Rather, the Court was "'confident that the jury would have rendered a guilty verdict even 'in the absence of the error.'" Id. at *2. See also Stinn v. United States, No. 11-CV-2071 (PKC), 2024 WL 4989241, at *5 (E.D.N.Y. Dec. 5, 2024)(petition for writ of coram nobis predicated on Ciminelli denied because, as in Tuzman, the jury could have convicted the defendant based on traditional property fraud).

Here, the record shows that the Government did not rely solely on the right-to-control theory either in the superseding indictment or at trial but instead

alleged and proved that Carpenter schemed to obtain STOLI policies obligating the insurance companies to pay commissions and death benefits, which constitute "money or property" under the fraud statutes.

In his motion to dismiss prior to trial, Carpenter argued that the superseding indictment failed to allege that the insurers were deprived of money or property. In support, he cited United States v. Shellef, 507 F.3d 82, 109 (2d Cir. 2007), which reversed fraud convictions because the indictment failed to allege that "there was 'a discrepancy between the benefits reasonably anticipated' and actual benefits received" by the alleged victims as a result of the misrepresentations. Id. at 107. In the absence of such an allegation in Shellef, the jury could have convicted the defendants based on a misrepresentation that had no relevance to the object of the contract. Id. at 108.

In opposition to the motion to dismiss, the Government argued that Carpenter "contemplated some

actual harm or injury [to the insurers], namely the issuance of insurance policies based on material misrepresentations so that Carpenter and his co-conspirators could resell the policies on the life settlement market." ECF 84 at 28. Unlike in Shellef, moreover, the superceding indictment "spell[ed] out five different ways in which the lies that the defendants told, caused to be told, and schemed to tell mattered to the Providers' bottom line." ECF 84 at 29.

In his reply brief, Carpenter reiterated his position that the indictment failed to allege a scheme to deprive the insurers of property. As the reply shows, however, he clearly understood that the indictment alleged a scheme to cause insurance providers to issue STOLI policies by means of fraudulent applications. See ECF 89 at 8-9 ("This alleged crime was completed when the fraudulent/false applications were dropped in the mail-box or sent in a false materially misleading email to the providers with

the intent to have the providers issues the various life insurance policies.”).

At oral argument on the motion to dismiss, Carpenter asserted through counsel that his role was limited to arranging funding for premiums after STOLI policies were issued. His lack of involvement at an earlier stage (when the fraudulent applications were prepared and submitted) was critical, he argued, because the alleged offenses were “completed” when the policies were obtained. See ECF 122 at 22. At that point, “[t]he object of the conspiracy, the purpose of the conduct[,] had been satisfied, because there was now a real policy, a contract, between the insureds, the owner of the policy which was Charter Oak Trust, and the carriers.” Id.

In response, counsel for the Government reaffirmed that “the essence of this scheme” was to gain “a ton of money” by obtaining STOLI policies, including commissions and profits on the sale of policies to investors. See ECF 122 at 33. Government

counsel added that the lies alleged in the superseding indictment went to "the basis of the bargain" in that they provided the basis for the companies to issue the policies. See id. at 50.

As shown by the Verdict and Special Findings, the Government proved beyond a reasonable doubt that Carpenter did scheme to obtain STOLI policies obligating the companies to pay death benefits amounting to hundreds of millions of dollars. See Govt. Tr. Ex. 3 (summary chart showing face value of COT policies exceeded $450 million). The STOLI policies qualify as "money or property" under the fraud statutes. See Pasquantino v. United States, 544 U.S. 349, 356 (2005) ("The right to be paid money has long been thought to be a species of property."); see also Ciminelli, 598 U.S. at 317-18, (Alito, J., concurring) (explaining that majority opinion left open whether the defendant could be re-tried "on the theory that he conspired to obtain, and did in fact obtain, by fraud,

a traditional form of property, viz., valuable contracts.”).

The Government also proved beyond a reasonable doubt that Carpenter schemed to obtain commissions from the companies through TPG. Commission payments are a form of money protected by the fraud statutes. See United States v. Bazemore, 608 Fed. Appx. 207, 211 (5th Cir. 2015) (“commission payments” paid by insurers to defendant in STOLI scheme “were clearly money that legally belonged to the insurers” and “unquestionably money or property under the mail fraud statute.”).

In addition, the Government proved beyond a reasonable doubt that Carpenter had the requisite fraudulent intent to harm the insurance companies by inducing them to issue the policies, pay commissions, and ultimately pay death benefits. As stated in the Verdict and Special Findings, he “understood the ‘evils of STOLI,’ knew the providers did not want to issue STOLI policies and was aware of the actions they had taken to detect and avoid STOLI business.” 190 F. Supp.

3d at 297. He instructed others how to falsely answer STOLI-related questions in applications. Id. at 284-85. At his direction, co-conspirators prepared two premium payment illustrations: one showing level premium payments on an annual basis throughout the life of the policy, which would be given to the insurance companies, and the other showing minimum payments after the first year, which would be concealed because "the illustration showing minimal funding would arouse suspicion." Id. at 287.

Accordingly, the Government's reliance on the right-to-control theory does not provide a basis for vacating the convictions.

## IV. Conclusion

For the foregoing reasons, the motion is denied in its entirety without an evidentiary hearing. A certificate of appealability will not be issued because there has been no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Clerk will enter judgment and close the case.

So ordered this 17th day of August 2026.

/s/ RNC

Robert N. Chatigny
United States District Judge